# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACQUELINE WILLARD, an individual, and AMIE BLACKMAN, an individual, on behalf of themselves individually, and on behalf of all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TROPICANA MANUFACTURING COMPANY, INC. a Delaware corporation;<br><br>Defendant. | Case No: 1:20-cv-01501<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY DEMANDED** |

Plaintiffs Jacqueline Willard ("Willard") and Amie Blackman ("Blackman") (collectively referred to herein as "Plaintiffs"), hereby bring this Action against Defendant Tropicana Manufacturing Company, Inc. ("Defendant" or " Tropicana"), alleging that Defendant misbrands and falsely advertises numerous juice-based beverage products (the "Products"), in Illinois, California, and throughout the United States, in violation of federal and state unfair competition, false advertising, and consumer protection laws. Upon information and belief and investigation of counsel, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendant is a citizen of a different state than Plaintiff Amie Blackman, the putative class size is greater than 100 persons, and the amount in

1

controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2. This Court has both general and specific personal jurisdiction over the Defendant because Defendant maintains its corporate headquarters in and has conducted and continues to conduct substantial business in the State of Illinois and in Cook County. Plaintiff Willard purchased one or more of the Products in Cook County.

3. This Court has specific personal jurisdiction as Defendant maintains its corporate headquarters in and actively advertises and sells the Products in Illinois and is registered to do business in Illinois. Defendant is located within the state and has sufficient minimum contacts with this state and sufficiently avails itself of the markets of this state through the promotion, sales, and marketing of the Products to consumers within the state to render the exercise of jurisdiction by this Court reasonable.

4. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Plaintiff Willard  purchased the Product and sustained harm thereby in this District, and Defendant is headquartered in, conducts business in, and marketed and sold the Product at issue within this judicial district.

## PARTIES

5. Plaintiff Jacqueline Willard is an individual and a citizen of Illinois over the age of eighteen who resides in Bellwood, Illinois.

6. Plaintiff Amie Blackman is an individual and a citizen of California over the age of eighteen who resides in San Diego, California.

7.      Defendant Tropicana Manufacturing Company, Inc. ("Tropicana") is a Delaware corporation that manufactures, packages, labels, advertises, markets, and sells the Products identified herein. Tropicana maintains its principal place of business at 555 West Monroe Street in Chicago, Illinois.

8.      Tropicana is registered to do business in the State of California as entity number C2326121.

9.      Defendant advertises, distributes, and sells the Products in Illinois, California, and throughout the United States.

## FACTUAL ALLEGATIONS

10.      Defendant manufactures, packages, labels, distributes, advertises, markets, and sells fruit-juice-based beverage products that contain undisclosed artificial flavoring agents (the "Products").

11.      Defendant conceals that the Products are artificially flavored.

12.      Defendant knowingly adds artificial flavor to the Products but fails to label the Products accordingly, concealing this crucial fact from consumers.

13.      Defendant knowingly omits all the federal and state law required label disclosures informing consumers that the Products contain artificial flavors.

14.      The Products, in fact, are all labeled as if they contain only natural ingredients, deceiving consumers into believing they are purchasing a premium, all-natural product instead of one that contains artificial flavoring.

15.      Consumers value naturally flavored products more highly than those that contain artificial flavors, and some consumers would not buy these Products at all if they knew the Products contained artificial flavors.

16.     By omitting the legally required disclosures, Defendant tricks consumers into buying these Products when they otherwise would not, and paying more for the Products when they do purchase them.

17.     Defendant intended to give reasonable consumers like the Plaintiff the impression that the Products are pure, natural, and not artificially flavored, by packaging, labeling, and advertising the Products in this way.

18.     All the Products identified herein contain undisclosed artificial flavoring.

19.     One of the Products, for example, "Trop 50 Farmstand Apple", shows on its label pictures of ripe, fresh apples and includes in the Product name, "Farmstand."

20.     The name "Farmstand Apple" is intended to deceive consumers into believing that the Product is an all-natural juice product.

21.     The "Trop 50 Farmstand Apple" Product nowhere informs consumers that it contains an artificial flavor.

22.     The "Trop 50 Farmstand Apple" product, like the other Products identified in this action, does not inform consumers that Defendant adds artificial flavor to the product.

23.     Below is a true and accurate copy of the front label of the "Trop 50 Farmstand Apple" product:

//

//

//

//

4



24. The ingredient statement on the "Trop 50 Farmstand Apple" Product label reads, "Filtered water, apple juice concentrate, <u>malic acid</u>, natural flavor, citric acid, ascorbic acid (vitamin C), apple juice concentrate (color), purified stevia leaf extract, vitamin E acetate (vitamin E), hibiscus juice concentrate (color)." (emphasis added)

25. This label violates federal and state law and deceives consumers.

26. The "malic acid" that Defendant adds to this Product is an artificial flavoring agent and functions as an artificial flavor in the Product.

27. Under federal and state law, Defendant must prominently disclose on the Product label that the "Trop 50 Farmstand Apple" product contains artificial flavor.

28. Defendant fails to do so, misbranding the Product and deceiving consumers.

29. The other Products identified in this action are similarly misbranded.

30. A true and accurate copy of the front of Tropicana's "100% Juice" "Apple Juice" Product and the ingredients list is reproduced below:

5



**Ingredients:** Apple juice from concentrate (filtered water and concentrated apple juice), natural flavors, malic acid and ascorbic acid (vitamin C). Contains concentrates from Germany, Austria, Italy, Hungary, Argentina, Chile, Turkey, Brazil, China and the United States.

31.     The ingredient statement on the "100% Juice" "Apple Juice" Product label reads, "Apple juice from concentrate (filtered water and concentrated apple juice), natural flavors, <u>malic acid</u> and ascorbic acid (vitamin C)." (emphasis added)

32.     The malic acid that Defendant adds to this Product is an artificial flavoring agent and functions as an artificial flavor in the Product.

33.     Defendant does not disclose that the "100% Juice" "Apple Juice" product contains an artificial flavor.

34.     This label similarly violates federal and state law and deceives consumers.

35.     Defendant markets at least ten such products, listed below (the "Products").

36.     The Products include:

   1.   Trop 50 "Farmstand Apple"

   2.   Tropicana "100% Juice" Apple Juice

   3.   Trop 50 No Pulp

   4.   Trop 50 Orange Mango

5.  Trop 50 Orange Peach

6.  Trop 50 Pomegranate Blueberry

7.  Trop 50 with Calcium & Vitamin D

8.  Trop 50 with Vitamin C & Zinc

9.  Tropicana Grape Drink

10. Tropicana "Fruit Medley"

37.     All the Products contain artificial dl-malic acid, an artificial flavoring agent.

38.     None of the Products discloses on either the front or back-label that the Product contains artificial flavoring.

39.     Defendant failed to include the legally-required "Artificially flavored" or "Artificial flavor" disclosure on all of the Products' labels.

40.     The Products therefore violate federal and state law in multiple respects.

41.     First, because each Product contains added flavoring ingredients that simulate and reinforce the characterizing flavor, each Product's front label is required by both federal and state law to disclose that fact. (*see, e.g.*, Illinois Consumer Fraud Act; California Health & Safety Code § 109875 *et seq.,* (Sherman Law), incorporating 21 C.F.R. § 101.22.).[1]

42.     Second, each Product's ingredients list violates federal and state law because it misleadingly identifies the added dl-malic acid only as generic "malic acid" instead of using the specific, non-generic name of the ingredient. (*See* 21 C.F.R. § 101.4(a)(1)).

---

[1] California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.,* incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation necessarily violates California's Sherman Law. (Health & Safety Code, § 110100.) Other states' statutory and common law function similarly or in some cases identically.

43.     Further, Defendant conceals that the Products contain artificial flavor by omitting the federal and state required ingredient disclosure statements in the Product ingredient lists.

44.     Defendant labels the Products as if they are made with only natural flavors even though the Products all contain dl-malic acid, an artificial flavor made from petrochemicals.

45.     A compound found in nature is sometimes referred to informally as malic acid.

46.     That natural compound, however, is not what Defendant puts in the Product.

47.     Instead, Defendant flavors the Product with the synthetic industrial chemical dl-malic acid.[2]

48.     This type of "malic acid" is not naturally-occurring but is manufactured in petrochemical plants from benzene or butane – components of gasoline and lighter fluid, respectively – through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

49.     Analytical testing of the Tropicana "Trop50 No Pulp" Product on 7/29/2019 confirmed that the compound added to the Product is the artificial dl-malic acid, an inexpensive synthetic compound made from petrochemicals.

50.     Both the natural and unnatural forms of malic acid are considered "GRAS" (generally recognized as safe) for use as flavorings in foods marketed to adults[3]; the d-malic acid form, however, has never been extensively studied for its health effects in human beings. Both forms confer a "tart, fruity" flavor to food products.[4]

---

[2] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

[3] The dl- form of malic acid, the one used by Defendants, is forbidden for use in baby foods out of health concerns if consumed by infants.

[4] https://thechemco.com/chemical/malic-acid/ (last visited June 20, 2019).

51.     Although the malic acid Defendant uses in the Products to simulate the characterizing fruit flavors is dl-malic acid – the artificial petrochemical – Defendant pretends otherwise, conflating the natural and artificial flavorings and deceiving consumers.

52.     Because the Products contain an artificial flavor, both federal and state law require the Product's front and back labels to inform consumers that the Product contains artificial flavoring.  (*See, e.g.*, 21 C.F.R. § 101.22.)

53.     Under FDA regulations, any recognizable primary flavor identified on the front label of a food product is a "characterizing flavor" for the Product.  (21 C.F.R. § 101.22.)

54.     Under federal and state law, if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavors by word, vignette, e.g., description of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." (*see* 21 C.F.R. § 101.22(i).)

55.      "Apple" is a primary recognizable flavor identified on the "Apple Juice" and "Trop 50 Farmstand Apple" Product front labels. Apple is a characterizing flavor for these Products under state and federal regulations.

56.     "Orange" is a primary recognizable flavor identified on several of the Trop 50 Products' front labels. Orange is a characterizing flavor for these Products.

57.     The fruits named and illustrated on the other Products' front labels are similarly characterizing flavors for those Products.

58.     If any characterizing flavor of a Product is not created exclusively by the identified ingredient, the product's front label must state that the product is flavored with either, or both of, natural or artificial flavorings.

9

59. If any artificial flavor is present in the product which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." (*see, e.g.,* California's Sherman Law, incorporating 21 C.F.R. § 101.22(i)(3), (4).)

60. The synthetic dl-malic acid in the Products simulates, resembles, and reinforces the characterizing fruit flavors for each of the Products.

61. Defendant was therefore required to place prominently on each Product's front label a notice sufficient to allow reasonable consumers to understand that the Product contained artificial flavorings.

62. Defendant failed to do so, deceiving consumers and violating federal and state law.

63. Defendant intended that Plaintiffs and the proposed Class rely on those omissions and affirmative misrepresentations.

64. Accordingly, Plaintiffs and the Class were unaware that the Products contained artificial flavors when they purchased them.

65. When purchasing the Products, Plaintiffs and class members were seeking products of particular qualities that were flavored only with natural ingredients as described on the labels and which did not contain artificial flavoring.

66. Plaintiffs are not alone in these purchasing preferences.

67. As reported in Forbes Magazine, 88% of consumers polled indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers] – from Generation Z to Baby Boomers – say they would pay more" for such products, specifically

including foods with no artificial flavors.[5]  Forty-one percent (41%) of consumers rated the absence of artificial flavors in food products as "Very Important," and eighty percent (80%) of North American consumers are willing to pay a premium for foods with no artificial ingredients.[6]

68.     Defendant's labeling and advertising reflect these consumer preferences – not by making the Products solely with natural ingredients, but instead by concealing the fact that the Products are artificially flavored.

69.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.

70.     Under the Illinois Food, Drug and Cosmetic Act (410 ILCS 620/11), a food is misbranded:

(a)  If its labeling is false or misleading in any particular, [or,]

. . .

(k) If it bears or contains any artificial flavoring, artificial coloring or chemical preservative, unless it bears labeling stating that fact.

71.     Similarly, California's Health & Safety Code, and other states' applicable codes, state that "[a]ny food is misbranded if it is bears or contains any artificial flavoring, artificial

---

[5] *Consumers Want Healthy Foods - And Will Pay More For Them*"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited March 22, 2018).

[6] The Nielsen Company, Global Health and Wellness Survey, "Healthy Eating Habits Around the World," 2015; https://www.nielsen.com/content/dam/nielsenglobal/eu/

nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf; (last visited March 22, 2018).

coloring, or chemical preservative, unless its labelling states that fact." (California Health & Safety Code, § 110740.)

72.     Federal and state law therefore require Defendant to include sufficient notice on the Products' labels to alert consumers that the Product is artificially flavored.

73.     Defendant failed to do so. Accordingly, Defendant's Products are misbranded and illegal to distribute or sell in the U.S. and in any state in the U.S.

74.     Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act"), 815 ILCS 505/1, et seq., as well as 815 Illinois Compiled Statutes ("ILCS") 510/2 (False advertising), and other states' similarly applicable laws.

75.     Defendant was aware that consumers, like Plaintiffs and the Class, prefer natural products to those that are artificially flavored.

76.     Defendant intended for Plaintiffs and the Class to be deceived, and Plaintiffs and the Class actually were deceived by the unlawful labeling.

77.     Defendant deceived Plaintiffs and the Class into purchasing the Products by unlawfully concealing that they are artificially flavored.

78.     Plaintiffs and the Class lost money as a result of Defendant's conduct because they would not have purchased the Product or would not have paid as much as they had in the absence of Defendant's misrepresentations and omissions.

### B. Plaintiffs' Purchases of the Products

79.     Plaintiff Willard purchased one or more of the Products several times since April 2018 in Cook County, Illinois, during the Class Period defined herein.

80.     Plaintiff Willard purchased one of the Products most recently on January 5, 2020 at a Jewel-Osco supermarket located at 944 S. York Road, in Elmhurst, Illinois.

81.     Plaintiff Blackman purchased one or more of the Products several times since 2016 at various locations in San Diego County, California during the Class Period defined herein.

82.     Both Plaintiffs were deceived by, and justifiably relied upon, the Products' deceptive labeling. Plaintiffs, like any reasonable consumers, believed consistent with U.S. and state law that if a beverage label does not include a statement that it is artificially flavored then that beverage does not contain artificially flavoring ingredients.

83.     Plaintiffs justifiably relied on Defendant's omission from the Product label the legally required disclosure of artificial flavoring.

84.     Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the labels on the back of products to discover that a front label is false and misleading, or to search the labels for information that federal regulations require be displayed prominently on the front – and, in fact, under state law are entitled to rely on statements that Defendant deliberately places on the Products' labeling.

85.     Defendant, but not Plaintiffs, knew or should have known that this labeling was in violation of federal regulations and state law.

86.     Because Plaintiffs reasonably assumed the Products were free of artificial flavoring based on the Products' labels when they were not, Plaintiffs did not receive the benefit of their purchases. Instead of receiving the benefit of a product free of artificial flavoring, Plaintiffs received a Product that was unlawfully labeled to deceive consumers into believing that it was naturally flavored and contained no artificial flavoring, in violation of federal and state labeling regulations.

13

87.     Plaintiffs would not have purchased the Products in the absence of Defendant's misrepresentations and omissions or would only have been willing to pay less for the Products than they did.

88.     The Products were worth less than what Plaintiffs paid, and they would not have paid as much as they did for the Products absent Defendant's false and misleading statements and omissions.

89.     Plaintiffs therefore lost money as a result of Defendant's unlawful behavior.

90.     Plaintiffs and the Class altered their position to their detriment and suffered a loss in an amount equal to the amounts they paid for the Products.

91.     Plaintiffs intend to, seek to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which indicate that the Products are naturally flavored, are lawful and consistent with the Products' ingredients.

## CLASS ACTION ALLEGATIONS

92.     Plaintiffs brings this action on behalf of themselves and all others similarly situated (the "Class"), as well as several Sub-Classes, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

93.     The Class is defined as follows:

All citizens of U.S. states and territories who made retail purchases of the Products in the U.S. for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff, on or after February 2014 and until notice is disseminated to the Class (the "Class").

94.     An Illinois Sub-Class is defined as follows:

All Illinois citizens who made retail purchases of the Products in Illinois, for personal use and not for resale, excluding Defendant and Defendant' officers, directors, employees, agents and affiliates, and the Court and its staff, on or after February, 2015 and until notice is disseminated to the Class (the "Class").

95.     A California Sub-Class is defined as follows:

All citizens of the State of California who made retail purchases of the Products within California, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff, on or after February, 2014 and until notice is disseminated to the Class.

96.     During the Class Period, the Products unlawfully contained the undisclosed artificial flavoring ingredient dl-malic acid and were otherwise improperly labeled. Defendant failed to label the Products as required by federal and state law.

97.     During the Class Period, the Class purchased the misbranded Products, and paid a price premium for the Products compared to similar products lawfully labeled.

98.     The proposed Class and Sub-Classes meet all criteria for a class action, including numerosity, commonality, typicality, predominance, superiority, and adequacy of representation.

99.     This action has been brought and may properly be maintained as a class action against Defendant.  While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of members in the Class. The members of the Class are so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

100.    The proposed Class satisfies typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased one or more of the Products, were deceived by the false and deceptive labeling, and lost money as a result of purchasing Products that were illegal to sell in the United States.

101.    The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Product's retail purchase price which is generally less than $5.00 per retail unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

102.    Because Defendant's misrepresentations were made on the labels of the Products, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, then Defendant can continue to deceive consumers and violate state and federal law with impunity.

103.    The proposed Class representatives satisfy adequacy of representation.  Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

104.    There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

105.    Questions of law and fact common to Plaintiffs and the Class include:

    i.   Whether Defendant failed to disclose the presence of the artificial flavoring ingredient dl-malic acid in the Product;

    ii.   Whether Defendant's labeling omissions and representations constituted false advertising under state and federal law;

    iii.   Whether Defendant's conduct violated Federal regulations;

    iv.   Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

    v.   Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

    vi.   Whether Defendant's conduct constituted a violation of The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 502/1 et seq. ("ICFA").

    vii.   Whether Defendant's conduct constituted a violation of state common law;

    viii.   Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

    ix.   Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

106.    Plaintiffs will fairly and adequately protect the interests of the Class, have no interest that is incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

107.    Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

108.    Class treatment is therefore appropriate under federal law.

109.    Class damages will be adduced at trial through expert testimony and other competent evidence.

110.    For consumers who might have bought the Products had they been labeled accurately and priced fairly, the price-premium consumers paid for the falsely-advertised Products, as a percentage of the Products' retail price, is a proper measure of those class members' damages.

111.    For consumers who would not have purchased the Products at all, had they known the Products contained artificial flavors, the difference between the retail price paid and the intrinsic value of the ingredients is one proper measure of damages.

112.    Food-industry consumer research is consistent and readily supports such estimates of price-premium, as consumers qualitatively and quantitatively report that they seek out, value, and are willing to pay a premium for food products with no artificial flavors and some consumers simply will not knowingly purchase food products that contain artificial flavors.

113.    On information and belief, based on publicly available information, Plaintiffs allege that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated price premium and revenue for sales to the Class during the proposed Class Period, exceeds $5 million.

## CAUSES OF ACTION
### I.
### ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE BUSINESS PRACTICES ACT – 815 ILCS § 505/1, 2
### (Plaintiff Willard, on behalf of Class and Illinois Sub-Class)

114.    Plaintiff Willard re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

115.    Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act" or "ICFA").

116.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

117.     Defendant's actions alleged herein violated the Act.

118.     Defendant committed multiple deceptive acts or practices.

119.     Defendant intended that Plaintiff Willard and the Class rely on that deception.

120.     Plaintiffs and the Class and Illinois subclass actually did rely on that deception.

121.     Defendant's conduct was in the course of trade or commerce.

122.     Plaintiff Willard and the Class suffered damage as a result of those violations.

123.     Defendant violated the ICFA by engaging in unfair and/or deceptive practices, including, but not limited to, the misrepresentation, concealment, suppression, or omission of material facts, while participating in trade or commerce with the knowledge and/or intent that the State of Illinois, its citizens and others would rely on their deceptive conduct.

124.     In so doing, Defendant acted with reckless disregard meriting an award of punitive damages.

125.     Defendant intended that Plaintiff Willard and each of the other members of the Class and Illinois Sub-Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

126.    As a result of the Defendant's use of unfair or deceptive acts or business practices, Plaintiff Willard and each of the other members of the Class and Illinois Sub-Class have sustained damages in an amount to be proven at trial.

127.    Had Defendant disclosed the true nature of its Product, Plaintiff Willard and the other class members would not have purchased the Product or would have paid substantially less for the Product.

## II.

## CALIFORNIA STATE UNFAIR COMPETITION LAW (UCL)

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (Plaintiff Blackman, on behalf of California Sub-Class)

128.    Plaintiff Blackman re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

129.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful … business act or practice."

130.    Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

131.    The UCL "unlawful prong" borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

132.    Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, California's Sherman Law as it incorporates U.S. FDA regulations as well as specific California food labeling regulations including Cal. Health & Saf. Code § 114089.

133. Among other violations, Defendants' conduct in unlawfully packaging and distributing the Products in commerce in California violated Sherman Law packaging and labeling regulations.

134. The Products' labels fail to disclose that each contains a synthetic artificial flavoring in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

135. The Products contain dl-malic acid.

136. The dl-malic acid is a flavoring material; it is included in the Products to create, simulate and reinforce the characterizing fruit flavors.

137. The dl-malic acid in the Products is derived from petrochemicals, not from a natural material as defined in 21 C.F.R. § 101.22, and is therefore by law an artificial flavor.

138. Defendants fail to inform consumers of the presence of the artificial flavor in the Product, on either the front-of-package or back labels as required by law.

139. Defendant's practices are therefore unlawful as defined in Section 17200 of the California Civil Code.

140. Defendants' practices as described herein were at all times during the Class Period also "unfair" under California's UCL.

141. Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

142. While Defendant's decision to label the Products deceptively and in violation of California law may have some utility to Defendant in that it allows Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the

premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

143.    Defendant's conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unfair and unethical behavior.

144.    Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

145.    Plaintiffs' purchases and all California Sub-Class members' purchases of the Products took place in California.

146.    Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

147.    Defendant failed to properly disclose material facts to Plaintiffs and the Class in Defendant's advertising and marketing of the Products.

148.    Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include:

A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

149.    Defendant's conduct is also "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

150.    Defendant intended that Plaintiffs and the Class rely on Defendant's acts and omissions in misbranding and falsely labeling the Products to induce them to purchase the Products and to pay more for the Products than they otherwise would have, and Plaintiffs and the class members actually did rely on those acts and omissions.

151.    Had Defendant properly and conspicuously disclosed all material information regarding the Products, Plaintiffs and the Class would not have purchased the Products or would only have been willing to pay less for the Products than they did.

152.    Plaintiffs and the California Sub-Class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising:  they were denied the benefit of the bargain when they purchased the Products based on Defendant's violation of the applicable laws and regulations, and purchased the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

153.    The acts, omissions, and practices of Defendant detailed herein proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

154.    Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

155.    Pursuant to California Business & Professions Code § 17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent

business practices and requiring Defendant to return to the Class the amount of money improperly collected.

156.     Defendant's conduct therefore violated California's consumer protection laws and Defendant is liable to each California Sub-Class member who purchased any of the Products in California during the Class period.

## III.
## FRAUD BY OMISSION
### 815 ILCS 505/2, Cal. Civ. Code §§ 1709-1710,
### and similar state statute & common law
### (Plaintiffs, on behalf of the Class)

157.     Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

158.     An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. (See, e.g., 815 ILCS 505/2, Cal. Civ. Code §§ 1709-1710; and similar).

159.     Plaintiffs bring this claim for fraud by omission pursuant to 815 ILCS 505/2, California Civil Code §§ 1709-1710, *et seq*, and all similar state statutory and common law providing for a cause of action sounding in fraud by omission.

160.     Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase the Product. Specifically, Defendant actively concealed the fact that the Products contain artificial flavoring ingredients.

161.     Plaintiffs and the Class were unaware of these omitted material facts, acted in reliance on the omissions, and would not have purchased the Products or would have paid less for the Products if they had known of the concealed facts.

162.     Plaintiffs and the Class suffered injuries that were proximately caused by Defendant's active concealments and omissions of material facts.

24

163.    Defendant's fraudulent concealments and omissions were a substantial factor in causing the harm because Plaintiffs and the Class would not have purchased the Products or would have paid less for the Products if all material facts were properly disclosed.

## IV.
## FALSE ADVERTISING LAW ("FAL")
## Cal. Bus. & Prof. Code §§ 17500, *et seq.*
## (Plaintiff Blackman, on behalf of the California Sub-Class)

164.    Plaintiff Blackman re-alleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

165.    Defendant advertised, marketed, and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state food labeling regulations.

166.    The Products' labeling and advertising presents the Products as if they were solely naturally flavored by the natural fruit(s) shown on the labels.

167.    Under California's False Advertising Law, Business and Professions Code § 17500 *et seq.*,

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . .  to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500.

168.   Defendant's labeling and advertising statements on the Products' labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

169.   Defendant's labeling and advertising statements, which communicated to consumers that the Products contain the identified natural fruit(s) and concealed the fact that they contain synthetic artificial flavor, were untrue and misleading, and Defendant at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

170.   Plaintiffs and class members were injured when they purchased Products in reliance on Defendant's false advertising that they otherwise would not have, or paid more for the Products than they would have in the absence of that false advertising.

171.   Defendant's conduct violated California's False Advertising Law.

## V.

### NEGLIGENT MISREPRESENTATION
### Illinois common law; Cal. Civ. Code §§ 1709-1710;
### and similar states' statute & common law
### (Plaintiffs, on behalf of the Class and Sub-Classes)

172.   Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

173.   Plaintiffs bring this claim for negligent misrepresentation pursuant to Illinois common law, California Civil Code §§ 1709-1710, *et seq*, and similar states' statute and common law.

174.   Negligent misrepresentation allows a plaintiff to recover economic loss resulting from his or her reliance on a false statement made by a defendant who acted unreasonably in not ascertaining the truth.

175.   Defendant either acted deliberately or failed to use reasonable care in ascertaining the facts regarding the presence of artificial flavor in the Products.

176.    Defendant had a duty to ascertain and disclose to Plaintiff and Class members the existence of artificial flavoring ingredients in the Products.

177.    Defendant was in a superior position to Plaintiff and the Class members to ascertain this fact such that reliance by Plaintiff and the Class was justified.

178.    Defendant possessed the skills and expertise to know both this fact and to know that this information would influence consumers' purchasing decisions.

179.    During the applicable Class period, Defendant negligently misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the presence in the Products of artificial flavoring ingredients.

180.    Defendant was careless in ascertaining the truth of its representations.

181.    Plaintiffs and the Class were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

182.    Plaintiffs and the Class would not have purchased the Products, or would have paid less for the Products, if they had known the true facts.

## VI.
## VIOLATIONS OF THE CALIFORNIA
## CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code §§ 1750, *et seq.*
### (by Plaintiff Blackman on behalf of the California Sub-Class)

183.    Plaintiff re-alleges and incorporates herein by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

184.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

185.    Plaintiff Blackman and the California Sub-Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

186.    The Product is a "good" as defined by Cal. Civ. Code § 1761.

187.    Defendant's failure to label the Products in compliance with federal and state labeling regulations was an unfair, deceptive, unlawful, and unconscionable commercial practice.

188.    Defendant' conduct violates the CLRA, including but not limited to, the following provisions:

189.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

190.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

191.    § 1770(a)(9): advertising goods with intent not to sell them as advertised.

192.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

193.    As a result of Defendant's violations, Plaintiff Blackman and the California Sub-Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had the Products been labeled truthfully, and in the form of the reduced value of the Products purchased compared to the Products as labeled and advertised.

194.    On or about February 20, 2020, Plaintiff sent a CLRA notice letter to Defendant Tropicana which complies with California Civil Code § 1782(a). Plaintiff sent Tropicana, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant

that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated in California and in Illinois, and the general public, pray for judgment against Defendant as follows:

A.     An order confirming that this action is properly maintainable as a class action as defined above;

B.     An order appointing Plaintiffs as class and sub-class representatives and The Law Office of Ronald A. Marron and Elliot Law Office as counsel for the Class;

C.     An order declaring that the conduct complained of herein violates the CLRA;

D.     An order declaring that the conduct complained of herein violates the UCL;

E.     An order declaring that the conduct complained of herein violates the FAL;

F.     An order declaring that the Defendant's conduct as described above constitutes unfair and/or deceptive acts or practices within the meaning of Illinois Consumer Fraud Act § 2;

G.      An order declaring that the Defendant's conduct as described above constitutes fraud by omission;

H.     An order declaring that the Defendant's conduct as described above constitutes negligent misrepresentation;

I.     An order requiring Defendant to disgorge any benefits received from Plaintiff and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Product;

J.     An order requiring Defendant to pay restitution and damages to Plaintiff and Class

members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

K.      An award of punitive damages in an amount to be proven at trial;

L.      An order enjoining Defendant's deceptive and unfair practices;

M.      An order requiring Defendant to conduct corrective advertising;

N.      An order requiring Defendant to bear the cost of Class notice;

O.      An award of pre-judgment and post-judgment interest;

P.      An award of attorneys' fees and costs; and

Q.      Such other and further relief as this Court deems just, equitable, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: February 28, 2020          RESPECTFULLY SUBMITTED,

DAVID ELLIOT

By:      */s/ David Elliot*
Attorney for Plaintiffs
Illinois Attorney No. 6277822
Elliot Law Office, P.C.
3200 Fourth Avenue, Suite 207
San Diego, CA 92103
Telephone: (858) 228-7997
davidelliot@elliotfirm.com

*/s/ Ronald A. Marron*
Attorney for Plaintiffs
California Attorney No. 175650

Filing for pro hac vice

Law Offices of Ronald A. Marron

651 Arroyo Drive

San Diego, CA 92103

Telephone: (619) 696-9006

Fax: (619) 564-6665

ron@consumersadvocates.com


*Counsel for Plaintiff and the Proposed Class*