**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE WILLARD and AMIE BLACKMAN, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:20-cv-01501 |
| v. | ) ) | Honorable John F. Kness |
| THE TROPICANA MANUFACTURING COMPANY, INC., | ) ) ) | Honorable Magistrate Sheila M. Finnegan |
| Defendant. | ) ) ) | |

<u>**DEFENDANT TROPICANA MANUFACTURING COMPANY'S
MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**</u>

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................... 1

II.  SUMMARY OF ALLEGATIONS ......................................................................... 2

III. LEGAL STANDARD ............................................................................................ 3

IV.  ARGUMENT ......................................................................................................... 4

    A. **Plaintiffs' Claims Are Preempted By The Federal Food, Drug, And Cosmetic Act.** ...................................................................................................... 4

        1. *FDA Regulations And Plaintiffs' Complaint Reflect That Malic Acid Is Not An "Artificial Flavor."* ............................................................................... 6

        2. *Tropicana Properly Labels The Characterizing Flavors In Accordance With FDA Regulations.* ............................................................................. 10

        3. *Tropicana Properly Labels "Malic Acid" Using Its Common Or Usual Name Pursuant To FDA Regulations.* .................................................... 11

    B. **Plaintiffs Fail To State A Claim For Relief Under Rules 8 and 9(b).** .................... 13

        1. *Plaintiffs Fail To Plausibly Allege That A Reasonable Consumer Would Be Deceived By The Challenged Packaging.* .......................................... 13

        2. *Plaintiffs' Complaint Fails To Meet Rule 9(b)'s Requirements With Respect To The Challenged Products.* .................................................... 15

    C. **Plaintiffs' Causes of Action Fail For Additional Reasons.** .................................. 18

        1. *Plaintiffs Fail To State An "Unfair" Or "Unlawful" Claim Under The UCL.* ......................................................................................................... 18

        2. *Plaintiffs Fail To State A Claim For Negligent Misrepresentation.* ...... 20

        3. *Plaintiffs Fail To State A Claim For Fraud By Omission.* ...................... 22

    D. **Plaintiffs' Claims Are Partially Barred By The Applicable Statutes Of Limitations.** .......................................................................................................... 22

    E. **Plaintiffs' ICFA Claims Based On Purchases Made Outside Illinois Must Be Dismissed.** ...................................................................................................... 23

V.   CONCLUSION .................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altria Grp., Inc. v. Good,*
    555 U.S. 70 (2008)........................................................................................5

*Anderson Elec. v. Ledbetter Erection Corp.,*
    503 N.E.2d 246 (Ill. 1986)........................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................3

*Bardin v. DaimlerChrysler Corp.,*
    39 Cal. Rptr. 3d 634 (Ct. App. 2006)........................................................19

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005)....................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................3

*Benson v. Fannie May Confections Brands, Inc.,*
    No. 17-cv-3519, 2018 WL 6446391 (N.D. Ill. Dec. 10, 2018)...................6

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001) ....................................................................14

*Branca v. Bai Brands, Ltd. Liab. Co.,*
    No. 3:18-cv-00757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019)............12

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002) ..................................................................23

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
    No. 10-cv-1044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)..................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (Cal. 1999)......................................................................19

*Cheslow v. Ghirardelli Chocolate Co.,*
    No. 4:19-cv-07467, 2020 WL 1701840 (N.D. Cal. Apr. 8, 2020)............14

*Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.,*
    24 F. Supp. 3d 750 (N.D. Ill. 2014) .........................................................22

# TABLE OF AUTHORITIES

Page(s)

*Clark v. Perfect Bar, LLC*,
   No. 18-cv-6006, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)............................................14

*Connick v. Suzuki Motor Co., Ltd.*,
   675 N.E.2d 584 (Ill. 1996) .................................................................................................22

*Cowen v. Lenny & Larry's, Inc.*,
   No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) .........................................16, 17

*Credit General Ins. Co. v. Midwest Indem. Corp.*,
   916 F. Supp. 766 (N.D. Ill. 1996) .....................................................................................23

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)............................................................................................................4

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..........................................................................................................16

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (Ct. App. 2006)..............................................................................18

*Duke v. Am. Med. Sys.*,
   No. 94-cv-1878, 1995 WL 505472 (N.D. Ill. Aug. 17, 1995) .................................................5

*Dvora v. Gen. Mills, Inc.*,
   No. 11-cv-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011)..............................................11

*Eberts v. Goderstad*,
   569 F.3d 757 (7th Cir. 2009) ............................................................................................21

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................................14

*Forsher v. J.M. Smucker Co.*,
   No. 5:19-cv-00194, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020).....................................16

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ..............................................................................................13

*Fuchs v. Menard, Inc.*,
   No. 17-cv-01752, 2017 WL 4339821 (N.D. Ill. Sept. 29, 2017)............................................13

*Hairston v. S. Beach Beverage Co.*,
   No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012)..............................................11

*Henry v. Gerber Prods. Co.*,
   No. 3:15-cv-02201, 2016 WL 1589900 (D. Or. Apr. 18, 2016).............................................11

iii

## TABLE OF AUTHORITIES

Page(s)

*Hilsley v. Gen. Mills, Inc.*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019) ................................................................12

*Hunt v. Sunny Delight Beverages, Co.*,
    No. 18-cv-00557, 2019 WL 1873230 (C.D. Cal. Apr. 9, 2019) ...........................16

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ........................................................13, 14, 15

*In re: 100 % Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017) ....................................................................15

*Ivie v. Kraft Foods Glob., Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ......................................................6, 7, 9, 10

*Johns v. Bayer Corp.*,
    No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ...............................17

*Kline v. Iovate Health Scis. U.S.A., Inc.*,
    No. 15-cv-2387, 2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) ...........................16

*Kmak v. Sorin Grp. Deutschland GmbH*,
    No. 17-cv-4759, 2017 WL 8199974 (N.D. Ill. Dec. 12, 2017)............................21

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................19

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...............................................................19

*Kubilius v. Barilla Am., Inc.*,
    No. 18-cv-6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) ...............................23

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    No. 09-cv-7670, 2010 WL 2742310 (N.D. Ill. July 8, 2010) ...................................4

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188, 2012 WL 5458396 (N.D Cal. June 14, 2012)...........................16

*Lateef v. Pharmavite LLC*,
    No. 12-cv-5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) .................................5

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (Ct. App. 2003)................................................................13

*Lopez v. Nissan N. Am., Inc.*,
    201 Cal. App. 4th 572 (Ct. App. 2011)................................................................21

# TABLE OF AUTHORITIES

Page(s)

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)............................................................................................19

*Morris v. Mott's LLP,*
  No. 18-cv-01799, 2019 WL 948750 (C.D. Cal. Feb. 26, 2019) .............................12

*Munning v. Gap, Inc.,*
  238 F. Supp. 3d 1195 (N.D. Cal. 2017) ...............................................................20

*Nichols v. Naturmed, Inc.,*
  No. 16-cv-7356, 2017 WL 1333146 (N.D. Ill. Apr. 11, 2017)................................5

*Oliveira v. Amoco Oil Co.,*
  726 N.E.2d 51 (Ill. 2000)....................................................................................23

*Payton v. County of Kane,*
  308 F.3d 673 (7th Cir. 2002) ..............................................................................17

*Pelayo v. Nestle USA, Inc.,*
  989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,*
  631 F.3d 436 (7th Cir. 2011) ..........................................................................4, 15

*Robinson v. Helicopter Co., Inc. v. Dana Corp.,*
  34 Cal. 4th 979 (2004) .......................................................................................20

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.,*
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ..................................................................21

*Rynes v. Stryker Corp.,*
  No. 10-cv-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011)............................20

*In re Safeway Tuna,*
  No. 15-cv-05078, 2016 WL 3743364 (N.D. Cal. July 13, 2016) ..........................20

*Simon v. E. Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976)............................................................................................17

*Simpson v. California Pizza Kitchen,*
  989 F. Supp. 2d 1015 (S.D. Cal. 2013)..........................................................18, 19

*Sims v. Campbell Soup Co.,*
  No. 18-cv-0668, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ..........................12

*Sonner v. Premier Nutrition Corp.,*
  No. 18-15890, --- F.3d ---, 2020 WL 3263043 (9th Cir. June 17, 2020)..........19, 20

# TABLE OF AUTHORITIES

Page(s)

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..................................................................................17

*Stiles v. Trader Joe's Co.*,
   No. 16-cv-04318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017).............................13

*Stofer v. Shapell Indus., Inc.*,
   233 Cal. App. 4th 176 (Ct. App. 2015)........................................................22

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)...................................................................................16

*Swearingen v. Santa Cruz Natural, Inc.*,
   No. 13-cv-04291, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) .........................20

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ...............................................................5, 11

*Turek v. Gen. Mills, Inc.*,
   754 F. Supp. 2d 956 (N.D. Ill. 2010) ..........................................................6

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .........................18

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .....................................................7, 10

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) .................................................................19

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ......................................................21

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ..............................................................21, 22

*Wilson v. Frito-Lay N. Am.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................16, 17

**Statutes**

815 ILCS 505/2..........................................................................................3

815 ILCS 505/10a......................................................................................22

21 U.S.C. § 343........................................................................................11

21 U.S.C. § 343-1 ......................................................................................5

# TABLE OF AUTHORITIES

Page(s)

Cal. Bus. & Prof. Code § 17200 ...................................................................................3

Cal. Bus. & Prof. Code § 17208 .................................................................................23

Cal. Bus. & Prof. Code § 17500 ...................................................................................3

Cal. Civ. Code § 1709 ............................................................................................3, 22

Cal. Civ. Code § 1710 ...................................................................................................3

Cal. Civ. Code § 1750 ...................................................................................................3

Cal. Civ. Code § 1783 .................................................................................................22

Cal. Civ. Proc. Code § 338 .........................................................................................22

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................3

Fed. R. Civ. P. 9 .....................................................................................3, 4, 15, 17

Fed. R. Civ. P. 12 ..........................................................................................................3

**Regulations**

21 C.F.R. § 101.4 ........................................................................................................12

21 C.F.R. § 101.22 ...............................................................................1, 6, 8, 10, 11, 19

21 C.F.R. § 170.3 ..........................................................................................................7

21 C.F.R. § 172.515 ....................................................................................................10

21 C.F.R. § 182.60 ......................................................................................................10

21 C.F.R. § 184.1069 ...............................................................................................7, 12

## I.    INTRODUCTION

This suit is one of many cases filed by the same two plaintiff's firms against food and beverage manufacturers attacking products that contain an ingredient called malic acid.[1]  Here, Plaintiffs contend that the use of this ingredient in ten different Tropicana juice products (the "Products") means that the Products must carry an "Artificially Flavored" statement on the front of the package.  But Plaintiffs' claims conflict with FDA regulations and Plaintiffs fail entirely to plausibly allege that such a label statement is required.  They never explain how malic acid could possibly provide over ten significantly different "characterizing" fruit flavors.[2]

Unlike many other cases filed by Plaintiffs' counsel advancing similar theories of liability, the packaging at issue in this case does not include any representation of "all-natural ingredients" or "no artificial flavors."  Indeed, Plaintiffs allege no direct "affirmative misrepresentations" at all.  What's left is a pure omission claim—but the packaging in this case *expressly discloses* malic acid in the ingredients list, in perfect accord with FDA regulations.  Nor can Plaintiffs identify any aspect of the Products' packaging that, in the real world, could plausibly be "deceptive" to an objectively reasonable consumer.

This is a paradigmatic example of lawyer-driven litigation premised on a fundamentally untenable theory of consumer deception.  The Complaint should be dismissed in its entirety, with prejudice.

---

[1]  Plaintiffs' counsel have filed 18 complaints against 32 companies, pertaining to 171 different products and 87 different flavors, on the theory asserted here.  *See* Request for Judicial Notice attached as Appendix A.

[2]  A "characterizing flavor" is defined by FDA regulations as a product's "primary recognizable flavor(s)" which may be represented "by word, vignette, e.g., depiction of a fruit, or other means."  21 C.F.R. § 101.22(i).

## II. SUMMARY OF ALLEGATIONS

Plaintiffs Jacqueline Willard and Amie Blackman filed their complaint on February 28, 2020. Compl., ECF No. 1. They challenge the labeling of ten Tropicana products: Trop 50 Farmstand Apple, Tropicana 100% Juice Apple Juice, Trop 50 No Pulp, Trop 50 Orange Mango, Trop 50 Orange Peach, Trop 50 Pomegranate Blueberry, Trop 50 with Calcium & Vitamin D, Trop 50 with Vitamin C & Zinc, Tropicana Grape Drink, and Tropicana Fruit Medley. *Id.* ¶ 36. Plaintiffs concede that the ingredient lists disclose that the Products include "Malic Acid." *Id.* ¶¶ 24, 31. Plaintiffs further admit that the "fruits named and illustrated" on the front labels of the Products are the "characterizing" flavors for these juices. *Id.* ¶¶ 55, 56, 57. Plaintiffs do not allege that the Products lack the fruit shown on the products' front labels. Nor do Plaintiffs allege that the beverages do not taste like their characterizing flavors. Moreover, Plaintiffs do not allege that the packaging contains any representation that the Products are "all-natural" or "free of artificial flavors."

Plaintiffs' chief complaint is that Tropicana fails to disclose that the Products are, in their view, artificially flavored. Despite the Products undeniably containing and tasting like the various fruits they are made of, Plaintiffs assert that malic acid "confer[s] a 'tart, fruity' flavor" to the Products. *Id.* ¶¶ 50, 51, 59. Without *any supporting factual allegations*, Plaintiffs allege that malic acid is an "artificial flavor." *Id.* ¶¶ 32, 37. Thus, Plaintiffs assert (erroneously) that federal and state laws require Tropicana to prominently state that the Products are "artificially flavored" on the front and back of the packaging. *Id.* ¶¶ 39, 40, 41, 61.

Plaintiffs challenge the following label statements as deceptive: (1) the pictures and statements on the front of the Products' packages (*id.* ¶¶ 19, 20, 21, 33, 34); (2) the lack of

disclosure of "Artificially flavored" or "Artificial flavor" on the Products' labels (*id.* ¶¶ 39, 40, 43); and (3) the term "malic acid" in the ingredient list on the back of the package (*id.* ¶ 42).

Plaintiffs assert six causes of action. They bring claims for: (1) violation of the Illinois Consumer Fraud and Deceptive Business Act ("ICFA"); (2) violation of the "unlawful" and "unfair" prongs of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL"); (3) violation of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750) ("CLRA"); (4) violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500) ("FAL"); (5) fraud by omission (815 ILCS 505/2, Cal. Civ. Code §§ 1709-1710); and (6) negligent misrepresentation (Illinois common law; Cal. Civ. Code §§ 1709-1710). Plaintiffs fail entirely to allege which of the challenged Products they actually purchased, and they attempt to bring their ICFA claims on behalf of purchasers nationwide.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint is required to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept factual allegations as true, this tenet is "inapplicable to legal conclusions." *Id.* at 678. After stripping away the "conclusory statements," the Court must rely on its "judicial experience and common sense," *id.* at 679, to determine whether the remaining factual allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a), and would justify subjecting the Defendant to the costs and burdens of discovery.

Plaintiffs' fraud-based claims must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, which require a plaintiff to "state with particularity the

circumstances constituting fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (applying Rule 9(b) to ICFA claim); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670, 2010 WL 2742310, at *2, *11, *12 (N.D. Ill. July 8, 2010) (applying Rule 9(b) to CLRA and UCL claims). Under Rule 9(b), the Complaint is required to include particularized allegations regarding "the who, what, when, where, and how" of the misconduct charged. *Walgreen*, 631 F.3d at 441.

## IV.    ARGUMENT

Plaintiffs' claims in this case contradict express FDA regulations and are also detached from the common sense required under the *Twombly/Iqbal* pleading standards. They must be dismissed as preempted, implausible, and inadequately pled.

### A.    Plaintiffs' Claims Are Preempted By The Federal Food, Drug, And Cosmetic Act.

Plaintiffs challenge the Products' labels on three grounds. First, Plaintiffs assert that the presence of malic acid requires Tropicana to affirmatively label the front and back of the Products' packages as "Artificially Flavored" because malic acid allegedly is "artificial" and "simulates, resembles, or reinforces" the characterizing fruit flavors in the Products. Compl. ¶¶ 41, 52, 59, 60, 61, 72, 73. Second, they suggest that by including the characterizing flavor on the label of the Products, Tropicana deceives consumers into believing the Products are "all natural." *Id.* ¶¶ 14, 17, 19, 20, 25, 44, 68, 75. Third, they assert that Tropicana "misleadingly identifies the added DL-malic acid only as generic 'malic acid' instead of using the specific, non-generic name of the ingredient." Compl. ¶ 42. Each of these claims fails because they seek to impose labeling requirements inconsistent with federal law.

The Supremacy Clause of the United States Constitution grants Congress the power to preempt state law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). In

evaluating a statute's preemptive effect, courts are instructed that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal citations omitted). Enacted in 1938, the FDCA, 21 U.S.C. § 301 et seq., "establishes a comprehensive scheme for federal oversight of foods, . . . labeling, and advertising." *Duke v. Am. Med. Sys.*, No. 94-cv-1878, 1995 WL 505472, at *2 (N.D. Ill. Aug. 17, 1995). In 1990, Congress thus passed the Nutritional Labeling and Education Act ("NLEA"), amending the FDCA "to ensure uniform labeling of food products." *Lateef v. Pharmavite LLC*, No. 12-cv-5611, 2012 WL 5269619, at *2 (N.D. Ill. Oct. 24, 2012). Critical to that effort is the NLEA's express preemption provision, under which no state "may directly or indirectly establish . . . any requirement for the labeling of food . . . that is not identical to the requirement" of relevant federal regulations. 21 U.S.C. §§ 343-1(a)(2), (a)(3); *see also Nichols v. Naturmed, Inc.*, No. 16-cv-7356, 2017 WL 1333146, at *2 (N.D. Ill. Apr. 11, 2017) ("'The purpose of the NLEA is to prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients.'"). The Seventh Circuit has explained that "[i]t is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).

The preclusive effect of the express preemption provision extends "beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005). Claims like those at issue here, asserting violations of state consumer protection statutes and related causes of action, thus fall within the purview of the express preemption provision where the suit would impose labeling requirements "not

identical" to those established by federal regulations. *See Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 961–62 (N.D. Ill. 2010), *aff'd*, 662 F.3d at 427 (finding plaintiff's assertion that the fiber in Defendant's product must be labeled "non-natural" preempted by FDA regulations); *Benson v. Fannie May Confections Brands, Inc.*, No. 17-cv-3519, 2018 WL 6446391, at *2 (N.D. Ill. Dec. 10, 2018) (Under Section 343-1, "FDA expressly preempts state law claims that impose labeling requirements 'not identical' to its own requirements"); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013) (finding Defendant's labels "wholly in compliance with FDA regulations" and therefore the plaintiff's claims were "expressly preempted by the FDCA"). Plaintiffs' claims here are expressly preempted by the FDCA because the Products' labels comply with FDA regulations.

### 1. FDA Regulations And Plaintiffs' Complaint Reflect That Malic Acid Is Not An "Artificial Flavor."

Plaintiffs assert that malic acid is an artificial flavor that simulates the different characterizing fruit flavor of each of the 10 challenged Products and therefore requires an "artificial flavor" label on the front and back of the packages under FDA regulations. Compl. ¶¶ 60–61. In other words, Plaintiffs allege that malic acid imparts an apple taste in Tropicana Apple Juice; a pomegranate blueberry taste in Trop 50 Pomegranate Blueberry; an orange mango taste in Trop 50 Orange Mango; an orange peach taste in Trop 50 Orange Peach; and a grape taste in Tropicana Grape Drink. In Plaintiffs' view, malic acid is a super-ingredient that, when added to any beverage, can transmogrify the taste of that product into *any* characterizing flavor.

Those allegations fail as a matter of law for two reasons.

*First*, FDA regulations *and* Plaintiffs' Complaint demonstrate that malic acid is not an "artificial flavor" in the Products. Under FDA regulations, an artificial flavor is a substance, "the function of which is to impart flavor." 21 C.F.R. § 101.22(a)(1). The Complaint makes clear that

6

malic acid is not a "flavor" in the Products because it "do[es] not give the product[s] an *original* taste—rather, [it] amplif[ies] whatever characterizing flavor it has from another source." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013); *Ivie*, 961 F. Supp. 2d at 1042 (emphasis added). Indeed, FDA regulations confirm that malic acid can serve "as a flavor enhancer as defined in § 170.3(o)(11) of this chapter" or as a "pH control agent as defined in § 170.3(o)(23) of this chapter." 21 C.F.R. § 184.1069(b).

The allegations in Plaintiffs' Complaint confirm that the malic acid in the Products serves as a flavor enhancer or pH control agent, rather than a flavor. A "flavor enhancer" is a "[s]ubstance[] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11) (emphasis added). Meanwhile, a "pH control agent" is a "[s]ubstance[] added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

The Complaint incorporates by reference a website that explains that "malic acid is used as a *flavor enhancer* in food preparation," and that its "mellow, smooth, persistent sourness can be blended with multiple food acids, sugars, high intensity sweeteners, flavors, and seasonings to create distinctive taste experiences in foods, beverages, and confections." Compl. ¶ 50 n.4 (*citing* "Malic Acid," by The Chemical Company, https://thechemco.com/chemical/malic-acid) (emphasis added) (Scavetti Decl. Ex. A). This webpage *nowhere* says that malic acid is a "flavor," much less that it provides a fruit flavor to fruit juices, or ten *different* characterizing fruit flavors. Scavetti Decl. Ex. A. Instead, the webpage expressly states that malic acid is used in non-carbonated beverages, like these Products, as "a preferred acidulant" and "because *it enhances* fruit flavors, *improves pH stability*, and masks the aftertaste of some salts." *Id.* at 5. (emphases

7

added).  In other words, the only source document Plaintiffs reference about malic acid states that it serves as a flavor enhancer and pH control agent in juices.  *Id.*

Plaintiffs cite this webpage as stating that malic acid "confer[s] a 'tart, fruity' flavor to food products," (Compl. ¶ 50), but they have fundamentally misquoted and misunderstood their own source.  Plaintiffs' *only* source regarding malic acid's properties directly contravenes their claims about malic acid's function in juice products.  Indeed, this *critical pleading failure* distinguishes Plaintiffs' claims regarding these Products from other cases involving malic acid in which the court has been reluctant to determine at the pleading stage whether preemption is appropriate.

*Second*, even if Plaintiffs had adequately pled that the malic acid in the Products is an artificial flavor (they have not), their claims would still be preempted.  Under 21 C.F.R. § 101.22(i), a front-of-pack "Artificially Flavored" statement is required *only* if malic acid "simulates, resembles, or reinforces" the *characterizing flavor* of the Products.  Plaintiffs own allegations contradict the proposition that malic acid "simulates, resembles, or reinforces" the different characterizing flavors here.  Plaintiffs acknowledge that various different fruits are the characterizing flavors of the various different Products (Compl. ¶¶ 55 ("Apple is a characterizing flavor"), 56 ("Orange is a characterizing flavor"), 57 ("The fruits named and illustrated on the other Products' front labels are similarly characterizing flavors for those Products")), and they do not deny that the Products contain juice from those fruits.  Plaintiffs fail to allege, however, that malic acid tastes like apple, orange, grape, pomegranate, blueberry, peach, or mango.  Nor could they—it is not possible that that malic acid could simultaneously be delivering all of these uniquely different flavors in each of the different Products.

Plaintiffs' "bare, conclusory assertion" that malic acid "simulates" the various different characterizing fruit flavors, *see* Compl. ¶¶ 41, 51, 60, "without any basis for such a conclusion in

the FDA regulations or otherwise," is insufficient to state a viable omission claim.  *Ivie*, 961 F. Supp. 2d at 1042.  Perhaps most telling is the judicially noticeable fact that Plaintiffs' counsel have previously asserted that malic acid "simulates" *over eighty flavors* including acai blueberry, apple, apple pie, apple white cranberry, apricot, berry, berry medley, black cherry, blackberry lime, blood orange, blue raspberry, blueberry, blueberry lemonade, blueberry pomegranate, cheese, cherry, cherry limeade, cherry pomegranate, cherry punch, citrus lime, clementine, coconut lime, coconut mango, coconut pineapple, cranberry, cranberry- apple, cranberry cherry, cranberry grape, cranberry lemonade, cranberry lime, cranberry mango, cranberry passionfruit, cranberry pineapple, cranberry pomegranate, cranberry raspberry, cranberry strawberry, dragonfruit, fruit medley, fruit punch, ginger lime, goji raspberry, grape, grape black currant, grape raspberry, grape peach, grapefruit, green apple, guava, honeydew, lemon, lemonade, lime, mango, mango pineapple, orange, orange carrot, orange mango, orange passionfruit, orange peach, orange pineapple, orange strawberry, passionfruit, peach, peach mango, peach nectarine, pineapple, pink grapefruit, pink lemonade, pomegranate, raspberry, sour apple, strawberry, strawberry guava, strawberry kiwi, strawberry lemonade, strawberry watermelon, superfruit, tangerine, tangerine orange, tropical blend,  watermelon, watermelon mint, watermelon lime, white cranberry peach, and white raspberry.[3]  In doing so, Plaintiffs' counsel repeatedly has confused *flavors*, which have a characteristic taste of their own, with *flavor enhancers and pH regulators*, which do not. Plaintiffs also fail entirely to cite a single source stating that malic acid is an "artificial flavor," or imparts the different characterizing fruit flavors of the Products.

At best, the Complaint alleges that malic acid is "tart."  Compl. ¶ 50.  *But this is not enough*. "Tart" is not a flavor.  Just as artificial sweeteners may be used to enhance the sweetness of a

---

[3]  *See* Request for Judicial Notice attached as Appendix A.

strawberry-flavored product without triggering the artificial flavoring label requirement, *see Viggiano*, 944 F. Supp. 2d at 889, malic acid may be used to enhance the tartness of a fruit-flavored product, like sweet-and-sour candy. But neither sweeteners nor malic acid used in this manner may be considered a "flavor" because they do not impart an *original flavor* of their own accord. As a result, malic acid does not "simulate, resemble, or reinforce" the characterizing flavors of the Products.

Plaintiffs' request that this Court impose a requirement to label malic acid as an "artificial flavor" directly conflicts with federal regulations and is therefore preempted.[4] As a result, all of Plaintiffs' claims are preempted by the FDCA and federal regulations, and must be dismissed.

> 2. *Tropicana Properly Labels The Characterizing Flavors In Accordance With FDA Regulations.*

Plaintiffs next contend that it is misleading to label the Products with the names and images of the fruits they taste like and are made from. Compl. ¶¶ 14, 17, 19, 20, 25. They contend that the names like "Farmstand Apple" and pictures of "ripe, fresh apples" mislead consumers into thinking the Product "is all natural." *Id.* ¶¶ 19–20. This claim also fails as a matter of law. Plaintiffs point to no statement or representation by Tropicana on the labels that say "all natural." Moreover, the characterizing flavor names on the Product are expressly authorized by FDA regulations.

Section 101.22(i) of FDA regulations permits the label of food and beverage products to describe and depict the "characterizing flavor" of the product on the front of the package. *See* 21

---

[4]  Malic acid does not "appear[ ] on the lists of artificial flavors promulgated by the FDA." *Viggiano*, 944 F. Supp. 2d at 889 (*citing* 21 C.F.R. § 172.515(b); 21 C.F.R. § 182.60). As other courts have recognized, this further confirms that malic acid is not an artificial flavor. *Cf. Ivie*, 961 F. Supp. 2d at 1041 (relying on the same regulations to conclude that potassium citrate and sodium citrate are not artificial flavors).

C.F.R. § 101.22(i)(1). Thus, for example, FDA "permits a manufacturer to use the name and image of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain *any* of that fruit, or contains no fruit at all." *Dvora v. Gen. Mills, Inc.*, No. 11-cv-1074, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011).

Indeed, "the vast weight of authority [] has concluded [that] the FDCA preempts state law claims premised on an allegedly misleading depiction of a fruit or vegetable on a product's label representing its characterizing flavor." *Henry v. Gerber Prods. Co.*, No. 3:15-cv-02201-HZ, 2016 WL 1589900, at *8 (D. Or. Apr. 18, 2016); *see also Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429-JFW, 2012 WL 1893818, at *3 (C.D. Cal. May 18, 2012) ("The Court concludes that Plaintiff's claims related to Defendants' use of the names of various fruits to describe the different flavors of Lifewater are preempted.").

Here, Plaintiffs do not dispute that the fruits depicted and described on the Products are the "primary recognizable flavor[s]" of the Products, such that the Products properly label "apple" and "orange" (among other fruits), as part of their "characterizing flavor[s]." Compl. ¶¶ 55, 56, 57. That is precisely how each of the Products *must* be labeled. *See* 21 C.F.R. § 101.22(i)(1). And Plaintiffs cannot allege that labels that comply with the FDA's flavoring regulations mislead consumers into thinking the products are all natural, because then Plaintiffs would seek to impose a state-law requirement that is not identical to the FDCA. *See Turek*, 754 F. Supp. 2d at 957–58.

### 3. Tropicana Properly Labels "Malic Acid" Using Its Common Or Usual Name Pursuant To FDA Regulations.

Finally, Plaintiffs allege that the Products are improperly labeled because they list "Malic Acid" in the ingredients list, rather than "DL-Malic Acid," a reference to the particular form of malic acid that Plaintiffs contend Tropicana uses. But the FDCA and FDA regulations require that a food label bear the "the common or usual name of each . . . ingredient . . . ." 21 U.S.C. §

343(i)(2); *see also* 21 C.F.R. § 101.4(a)(1) (requiring ingredients on food labels to be listed by their "common or usual name"). This is precisely what Tropicana has done here.

Pursuant to express FDA regulations, "[m]alic acid" is the "common name" for all forms of malic acid. 21 C.F.R. § 184.1069(a) ("Malic Acid . . . is the common name"). Thus, Tropicana properly labels "malic acid" by using its common name. Courts have repeatedly rejected efforts by plaintiffs to require manufacturers to list "DL-Malic Acid" in the ingredients list, recognizing that FDA regulations "plainly state[] that 'malic acid' is the common name for the forms listed" and therefore "do not require that malic acid be listed in the ingredients by a more specific name." *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1049 (S.D. Cal. 2019); *see also Morris v. Mott's LLP*, No. 18-cv-01799, 2019 WL 948750, at *5 (C.D. Cal. Feb. 26, 2019) (same); *Sims v. Campbell Soup Co.*, No. 18-cv-00668, 2018 WL 7568640, at *24 (C.D. Cal. Sept. 24, 2018) (finding the plaintiff's claim preempted by FDA regulations because "the common and usual name for the ingredient in V8 Splash is 'malic acid,' rather than the scientific name of 'd-1 malic acid'")[5]; *Branca v. Bai Brands, Ltd. Liab. Co.*, No. 3:18-cv-00757, 2019 WL 1082562, at *6 (S.D. Cal. Mar. 7, 2019) (deeming plaintiff's claims preempted, as inconsistent with FDA regulations, because "Defendants were not required to list 'malic acid' by its specific isomer "d-1 malic acid" on the ingredient lists").[6] Plaintiffs' claim that more specificity is somehow necessary or appropriate is contrary to and plainly preempted by federal law.

---

[5] Plaintiffs' counsel voluntarily dismissed the *Sims* case on November 28, 2018, with prejudice. *Sims v. Campbell Soup Co.*, No. 5:18-cv-00668 (C.D. Cal.), ECF No. 33.

[6] Plaintiffs' counsel voluntarily dismissed the *Branca* case on March 13, 2020, with prejudice. *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757 (S.D. Cal.), ECF No. 61.

**B.      Plaintiffs Fail To State A Claim For Relief Under Rules 8 and 9(b).**

Plaintiffs' claims are preempted by the FDCA and federal regulations, and that alone ends the case.  Nonetheless, even if Plaintiffs' claims were not preempted (they plainly are), they cannot survive Rule 12(b)(6) because they do not state a plausible theory of consumer deception and do not satisfy Rule 9(b)'s specificity requirements with respect to the challenged Products.

> 1.   *Plaintiffs Fail To Plausibly Allege That A Reasonable Consumer Would Be Deceived By The Challenged Packaging.*

Plaintiffs assert claims under various California consumer protection statutes, namely, the UCL, FAL, and CLRA, as well as the ICFA.  In order to state a claim under these statutes a plaintiff must allege that the challenged statements or other representations are likely to deceive a reasonable consumer.  *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 977–78 (C.D. Cal. 2013); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (dismissing ICFA claim because Defendant's "labels [we]re literally true" and complied with all federal statutes); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756–59 (N.D. Ill. 2015); *Stiles v. Trader Joe's Co.*, No. 16-cv-04318, 2017 WL 3084267, at *3, *5 (C.D. Cal. Apr. 4, 2017).

Under the reasonable consumer test, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Stiles*, 2017 WL 3084267, at *3 (*quoting Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003)).  Instead, it "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled."  *Pelayo*, 989 F. Supp. 2d at 977–78 (*quoting Lavie*, 105 Cal. 4th at 508).

13

Further, when assessing a plaintiff's "reasonable understanding" of a product's label, courts "must view the allegedly misleading statement in light of the information available to" the consumer. *Ibarrola*, 83 F. Supp. 3d at 759. Indeed, courts expect a reasonable consumer to "have considered the other information [] encountered on the product's packaging." *Id.* Where no reasonable consumer would be misled by challenged label statements, dismissal with prejudice is proper at the pleading stage. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016); *Ibarrola*, 83 F. Supp. 3d at 756, 759; *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001).

All of Plaintiffs' claims fail because the Complaint does not identify any actionable misrepresentation on the challenged packaging that would deceive a reasonable consumer. Plaintiffs allege that the "pictures of ripe, fresh apples" and the name "Farmstand" led them to believe "that the Product is an all-natural juice product." Compl. ¶¶ 19, 20. But Plaintiffs do *not* allege that the Products' packaging makes any claims that the juice was "all natural" or had "no artificial flavors." The Products' packaging lacks any such representations and bears an ingredient list that accurately discloses the presence of "malic acid." Courts have made clear that in the absence of an affirmative misrepresentation on the product label, "[p]laintiffs and the general public are not free to ignore the ingredient list." *See Cheslow v. Ghirardelli Chocolate Co.*, No. 4:19-cv-07467, 2020 WL 1701840, *8 (N.D. Cal. Apr. 8, 2020) (granting motion to dismiss claims under California's UCL, FAL, and CLRA); *see also Clark v. Perfect Bar, LLC*, No. 18-cv-6006, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) (finding that "no consumer, on notice of the actual ingredients described on the packaging[,]" would be deceived concerning the product's sugar content "merely because the packaging elsewhere refers to it as a health bar").

14

This is true both under California law and Illinois law. Thus, Plaintiffs' "claims are doomed by the readily accessible ingredient panel on the [P]roducts" that clearly discloses the presence of malic acid. *In re: 100 % Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923, 926 (N.D. Ill. 2017) (finding that "a reasonable consumer would not understand '100% Grated Parmesan Cheese' to warrant that the product contains only cheese without first inspecting the ingredient list"); *see also Ibarrola*, 83 F. Supp. 3d at 756–59 (dismissing ICFA claim because a reasonable consumer would not conclude that the product contains "only naturally occurring, unrefined sugars" when the ingredients list contains partially refined sweeteners).

Particularly in the absence of any express statement or claim about natural ingredients, the Complaint does not plausibly suggest that a reasonable consumer would interpret Tropicana's packaging to communicate a specific message that every ingredient in every product is "all natural." The plausible inference is that the Products are fruit juices, they taste like the flavors on their labels, and their ingredients are specifically communicated and shown to the consumer.

### 2. Plaintiffs' Complaint Fails To Meet Rule 9(b)'s Requirements With Respect To The Challenged Products.

Under Rule 9(b), Plaintiffs must identify with particularity "the who, what, when, where, and how" of the misconduct charged. *Walgreen*, 631 F.3d at 441. Here, Plaintiffs altogether fail to identify *what* Products they actually purchased and which of the Products' differing labels were material to their purchase of these Products. Although Plaintiffs bring claims against "at least ten such products," (Compl. ¶ 35) they merely allege that "Plaintiff Willard purchased one or more of the Products" in Illinois (*id.* ¶¶ 2, 79) and that "Plaintiff Blackman purchased one or more of the Products . . . at various locations in San Diego County, California" (*id.* ¶ 81). Plaintiffs provide only two barely-legible images of two of the Products (*id.* ¶¶ 23, 30), despite the fact that the ten

Products they list all differ in their front and back of package labeling. Plaintiffs do not allege which specific products they bought.[7] Dismissal is appropriate where plaintiffs "generally allege they purchased [the Defendant's] products within the last four years" but did "not allege which products they purchased or when they purchased them." *Kline v. Iovate Health Scis. U.S.A., Inc.*, No. 15-cv-2387, 2017 WL 1135580, at *4 (S.D. Cal. Mar. 27, 2017); *see also Forsher v. J.M. Smucker Co.*, No. 5:19-cv-00194, 2020 WL 1531160, at *3 (N.D. Ohio Mar. 31, 2020) (dismissing UCL, FAL and CLRA claims where plaintiff "fail[ed] to identify what Products he purchased, from where, and at what time beyond a two-year window").

Plaintiffs lack standing to bring claims with respect to most or all of the Products. To satisfy Article III, a plaintiff must demonstrate that he has "'such a personal stake . . . as to warrant his invocation of federal court jurisdiction.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). It is axiomatic that a "plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (emphasis added). Plaintiffs have failed to satisfy these requirements with respect to the Products they did not purchase.[8] As the Supreme Court has long held, bringing a case as a class action "adds nothing"

---

[7]  Notably, Plaintiffs' counsel was sanctioned in another one of their malic acid cases, for "knowingly making false factual contentions . . . that were not a product of reasonable mistake" for "founding their allegations on images that did not accurately reproduce the labels on the [p]roducts [p]laintiffs actually purchased." *Hunt v. Sunny Delight Beverages, Co.*, No. 18-cv-00557, 2019 WL 1873230, at *4 (C.D. Cal. Apr. 9, 2019) (dismissing action with prejudice following failure to comply with sanctions order, for "repeated misconduct," "show[ing] a proclivity for wasting the time and resources of the Court by filing false pleadings," "flagrant repudiation of an explicit directive," and "twice [ ] attempt[ing] to base claims on falsities.").

[8]  *See Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-1530, 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017) (dismissing claims as to products plaintiffs did not purchase for lack of standing); *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013) (dismissing, for lack of standing, claims regarding unpurchased products where the court would have to "assume that each of these subtly different Products is like all the others"); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2012 WL 5458396, at *4–5 (N.D Cal. June 14, 2012) (dismissing for lack of standing plaintiffs' claims relating to products they did not purchase); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-cv-1044, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (consumer who purchased Defendant's Drumstick ice cream product did not have standing to

to the standing inquiry; standing requires that the named plaintiff must "personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (citation omitted); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 & n. 6 (2016); *see also Cowen*, 2017 WL 4572201, at *3 ("[T]he Seventh Circuit's position that plaintiffs cannot 'piggy-back on the injuries of the unnamed class members' in order to acquire standing 'through the back door of a class action' is clear.") (*quoting Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002)).

Here, Plaintiffs provide a list of "at least ten" Products (Compl. ¶ 35) and allege no facts demonstrating that the unpurchased Products were "substantially similar" to the purchased Products. *See Cowen*, 2017 WL 4572201, at *3 (rejecting "substantial similarity test" with respect to unpurchased products); *Wilson*, 961 F. Supp. 2d at 1141 (finding plaintiffs failed to meet the "substantial similarity" test). Tropicana's Products have different flavors, different ingredients, different images, and different label statements and claims. Plaintiffs do not even attempt to account for these potentially significant differences. Plaintiffs merely conclude that "other Products in this action are similarly misbranded." Compl. ¶ 29. This is not enough to establish standing. Plaintiffs' vague allegations with respect to the Products do not permit Tropicana or the Court to determine whether they have standing to bring their claims, and accordingly, the Complaint must be dismissed under Rule 9(b).

---

challenge the label on Defendant's Dibs products), *aff'd* 475 F. App'x 113 (9th Cir. 2012); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (explaining that plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon").

### C.  Plaintiffs' Causes of Action Fail For Additional Reasons.

Plaintiffs' failure to allege a plausible claim that is not preempted by federal regulations dooms all of their causes of action.  But even if these fundamental defects could be overlooked—and they cannot—their causes of action suffer from additional flaws that also require dismissal.

#### 1.  Plaintiffs Fail To State An "Unfair" Or "Unlawful" Claim Under The UCL.

"Under the UCL, '[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided.'"  *Simpson v. California Pizza Kitchen*, 989 F. Supp. 2d 1015, 1026 (S.D. Cal. 2013) (*quoting Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (Ct. App. 2006)).  Plaintiffs here, however, have failed to plausibly allege (1) that there was any consumer injury; or (2) that any injury suffered was not reasonably avoidable.  To the contrary, Plaintiffs' allegations do not reflect that the Products' labels were deceptive, and Plaintiffs admit that Tropicana disclosed the presence of malic acid in the ingredient list.  Compl. ¶¶ 31, 42.  Because Plaintiffs had every opportunity to inspect the product, they could have reasonably avoided the purported injury here by simply reading the label.  *See Simpson*, 989 F. Supp. 2d at 1026 (finding that the alleged injury could have been reasonably avoided where "[t]he nutrition facts panels of all of the Contested Pizzas clearly indicate their TFA content").  Plaintiffs also cannot transform through their mere say-so a purported violation of technical food labeling requirements into "a practice that 'offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976, 2014 WL 1028881, at *18 (N.D. Cal. Mar. 14, 2014) (*quoting*

*Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006)). Thus, Plaintiffs have failed to state a claim under the unfair prong of the UCL.[9]

Plaintiffs' claim under the UCL's "unlawful" prong also fails because Plaintiffs must, but failed to, sufficiently allege a predicate violation of law. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). As discussed, Plaintiffs have not plausibly pled any violation of FDA flavor regulations (21 CFR § 101.22), California's Sherman Law (which incorporates FDA regulations), or any other law. Accordingly, their unlawful claim fails. *See Simpson*, 989 F. Supp. 2d at 1025–26 (dismissing plaintiff's claim under the UCL's unlawful prong after determining that Defendant cannot be held liable for the predicate violation of law); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (same).

Plaintiffs' UCL "unfair" and "unlawful" equitable claims for restitution must also be dismissed because Plaintiffs were required, but failed, to plead that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, No. 18-15890, --- F.3d ---, 2020 WL 3263043, at *8 (9th Cir. June 17, 2020) (affirming dismissal of UCL claims where plaintiff "fail[ed] to demonstrate that she lack[ed] an adequate legal remedy"). "[A] UCL action is equitable in nature," *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003), and the "remedies available in a UCL or FAL action are limited to injunctive relief and restitution," both of which are equitable remedies. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130

---

9 Plaintiffs' Complaint is far from a paragon of clarity, but to the extent that it can be construed to raise a claim under the "unfair" prong of the UCL based on alleged injury to "competing food product manufacturers," Compl. ¶ 143, Plaintiffs lack constitutional and statutory standing to raise such a claim. The "irreducible constitutional minimum of standing" requires that each plaintiff have personally suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs assert that Tropicana's conduct injures its competitors (Compl. ¶ 143), but they do not allege that they or any members of the class and sub-classes they seek to represent are competitors of Tropicana, *id.* ¶ 93 (defining the putative class as consumers "who made retail purchases of the Products . . . for personal use and not for resale . . ."). Nor do they assert that any of the alleged harm to competitors in turn caused them harm as consumers.

(2009). Here, Plaintiffs seek damages in connection with their California common law and statutory fraud by omission and negligent misrepresentation claims, as well as their CLRA claim—they cannot allege they lack a remedy at law. *See* Compl. ¶¶ 126, 161, 162, 163, 182, 193, 194. It "matters not that a plaintiff may have no remedy if her other claims fail," "where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (*quoting Rynes v. Stryker Corp.*, No. 10-cv-5619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011)). Accordingly, Plaintiffs' UCL claims for equitable restitution must be dismissed. *Sonner*, 2020 WL 3263043, at *8.

### 2. *Plaintiffs Fail To State A Claim For Negligent Misrepresentation.*

Plaintiffs' negligent misrepresentation claims under Illinois and California law also fail, on multiple bases. First, Plaintiffs' claims are barred by the economic loss rule, which prohibits tort claims in contract disputes "unless [the plaintiff] can demonstrate harm above and beyond a broken contractual promise." *Robinson v. Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). The rule "prevents the law of contract and the law of tort from dissolving one into the other." *Id.* Indeed, "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). Courts routinely dismiss negligent misrepresentation claims in the food and beverage-litigation context where the plaintiff "ha[s] failed to state an independent basis for their damages apart from the economic loss." *Swearingen v. Santa Cruz Natural, Inc.*, No. 13-cv-04291, 2016 WL 4382544, at *10 (N.D. Cal. Aug. 17, 2016); *In re Safeway Tuna*, No. 15-cv-05078, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016). Here, Plaintiffs seek recovery only for alleged economic

loss, not injury to persons or property. Compl. ¶¶ 90, 153, 174. Accordingly, Plaintiffs' negligent misrepresentation claims are barred.

In addition, Plaintiffs' claims are barred because "'[a] negligent misrepresentation claim requires a positive assertion, not merely an omission.'" *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (*citing Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (Ct. App. 2011)). Here, Plaintiffs improperly base their negligent misrepresentation claims on Defendant's alleged "omission" that the Products "contain artificial flavor" (Compl. ¶¶ 43, 83). Such "implied" assertions or representations are categorically insufficient. *See In re Vizio*, 238 F. Supp. 3d at 1230 ("An 'implied' assertion or representation is not enough.") (internal citations omitted). The California negligent misrepresentation claim must be dismissed.

The Seventh Circuit also has recognized that "negligent misrepresentation by nondisclosure is a claim of questionable heritage and has been soundly rejected in some jurisdictions." *Eberts v. Goderstad*, 569 F.3d 757, 765 (7th Cir. 2009); *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 820–21 (N.D. Ill. 2016) (dismissing Plaintiffs' omission-based negligent misrepresentation claims). To the extent a negligent misrepresentation claim could even be brought under Illinois law based on an omission (it cannot), Illinois law is clear that a negligent misrepresentation claim also requires that Defendant acted carelessly in ascertaining the truth of the statement and owed a duty to disclose to the plaintiff. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012); *see also Kmak v. Sorin Grp. Deutschland GmbH*, No. 17-cv-4759, 2017 WL 8199974, at *7–10 (N.D. Ill. Dec. 12, 2017). Plaintiffs make no particularized factual allegations about Tropicana's purported recklessness or why Tropicana has a special duty of disclosure to them.

###### 3.  *Plaintiffs Fail To State A Claim For Fraud By Omission.*

Plaintiffs' fraud by omission claims under California and Illinois law also fail.  Claims for common law and statutory fraud under both states' laws require *intentional* concealment or suppression of a material fact with the *intent* to defraud the plaintiff (among other requirements, including reliance and damages proximately caused thereby).  *See Stofer v. Shapell Indus., Inc.*, 233 Cal. App. 4th 176, 186 (Ct. App. 2015) ("[D]efendant must have intentionally concealed or suppressed the fact with intent to defraud."); *Wigod*, 673 F.3d at 573 (plaintiff must allege with particularity that Defendant "intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff").[10]

Here, Plaintiffs' fraud by omission claims come nowhere close to alleging facts demonstrating that Tropicana intentionally concealed or suppressed a material fact.  On the contrary, the presence of "malic acid" is explicitly disclosed on the packaging (Compl. ¶ 24), by its "common or usual name," in direct compliance with FDA regulations.

### D.  Plaintiffs' Claims Are Partially Barred By The Applicable Statutes Of Limitations.

Plaintiffs' claims should be dismissed as preempted, implausible, and inadequately pleaded.  If for any reason any of the claims survive (they should not), they must be dismissed at least in part on statute of limitations grounds.  The Complaint asserts that Plaintiff Blackman first purchased one or more of the Products in 2016 in San Diego, California.  *Id.* ¶ 81.  Plaintiffs also seek to represent a putative class of individuals who purchased the Products as far back as 2014.

---

[10]  Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers"); *Chi. Faucet Shoppe, Inc. v. Nestlé Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 755, 761–62 (N.D. Ill. 2014) (a fraud claim under the ICFA requires plaintiffs to allege with particularity "a deceptive act" and that Defendant "intended for plaintiff to rely on the deception."); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996) (same).

*Id.* ¶¶ 93, 94, 95. A significant portion of Plaintiffs' claims are time-barred. Plaintiffs' CLRA, FAL, ICFA, fraud by omission, and California negligent misrepresentation claims are subject to a three-year statute of limitations. Cal. Civ. Code § 1783; Cal. Civ. Proc. Code § 338(a), (d); 815 ILCS 505/10a(e). Meanwhile, their UCL claims are subject to a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Their Illinois negligent misrepresentation claim is subject to a five-year statute of limitations. *See Credit General Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 774 (N.D. Ill. 1996). The Complaint was filed on February 28, 2020. Thus, Plaintiffs' CLRA, FAL, ICFA, fraudulent omission, and California negligent misrepresentation claims based on purchases pre-dating February 28, 2017, UCL claims based on purchases pre-dating February 28, 2016, and Illinois negligent misrepresentation claim based on purchases pre-dating February 28, 2015, must be dismissed as untimely.

## E. Plaintiffs' ICFA Claims Based On Purchases Made Outside Illinois Must Be Dismissed.

Finally, Plaintiffs purport to assert claims under the ICFA based on purchases nationwide. Compl. ¶¶ 114–127. But claims under the ICFA based on purchases of the Products outside of Illinois must be dismissed.

Dismissal is appropriate at the pleading stage where a plaintiff seeks impermissible extraterritorial application of a state statute on the face of the complaint. *See Kubilius v. Barilla Am., Inc.*, No. 18-cv-6656, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019). The Seventh Circuit has underscored that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). Applying this principle, Illinois courts have made clear that the ICFA has no extraterritorial application. *See Kubilius*, 2019 WL 2861886, at *2 ("[T]he ICFA does not apply to the claims of class members who

purchased their products outside of Illinois."); *Oliveira v. Amoco Oil Co.*, 726 N.E.2d 51, 61 (Ill. 2000) (finding that the ICFA "does not apply to consumers outside Illinois"), *rev'd on other grounds*, 776 N.E.2d 11 (Ill. 2002). Accordingly, to the extent any of Plaintiffs' claims survive, Plaintiffs' attempt to apply the IFCA nationwide must be rejected and their ICFA claims based on out-of-state purchases must be dismissed.

## V.    CONCLUSION

Plaintiffs' complaint and incorporated sources undermine their claim that malic acid is an artificial flavor in the Tropicana Products. No particularized facts support that claim. To the contrary, as the FDA regulations and the sources relied on in the Complaint state, malic acid is a pH control agent and a flavor enhancer. Nor would any reasonable consumers believe, based on pictures and flavor names on the bottle, that Tropicana has represented all of these Products to be 100% all natural. And Plaintiffs have no basis under FDA regulations for alleging the ingredient statement on the Products must say DL-Malic Acid rather than malic acid. This Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Dated: June 29, 2020                Respectfully submitted,

BY:      /s/   *Andrew S. Tulumello*
            Andrew S. Tulumello

**GIBSON, DUNN & CRUTCHER LLP**

Andrew S. Tulumello (*pro-hac vice*)
Jason R. Meltzer (*pro-hac vice*)
Arianna Scavetti (*pro-hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539
Atulumello@gibsondunn.com
Jmeltzer@gibsondunn.com
Ascavetti@gibsondunn.com

**FOX, SWIBEL, LEVIN & CARROLL, LLP**

Erik J. Ives
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Tel:  (312) 224-1239
Fax:  (312) 224-1201
eives@foxswibel.com


*Attorneys for Defendant Tropicana Manufacturing
Company, Inc.*

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on June 29, 2020, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/     Erik J. Ives*
Erik J. Ives