# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACQUELINE WILLARD, an individual, and AMIE BLACKMAN, an individual, on behalf of themselves individually, and on behalf of all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TROPICANA MANUFACTURING COMPANY, INC. a Delaware corporation;<br><br>Defendant. | Case No: 1:20-cv-01501<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TROPICANA MANUFACTURING COMPANY'S MOTION TO DISMISS**<br><br>Honorable John F. Kness<br><br>Honorable Magistrate Sheila M. Finnegan |

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………………..1

II.     FACTUAL BACKGROUND ...............................................................................2

III.    LEGAL STANDARD ..........................................................................................3

IV.    ARGUMENT ......................................................................................................3

  A.  Plaintiffs' Malic Acid Claims Are Not Preempted ....................................................3

    1.  The Product Labels Fail to Comply with Federal and State Regulations Regarding Artificial Flavors ......................................................................................................4

      i.   *The Complaint Plausibly Alleges that Malic Acid is an Artificial Flavor* ..........5

      ii.  *Defendant Unlawfully Labels its Products by Failing to Disclose that the Characterizing Flavors are Artificial* ......................................................................7

      iii.  *Defendant Unlawfully Labels its Products by Failing to Disclose the Common or Usual Name of Artificial dl Malic Acid*...................................................8

  B.  Whether a Reasonable Consumer Would be Misled Is Not Appropriate for Determination on a Motion to Dismiss ............................................................................9

  C.  Plaintiffs' Complaint Meets the Requirements of Rule 9(b)....................................11

  D.  Plaintiffs Have Stated Claims for "Unlawful" and "Unfair" Conduct under the UCL …………………………………………………………………………………...13

    1.  Plaintiffs State a Claim Under the "Unlawful" Prong of the UCL because Plaintiffs Have Alleged Violations of California's Sherman Law and Its Incorporated Federal Regulations ...................................................................................................13

    2.  Plaintiffs Also State a Claim Under the "Unfair" Prong of the UCL...................13

      i.   *Defendant's Conduct is "Unfair" Under the Balancing Test* ..........................14

      ii.  *Defendant's Conduct is "Unfair" Under the Tethering Test* ..........................14

E.    Plaintiffs Adequately Allege Claims for Negligent Misrepresentation and

Omission ........................................................................................................16

    1.    Plaintiffs Adequately State a Claim for Negligent Misrepresentation ..............16

    2.    Plaintiffs Adequately State a Claim for Fraud by Omission ...........................18

F.    Plaintiffs' Claims are not Partially Barred by the Statute of Limitations ..............18

    1.    The Delayed Discovery Rule Tolls the Statute of Limitations ........................19

    2.    Fraudulent Concealment Tolls the Statute of Limitations ..................................20

    3.    The Continuing Violation Doctrine Tolls the Statute of Limitations..................21

G.    A Detailed Choice of Law Analysis is Improper at this Stage of the Litigation.......21

V.    CONCLUSION ......................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Aberin v. Am. Honda Motor Co., Inc.,*
    2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ................................................................16

*Adkins v. Comcast Corp.,*
    2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) ..................................................................16

*Allred v. Frito-Lay N. Am., Inc.,*
    2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ..........................................................passim

*Allred v. Kellogg Co.,*
    2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ..........................................................6, 10

*Anderson v. Jamba Juice Co.,*
    888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................................................................11

*Aryeh v. Canon Business Solutions, Inc.,*
    292 P.3d 871 (Cal. 2013) ...............................................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .........................................................................................................3

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
    2012 WL 2990766 (N.D. Cal. July 20, 2012) ...............................................................12

*Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.,*
    2013 WL 633202 (N.D. Cal. Feb. 20, 2013) .................................................................19

*Augustine v. Talking Rain Beverage Company, Inc.,*
    386 F.Supp.3d 1317 (S.D. Cal. 2019) ....................................................................17, 18

*Becerra v. Gen. Motors LLC,*
    2017 WL 951028 (S.D. Cal. Mar. 10, 2017) ...........................................................13, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................................................3

*Branca v. Nordstrom. Inc.,*
    2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ................................................................11

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
  2016 WL 3519294 (E.D. Cal. June 27, 2016) .................................................................17

*Brown v. Starbucks Corporation*,
  2019 WL 4183936 (S.D. Cal. 2019).............................................................................15

*Card Tech Int'l, LLLP v. Provenzano*,
  2012 WL 2135357 (C.D. Cal. June 7, 2012).................................................................14

*Clancy v. The Bromley Tea Co.*,
  308 F.R.D. 564, 573 (N.D. Cal. 2013) ......................................................................3, 22

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ....................................................................................19

*Conley v. Gibson*,
  355 U.S. 41, 47 (1957) ...............................................................................................3

*Cover v. Windsor Surry Co.*,
  2015 WL 4396215 (N.D. Cal. July 17, 2015) ...............................................................19

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ......................................................................................9

*Dephillippis v. Living Essentials, LLC*,
  2018 WL 7051065 (S.D. Cal. Nov. 29, 2018)..............................................1, 7, 10, 12

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020)......................................................................16

*E–Fab, Inc. v. Accountants, Inc. Services*,
  153 Cal.App.4th 1308 (2007) .....................................................................................19

*Engurasoff v. Coca-Cola Company*,
  2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ..............................................................13

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014)..........................................................................4

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 Fed.Appx. 700 (9th Cir. 2011) .............................................................................17

iv

*Henderson v. J.M. Smucker Co.*,

    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ................................................... 19

*Herremans v. BMW of N. Am., LLC*,

    2015 WL 12712082 (C.D. Cal. Feb. 19, 2015) ............................................... 19

*Hilsley v. Ocean Spray Cranberries, Inc.*,

    2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ...........................................1, 4, 6

*Hunter v. Nature's Way Prod., LLC*,

    2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) .................................................. 21

*In re Clorox Consumer Litig.*,

    894 F.Supp.2d 1224 (N.D. Cal. 2012) ............................................................ 22

*In re Farm Raised Salmon Cases*,

    42 Cal. 4th 1077 (2008) ................................................................................... 4

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*,

    2011 WL 13160303 (C.D. Cal. Jan. 20, 2011) .............................................. 20

*Ivie v. Kraft Foods Global, Inc.*,

    2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ................................................... 6

*Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*,

    315 Fed.Appx. 603 (9th Cir. 2008) ................................................................ 17

*Lilly v. ConAgra Foods, Inc.*,

    743 F.3d 662 (9th Cir. 2014) ........................................................................... 9

*Luong v. Subaru of Am., Inc.*,

    2018 WL 2047646 (N.D. Cal. May 2, 2018) ................................................. 16

*Mazza v. American Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012) ......................................................................... 22

*McKell v. Washington Mut., Inc.*,

    142 Cal. App. 4th 1457 (2006) ...................................................................... 14

*Miller v. Ghirardelli Chocolate Co.*,

    912 F. Supp. 2d 861 (N.D. Cal. 2012) .......................................................... 12

*Morgan v. Apple, Inc.*,

  2018 WL 2234537 (N.D. Cal. May 16, 2018) ................................................................. 12

*Norgart v. Upjohn Co.*,

  21 Cal.4th 383 (1999) ..................................................................................................... 19

*Ortega v. Nat. Balance Inc.*,

  2013 WL 6596792 (C.D. Cal. Dec. 16, 2013) ................................................................ 19

*Regents of University of California v. Superior Court*,

  20 Cal.4th 509 (1999) ..................................................................................................... 20

*Roberts v. Electrolux Home Prod., Inc.*,

  2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) ................................................................. 20

*Ruhnke v. Skinmedica, Inc.*,

  2015 WL 12698447 (C.D. Cal. Jan. 7, 2015) ................................................................. 21

*Safransky v. Fossil Grp., Inc.*,

  2018 WL 1726620 (S.D. Cal. Apr. 9, 2018) .................................................................. 12

*Scheuer v. Rhodes*,

  416 U.S. 232 (1974) .......................................................................................................... 3

*Sims v. Campbell Soup Company*,

  2018 WL 7568640 (C.D. Cal. 2018) .............................................................................. 12

*Sonner v. Premier Nutrition Corp.*,

  962 F.3d 1072 (9th Cir. 2020). ................................................................................ 15, 16

*T. K. v. Adobe Sys. Inc.*,

  2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ............................................................... 22

*Terrazzino v. Wal-Mart Stores, Inc.*,

  335 F.Supp.3d 1074 (N.D. Ill. 2018) ............................................................................... 3

*Von Saher v. Norton Simon Museum of Art at Pasadena*,

  592 F.3d 954 (9th Cir. 2010) .......................................................................................... 18

*Werdebaugh v. Blue Diamond Growers*,

  2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ............................................................ 21, 22

*Williams v. Gerber Prod. Co.*,

    552 F.3d 934 (9th Cir. 2008) ...................................................................9, 10

*Wilson v. Frito-Lay N. Am., Inc.*

    2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)................................................4

*Zakaria v. Gerber Prod. Co.*,

    2015 WL 3827654 (C.D. Cal. June 18, 2015)............................................17

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..........................................................2

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ..........................................................2

Cal. Civ. Code §§ 1750, *et seq.* .........................................................................2

Illinois Consumer Fraud and Deceptive Business Practices Act .......................2, 4

**Rules**

Fed. R. Civ. P. 15(a)..........................................................................................22

Fed. R. Civ. P. 8 .................................................................................................3

Fed. R. Civ. P. 8(d)(2) .......................................................................................16

Fed. R. Civ. P. 8(e) .............................................................................................3

**Regulations**

21 C.F.R. § 101.22 .............................................................................2, 5, 7, 10, 15

21 C.F.R. § 101.22(i)(1)(2) ................................................................................12

21 C.F.R. § 101.22(i)(3)-(4) ................................................................................5

21 C.F.R § 101.4(a)(1) ......................................................................................2, 8

21 C.F.R. § 101.4(b).............................................................................................8

21 C.F.R. § 184.1069(b).......................................................................................6

21 C.F.R. § 184.1069(c).......................................................................................7

21 U.S.C. § 343(i) ................................................................................................8

Cal. Health & Saf. Code § 109875 *et seq.* .......................................................4, 15

Cal. Health & Safety Code § 110740 ................................................................14

Plaintiffs Jacqueline Willard and Amie Blackman (collectively "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, respectfully submit this Opposition in Response to the Motion to Dismiss that was filed by Defendant Tropicana Manufacturing Company, Inc. ("Defendant") on July 29, 2020. Dkt. No. 23 ("MTD"). For the reasons set forth below, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

## I.     **INTRODUCTION**

This is a consumer protection class action alleging that Defendant violates federal and state law by failing to disclose to consumers that its fruit-juice-based beverage products (the "Products") are artificially flavored. *See generally* Dkt. No. 1, Complaint ("Compl."). The Complaint alleges that the Products' front labels are "intended to give reasonable consumers … the impression that the Products are pure, natural, and not artificially flavored" (Compl., ¶ 17), but "[a]ll the Products contain artificial dl-malic acid, an artificial flavoring agent." (Compl., ¶ 37). "Defendant knowingly omits all the federal and state law required label disclosures informing consumers that the Products contain artificial flavors." (Compl., ¶ 13).

In its Motion to Dismiss, Defendant argues that (1) Plaintiffs' claims are preempted because Defendant complies with federal regulations regarding artificial flavors, (2) Defendant's violations are not likely to mislead a reasonable consumer, (3) Plaintiffs fail to state plausible claims, (4) Plaintiffs' claims are partially barred by the applicable statutes of limitations, and (5) the ICFA does not apply to the claims of class members who purchased the Products outside of Illinois. None of Defendant's grounds for dismissal are persuasive. Other district courts have previously rejected these arguments and declined to dismiss similar cases involving the use of malic acid as an artificial flavoring ingredient. *See, e.g., Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ("*Frito-Lay*"); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ("*Ocean Spray*"); and *Dephillippis v. Living Essentials, LLC,* No. 3:18-cv-00404-BEN-MDD, 2018 WL 7051065, at *1 (S.D. Cal. Nov. 29, 2018). This Court should reach a similar conclusion and deny Defendant's Motion to

Dismiss in its entirety.

## II.     <u>FACTUAL BACKGROUND</u>

This action was filed on February 28, 2020 in the United States District Court for the Northern District of Illinois. *See* Dkt. No. 1 ("Compl."). On June 29, 2020, Defendant filed a Motion to Dismiss the Complaint. Dkt. No. 23.

Plaintiffs are purchasers of Defendant's Products. Compl., ¶¶ 79-81. Plaintiffs allege that they justifiably relied upon and were deceived by the Products' deceptive labeling, specifically the omission of the legally-required notice that the Products contain artificial flavorings. (Compl., ¶¶ 82-83). Plaintiffs allege that "[t]he Products therefore violate federal and state law in multiple respects." Compl., ¶ 40. "First, because each Product contains added flavoring ingredients that simulate and reinforce the characterizing flavor, each Product's front label is required by both federal and state law to disclose that fact." Compl., ¶ 41 (citing Illinois Consumer Fraud Act; California Health & Safety Code § 109875 *et seq.,* (Sherman Law), incorporating 21 C.F.R. § 101.22.). "Second, each Product's ingredients list violates federal and state law because it misleadingly identifies the added dl-malic acid only as generic "malic acid" instead of using the specific, non-generic name of the ingredient." Compl., ¶ 42 (citing 21 C.F.R. § 101.4(a)(1)). The presence of artificial flavoring ingredient must also be disclosed in the back-label ingredient list. *See*, 21 C.F.R. § 101.22.

Plaintiffs allege that Defendant has violated  the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and Plaintiffs bring further causes of action for fraud and negligent misrepresentation. (*See generally*, Compl.). Plaintiffs seek to represent a nationwide class of consumers defined as "All citizens of U.S. states and territories who made retail purchases of the Products in the U.S. for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff, on or after February 2014 and until notice is disseminated to the Class (the "Class"). (Compl., ¶ 93). Plaintiffs also seek to represent

Illinois and California Sub-Classes. (Compl., ¶¶ 94-95).

## III.    LEGAL STANDARD

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"In considering a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, draws all inferences in the plaintiff's favor, and construes all facts in the light most favorable to the plaintiff." *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F.Supp.3d 1074, 1082 (N.D. Ill. 2018). Thus, to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

## IV.    ARGUMENT

### A.  Plaintiffs' Malic Acid Claims Are Not Preempted

Defendant first argues that Plaintiffs' claims are preempted. (MTD at 4). Because Plaintiffs raise only state-law claims that are consistent with or word-for-word identical to the federal regulations Defendants cite for preemptive effect, those claims are not preempted. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013).

"When Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements." *Id*. "However, it did not attempt to completely preempt state laws regarding the marketing of food products. To the contrary, Congress specifically anticipated states enacting their own identical laws." *Id*. (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th

3

1077, 1090 (2008). Instructive here is the case of *Wilson v. Frito-Lay N. Am., Inc.*, where the court held that "[s]ince Plaintiffs' state law claims rely on statutes that explicitly incorporate federal law and regulations without modification, and since those claims also do not attempt to impose stricter requirements than those laws or regulations, Plaintiffs' state law claims are not preempted. These claims are all based on the theory that by not complying with the relevant federal laws and regulations, Defendant's labels mislead and deceive consumers." No. 12-1586 SC, 2013 WL 1320468, at *9 (N.D. Cal. Apr. 1, 2013); *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) ("Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code § 109875 *et seq.*, which adopts and incorporates the FDCA.").

Here, Plaintiffs' state law claims, which are within traditional state powers regulating food safety and labeling, are likewise based on violations of California's Sherman Law and the Illinois Consumer Fraud and Deceptive Business Practices Act which are identical to the FDCA. (*See* Compl. ¶ 41). Defendant argues that "Plaintiffs' claims here are expressly preempted by the FDCA because the Products' labels comply with FDA regulations." (MTD at 6). However, as discussed further below, Plaintiffs plausibly allege that Defendant's conduct violates the applicable federal regulations. They are not seeking to hold Defendant liable for conduct that is permitted by the applicable regulations but rather for conduct that violates those regulations. The Courts in *Frito-Lay* and in *Ocean Spray* accordingly also held that similar claims concerning malic acid in foods and beverages are not preempted. *See Frito-Lay*, 2018 WL 1185227, at *3-5; *Ocean Spray,* 2018 WL 5617701, at *6-7. This Court should reach the same conclusion here.

### 1. The Product Labels Fail to Comply with Federal and State Regulations Regarding Artificial Flavors

Defendant argues that (1) malic acid is not an artificial flavor, (2) Defendant has complied with federal regulations concerning the Products' labels, and (2) malic acid is the appropriate common or usual name for the ingredient. (MTD at 6-12). The same arguments were also rejected by the *Frito-Lay* Court. *See Frito-Lay*, 2018 WL 1185227, at *4.

4

### i. The Complaint Plausibly Alleges that Malic Acid is an Artificial Flavor

Defendant argues "malic acid is not an 'artificial flavor' in the Products." (MTD at 6). Both California law and Federal regulations require that "[i]f any characterizing flavor of a Product is not created exclusively by the identified ingredient, the product's front label must state that the product is flavored with either, or both of, natural or artificial flavorings. If any artificial flavor is present which 'simulates, resembles or reinforces' the characterizing flavor, the food must be prominently labeled as 'Artificially Flavored.'" Compl., ¶¶ 58, 59 (citing 21 C.F.R. §§ 101.22(i)(3)-(4)). The Complaint alleges that "[t]he fruits named and illustrated on the Products' front labels are [] characterizing flavors for those Products." Compl., ¶ 57. For example, "'Apple' is a primary recognizable flavor identified on the 'Apple Juice' and 'Trop 50 Farmstand Apple' Product front labels" and 'Apple' is therefore a characterizing flavor of these Products under state and federal regulations" (Compl., ¶ 55). Similarly, "'Orange' is a primary recognizable flavor identified on several of the Trop 50 Products' front labels" and is therefore a characterizing flavor for these Products." (Compl., ¶ 56). The Complaint further alleges that "[t]he dl-malic acid is a flavoring material [] included in the Products to create, simulate and reinforce the characterizing fruit flavors." (Compl., ¶ 136). "The dl-malic acid in the Product is not derived from a natural material as defined in 21 CFR 101.22, and is therefore by law an artificial flavor." (Compl., ¶ 137). "Defendant was therefore required to place prominently on each Product's front label a notice sufficient to allow reasonable consumers to understand that the Product contained artificial flavorings." (Compl., ¶ 61). "Defendant failed to do so, deceiving consumers and violating federal and state law." (Compl., ¶ 62). Plaintiffs' Complaint rises well above the level of mere speculation; it plausibly alleges that the malic acid ingredient in the Products is an artificial flavoring ingredient.

Defendant's argument that malic acid is used as a flavor enhancer or pH control agent (See MTD at 7) is a factual contention improperly raised at this stage of the litigation. Like other courts that have considered this argument, this Court should similarly reject it here. The Complaint alleges that the malic acid in the Products is used as an artificial flavoring ingredient. (Compl., ¶¶ 37, 44, 47, 60). Whether the malic acid is used as a flavor

5

enhancer, a pH control agent, or as an artificial flavoring ingredient is a disputed factual question. *See Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether [the ingredients are] used as a sweetener and/or ... a flavoring agent in this particular product ... are inappropriate for determination on a motion to dismiss."); *Allred v. Frito-Lay*, 2018 WL 1185227, at *4-5 (S.D. Cal. 2018) (concluding that whether malic acid is a "flavor" under federal regulations is a "factual determination that would be inappropriately resolved on a motion to dismiss."); *see also Allred v. Kellogg Co.*, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) ("*Kellogg*") ("At this stage, the Court cannot look beyond the pleadings and must take reasonable allegations as true. Both of these hurdles are appropriate for summary judgment, but at this stage, the Court finds Allred has sufficiently pled the ingredients are artificial and used as flavoring agents."); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) (denying defendant's motion for summary judgment where plaintiff's expert opined that malic acid is used for flavoring purposes as opposed to a pH control agent).

Defendant contends, "it is not possible that that malic acid could simultaneously be delivering all of these uniquely different flavors in each of the different Products." (MTD at 8). However, Plaintiffs plausibly allege, and cite to reliable secondary source materials, that malic acid "simulates, resembles, or reinforces" each of the tart, fruity flavors of the various Products. (Compl., ¶ 50). As Plaintiffs allege, malic acid is known in the industry for its ability to simulate and reinforce various fruit flavors, including specifically the apple and orange flavors that Defendant's Products advertise.

Defendant next argues that Plaintiffs' Complaint references an article that "states that [malic acid] serves as a flavor enhancer and pH control agent in juices." (MTD at 8). Defendant's selective quote here disregards the most relevant portions of the article, which elaborates that malic acid "adds a tart and fruity flavor" to food and beverage products. *See* MTD at Ex. A (Dkt. No. 23-2) at p. 7. Defendant further contends, "FDA regulations confirm that malic acid can serve "as a flavor enhancer as defined in § 170.3(o)(11) of this chapter" or as a "pH control agent as defined in § 170.3(o)(23) of this chapter." (MTD at 7) (erroneously citing 21 C.F.R. § 184.1069(b)). Defendant here too omits that under federal

6

regulations, malic acid is also defined as a "flavoring agent and adjuvant as defined in 170.3(o)(12) of this chapter." *See* 21 C.F.R. § 184.1069(c). Thus, Defendant's claim that "the only source document Plaintiffs reference about malic acid states that it serves as a flavor enhancer and pH control agent in juices" is patently misleading.

Defendant further argues that "[m]alic acid does not 'appear[ ] on the lists of artificial flavors promulgated by the FDA'" and "this further confirms that malic acid is not an artificial flavor." (MTD at 10) (citations omitted). This argument is meritless. The regulation in 21 C.F.R. § 101.22 states that these lists are not exhaustive. *See* 21 C.F.R. §101.22 ("Artificial flavor <u>includes</u> the substances listed in §§ 172.515(b) and 182.60 of this chapter...." (emphasis added)). "Therefore, simply because malic acid is not on these lists does not mean that the FDA has determined malic acid is not an artificial flavor." *Frito-Lay*, 2018 WL 1185227, at *4 (citing *Engurasoff v. Coca-Cola Co*., No. C 13-3990 JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (finding the same regarding phosphoric acid)).

### ii. *Defendant Unlawfully Labels its Products by Failing to Disclose that the Characterizing Flavors are Artificial*

Defendant argues that it has complied with FDA regulations because "the characterizing flavor names on the Products are expressly authorized by FDA regulations" and "Plaintiffs point to no statement or representation by Tropicana on the labels that say 'all natural.'" (MTD at 10). However, by affirmatively representing that the Products have "apple" or "orange" flavors among other fruits, and failing to include the federal- and state-law required disclosures, Defendant misrepresented the contents of the Products – which contain *artificial* fruit flavor. This misleading representation coupled with the Products' omission of the legally-required artificially-flavored disclosure constitutes unlawful consumer deception. Federal courts have uniformly denied motions to dismiss in similar cases alleging deception based on product labels missing the same required disclosures. *See DePhillipis v. Living Essentials, et. al*., 2018 WL 7051065, at *4-5 (S.D. Cal. 2018) (denying motion to dismiss where plaintiff alleged that product (1) was advertised with fruit flavor names identified on the front label, (2) contained an artificial flavoring ingredient, and (3) did not include an artificial flavoring disclaimer on the front of the product labels.).

### iii. *Defendant Unlawfully Labels its Products by Failing to Disclose the Common or Usual Name of Artificial dl Malic Acid*

Defendant contends, "'[m]alic acid' is the 'common name' for all forms of malic acid" and thus, Defendant is not required to list the specific isomer of malic acid in the ingredient list. (*See* MTD at 11-12). Defendant's argument here is unavailing. Under the relevant regulations, a food is misbranded if its label does not bear the "common or usual name of each ... ingredient" that makes up the food, 21 U.S.C. § 343(i), *see also* 21 C.F.R § 101.4(a)(1), but, the federal regulation also state "[t]he name of an ingredient shall be a specific name and not a collective (generic name)." 21 C.F.R. § 101.4(b).

While malic acid is indeed the collective, common name of both l- and dl-malic acid, there are two, different, specific types of malic acid: l-malic acid and dl-malic acid. The federal regulations elucidate the two distinct types of malic acid and explain their differences.[1] When an ingredient has a unique name and a common, generic name, particularly when as here the common name is ambiguous and could refer to more than one ingredient and the difference is potentially important to consumers, the label must identify the ingredient by its specific name, not its common name. *See* 21 C.F.R. § 101.4(b). As the Complaint alleges, Defendant does not put natural malic acid in the Products; "[i]nstead, Defendant flavors the Products with the synthetic industrial chemical dl-malic acid. (Compl. ¶ 47). Because Defendant has failed to disclose its use of the artificial dl-malic acid in the Product, it has not used the specific, non-generic name of the ingredient and has therefore violated 21 CFR § 101.4(a)(1) and corresponding state law. As stated by the *Frito-Lay* Court:

> While Defendants argue malic acid is the "common name of all forms of malic acid," [] this assertion does not find support in the regulations. Indeed, "malic acid" is the common name "for 1–hydroxy–1, 2–ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a). If Plaintiffs were arguing Defendant should list "1–hydroxy–1, 2–ethanedicarboxylic acid" on the Product's ingredient list, that would be a different story. But it is clear there are two forms of malic acid, thus, Plaintiffs argue d-l malic acid is the specific name for one type of malic acid. And, 21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the "ingredients" (plural) are used in food,

---

[1] The regulation states "L(+) malic acid, referred to as L-malic acid, occurs naturally in various foods. Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumeric acid or maleic acid." 21 CFR §184.1069(a).

thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid.

*See Frito-Lay*, 2018 WL 1185227, at *3. This Court should reach the same conclusion here and deny Defendant's Motion to Dismiss.

### B. Whether a Reasonable Consumer Would be Misled Is Not Appropriate for Determination on a Motion to Dismiss

Defendant next argues, "All of Plaintiffs' claims fail because the Complaint does not identify any actionable misrepresentation on the challenged packaging that would deceive a reasonable consumer." (MTD at 14). Defendant's argument fails because whether a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]." *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014); *see also Frito-Lay*, 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list.").

Defendant does not dispute that the federal regulations require an artificially-flavored disclosure on the front label of a product if that product contains artificial flavoring and does not dispute that the Products at issue do *not* contain the legally-required artificially-flavored disclosure. Nevertheless, Defendant argues that the Products' labels contain no "actionable misrepresentation" such that reasonable consumers would not be misled. (MTD at 14). Defendant's argument appears to be that because the Products' labels do not include additional deceptive statements such as "all natural" or "no artificial flavors," they cannot be deceptive. (*See id*.). This argument has no support in the law. Plaintiffs' Complaint alleges "Defendant intended to give reasonable consumers … the impression that the Products are pure, natural, and not artificially flavored" (Compl., ¶ 17). The names of fruits on the Products' front labels (e.g. apple, orange) are affirmative statements that misrepresent the actual contents of the Products, which contain *artificial* fruit flavor. In addition, "Defendant actively concealed the fact that the Products contain artificial flavoring ingredients." (Compl., ¶ 160). These representations and omissions violate federal labeling

9

requirements, mislead consumers, and amount to an "actionable misrepresentation." *See DePhillippis v. Living Essentials, et. al.*, 2018 WL 7051065, at \*4-5 (S.D. Cal. 2018) (denying motion to dismiss where plaintiff alleged that product (1) was advertised with fruit flavor names identified on the front label, (2) contained an artificial flavoring ingredient, and (3) did not include an artificial flavoring disclaimer on the front of the product labels.).

Defendant also attempts to argue that "Plaintiffs' 'claims are doomed by the readily accessible ingredient panel on the [P]roducts' that clearly discloses the presence of malic acid." (MTD at 15). This argument fails for two separate reasons. First, the presence of artificial flavor in the Products is not disclosed on the Product's *front label*, as required by law. 21 C.F.R. 101.22. Instead, the front labels of the Product represent that the Products are flavored only with fruit. While the case law is clear that consumers are not required to scrutinize a product's rear label, *see Brady v. Bayer Corp.,* 26 Cal. App. 5th 1156 (Ct. App. 2018), 1174); *Williams, supra*, 552 F.3d at 939 even if a consumer were to view the ingredient list on the rear-label of the Products, the consumer would be unable to determine whether the malic acid used was a natural or synthetic compound because Defendant fails to use the specific name of malic acid as is required by federal regulations. (*See* Section (A)(1)(iii) above). Further, Defendant was also required to identify the included dl-malic acid as an artificial flavor in the ingredient list on the back panel. 21 C.F.R. 101.22. Thus, the simple identification of "malic acid" on the Products' rear-label does not shield Defendant from its liability.

Because of Defendant's omissions and misrepresentations, a reasonable consumer would be misled into believing that the products contain only natural ingredients. *See Hunt v. Sunny Delight Beverages Co.,*, 2018 WL 4057812 at \*3 (C.D. Cal. 2018) ("[i]n the absence of such a disclaimer [a front-facing disclaimer regarding the artificial flavoring], the Court cannot conclude as a matter of law that a reasonable consumer would not be misled by the Products' labels."); *see also Kellogg*, 2018 WL 1158885, at \*3 ("A reasonable consumer could construe the packaging as depicting all natural ingredients and flavors…The threshold in a Rule 12 motion is necessarily not high, and [plaintiffs have] pled enough facts alleging a reasonable consumer could believe the [product was] naturally, and not artificially,

flavored."); *Frito-Lay*, 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list.").

### C. Plaintiffs' Complaint Meets the Requirements of Rule 9(b)

Defendant argues that Plaintiffs' complaint fails to meet Rule 9(b)'s requirements because they fail to "identify *what* Products they actually purchased and which of the Products' differing labels were material to their purchase of these Products." (MTD at 15) (emphasis in original). [2] However, Plaintiffs' Complaint alleges "Plaintiff Willard purchased one or more of the Products several times since April 2018" and "purchased one of the Products most recently on January 5, 2020 at a Jewel-Osco supermarket located at 944 S. York Road, in Elmhurst, Illinois." (Compl., ¶¶ 79-80). "Plaintiff Blackman purchased one or more of the Products several times since 2016 at various locations in San Diego County, California during the Class Period defined herein." (Compl., ¶ 82). The Complaint alleges, "Plaintiffs justifiably relied on Defendant's omission from the Product label[s] [, (*i.e.*)] the legally required disclosure of artificial flavoring." (Compl., ¶ 83).

Defendant argues, "Plaintiffs lack standing to bring claims … with respect to the Products they did not purchase." (MTD at 16). District courts have diverged on the issue of whether a plaintiff has standing to bring claims on behalf of consumers who purchased similar, but not identical products. *See Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005 (N.D. Cal. 2012); *see also Branca v. Nordstrom. Inc.*, No. 14-cv-2062-MMA-JMA, 2015 WL 10436858, at *4 (S.D. Cal. Oct. 9, 2015) (noting that "there is no controlling authority" on the question of whether a plaintiff has standing to allege claims under the FAL, CLRA, and UCL based on products he did not purchase).

> The inquiry hinges on whether the included, non-identical products are "similar enough." "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*,

---

[2] Defendant erroneously states that the Marron firm was sanctioned in a previous case. Not only is this statement false, but the case cited by Defendant in no way pertains to the merits of the present case. The Plaintiffs in *Hunt v. Sunny Delight Beverages Co.* were sanctioned – not the Marron firm.

912 F. Supp. 2d 861, 869 (N.D. Cal. 2012).

Here, Plaintiffs' Complaint adequately alleges that all the included Products are in fact "substantially similar." All of the Products are either Tropicana or Trop 50 fruit-juice-based beverage products that contain malic acid. (Compl., ¶¶ 36-37). The Complaint alleges that the malic acid in the Products is the artificial form of malic acid, called dl-malic acid. (Compl., ¶ 37). California and federal regulations therefore require that the Products conspicuously state that they are "Artificially Flavored" on the front of the packaging. *See* 21 C.F.R. § 101.22(i)(1)(2). However, none of the Tropicana or Trop 50 Products contain this conspicuous front-facing disclosure of artificial flavoring. (Compl., ¶¶ 38-39). Each of the Products are therefore "substantially similar" because (1) they are all fruit-juice-based beverage products (Compl., ¶¶ 55-57), (2) they all  contain malic acid that simulates or reinforces the characterizing fruit flavor (Compl., ¶ 37),  and (3) they all lack the lawfully required front-facing disclosure of artificial flavoring. (Compl., ¶¶ 38-39). Therefore, Plaintiffs have sufficiently pled that the products are "substantially similar." *See, e.g., Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."); *Dephillippis v. Living Essentials, LLC*, 2018 WL 7051065, at * 3 (S.D. Cal. 2018) (plaintiff had standing to bring claims on behalf of class of purchasers of two different product lines, as the product lines were substantially similar where "[e]very flavor of both product lines contains dl-malic acid, identifies the ingredient as only "malic acid," and lacks any "Artificial Flavoring" disclaimer on the products' front-facing labels."); *Sims v. Campbell Soup Company*, 2018 WL 7568640, at *4 (C.D. Cal. 2018) (allowing plaintiffs to assert claims based on non-purchased products at the motion to dismiss stage and finding "Plaintiff has adequately alleged that all seven varieties of V8 Splash mislead consumers in substantially similar ways.").[3] Defendant's Motion to Dismiss

---

[3] *See also Morgan v. Apple, Inc.*, No. 17-CV-05277-RS, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) ("Given the similarities in marketing and defects alleged here, plaintiffs have adequately alleged that Powerbeats 2 and 3 are substantially similar such that plaintiffs have standing to bring claims based on both products."); *Safransky v. Fossil Grp., Inc.*, No. 17CV1865-MMA (NLS), 2018

should be denied.

**D. Plaintiffs Have Stated Claims for "Unlawful" and "Unfair" Conduct under the UCL**

**1. Plaintiffs State a Claim Under the "Unlawful" Prong of the UCL because Plaintiffs Have Alleged Violations of California's Sherman Law and Its Incorporated Federal Regulations**

Plaintiffs' complaint alleges that Defendant's labeling of the Products violates "*inter alia*, FDA regulations and California's Sherman Law." (Compl., ¶ 130; Compl., ¶ 41 (citing Cal. Health & Safety Code §§ 109875, incorporating 21 CFR § 101.22). The Court in *Engurasoff v. Coca-Cola Company* noted that "the Sherman Laws specifically adopted certain provisions that mirror or incorporate by reference [federal] food labeling and packaging requirements, including the following provisions that, *inter alia*, form the basis for the 'unlawful' prong of plaintiff's UCL claim: 'Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, *unless its labeling states that fact.* . . .." No. C 13-03990 JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (emphasis added). Here, the Complaint alleges that "[n]one of the Products disclose[] on either the front or back-label that the Product[s] contain[] artificial flavoring." Compl., ¶ 38. The Sherman Law clearly requires Defendant to disclose the use of artificial flavoring ingredients that are in its Products. Compl., ¶ 41; *Engurasoff,* 2014 WL 4145409, at *3. Because Defendant has violated the Sherman Law and the FDA regulations cited in the Complaint, it has also violated the UCL unlawful prong.

**2. Plaintiffs Also State a Claim Under the "Unfair" Prong of the UCL**

The Complaint also fully states a claim for liability under the UCL's "Unfair" prong. "The test for liability under the UCL's 'unfair' prong remains 'in flux.'" *Becerra v. Gen. Motors LLC*, No. 15CV2365-WQH-JMA, 2017 WL 951028, at *10 (S.D. Cal. Mar. 10, 2017). Federal Courts apply both a balancing test under the UCL "Unfair" Prong and a test

_____

WL 1726620, at *5 (S.D. Cal. Apr. 9, 2018) ("numerous district courts have also concluded that a plaintiff has standing to sue on behalf of items he or she did not purchase if the alleged misrepresentations are sufficiently similar.").

that looks at whether the alleged misconduct "is tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." *Id.* (citing *Cel-Tech*, 20 Cal. 4th at 184). Here, Plaintiffs satisfy both tests.

### i. *Defendant's Conduct is "Unfair" Under the Balancing Test*

Under the balancing test, "courts consider the business practice's 'impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer,' and 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Becerra*, 2017 WL 951028, at *10 (citing *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1472 (2006)). The complaint cites to a study in Forbes Magazine showing that "88% of consumers recently polled indicated they would pay more for foods perceived as natural or healthy." Compl., ¶ 67. Because of Defendant's omission, consumers are more likely to perceive the Products as being a healthier 'natural' option. *See* Compl., ¶ 17 ("Defendant intended to give reasonable consumers like the Plaintiff[s] the impression that the Products are pure, natural, and not artificially flavored, by packaging, labeling, and advertising the Products in this way."). The impact to the class members— the victims of Defendant's deceptive advertising scheme— is great in this case because Plaintiffs and putative Class Members "would not have purchased the Product or would not have paid as much as they had in the absence of Defendant's misrepresentations and omissions." Compl., ¶ 78. The balancing test tips in favor of consumers in this action because they overpaid for a misbranded product and it would be easy for Defendant to correct its wrongdoings by simply disclosing that the Products contain artificial flavoring ingredients. Thus, Plaintiffs have stated a claim using a balancing test under the "Unfair" Prong of the UCL.

### ii. *Defendant's Conduct is "Unfair" Under the Tethering Test*

Under the "Tethering" test," Courts look to whether an alleged misconduct is tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." *Card Tech Int'l, LLLP v. Provenzano*, No. CV 11-2434 DSF PLAX, 2012 WL 2135357, at *29 (C.D. Cal. June 7, 2012). Here, the California legislature has declared that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical

14

preservative, unless its labeling states that fact." Cal. Health & Safety Code § 110740. The complaint alleges that "Defendant was [] required to place prominently on each Product's front label a notice sufficient to allow reasonable consumers to understand that the Product contained artificial flavorings" and "Defendant failed to do so, deceiving consumers and violating federal and state law." Compl., ¶¶ 61-62. Because the alleged misconduct is tethered to a Health and Safety regulation, Plaintiffs have stated a claim under the "unfair" prong of the UCL.

Defendant also attempts to downplay its FDA violations by asserting that mere violations of "technical food labeling requirements" do not offend public policy. (MTD at 18). However, Plaintiffs are not merely alleging a violation of a "technical" FDA regulation, but rather that Defendant's affirmative statements that the Products have "Apple" or "Orange" flavors, without the legally-required disclosures that the Products are artificially flavored, are likely to mislead a reasonable consumer. The applicable food labeling regulations require Defendant to disclose the use of this artificial flavoring ingredient. *See* Cal. Health & Saf. Code §§ 109875 (incorporating 21 CFR § 101.22). It is plausible, and likely, that Defendant's failure to make this required disclosure, along with its affirmative representation that the Products have "Apple" and "Orange" flavors (among other fruits) is likely to deceive a reasonable consumer. *See, Brown v. Starbucks Corporation*, 2019 WL 4183936, at *3 (S.D. Cal. 2019) ("the FAC goes beyond assertion of a mere regulatory violation … a reasonable consumer would expect a product only contains natural flavors when the product's packaging does not disclose the use of artificial flavors near the description of its characterizing flavors."). Because this regulatory violation is also likely to lead to consumer deception, Defendant's argument fails and Plaintiffs' Complaint should not be dismissed.

Defendant cites to *Sonner* and argues, "Plaintiffs' UCL 'unfair' and 'unlawful' equitable claims for restitution must also be dismissed because Plaintiffs were required, but failed, to plead that they lack an adequate remedy at law." (MTD at 19) (citing *Sonner v.*

15

*Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020). [4] However, *Sonner* is distinguishable because the plaintiff in *Sonner* intentionally dropped her claim for damages under the CLRA to "try the class action as a bench trial rather than to a jury." *Sonner*, 962 F.3d at 1074. The *Sonner* court held that the plaintiff could not seek restitution because there was an "adequate remedy at law" in form of damages under the CLRA. *Id.* at 1081. Here, Plaintiffs seek restitution and equitable relief in the alternative to damages. Federal Rule of Civil Procedure 8(d)(2) specifically allows a plaintiff to state alternative claims for relief and this is exactly what Plaintiffs have done here. Indeed, several district courts in California have allowed plaintiffs to plead restitution as an alternative to damages. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) ("The Court finds those decisions allowing claims for equitable relief to proceed as an alternative remedy, at the pleading stage, to be more persuasive, based upon the broad remedial purposes of the California consumer protection statutes."). [5] It is theoretically possible that Plaintiffs would not prevail on their claims for CLRA money damages, leaving the claim for restitution as the class's sole remaining viable remedy. Because Plaintiffs have plead their claims for restitution as an alternative to damages, the Court should decline to dismiss the restitution claims.

### E. Plaintiffs Adequately Allege Claims for Negligent Misrepresentation and Omission

#### 1. Plaintiffs Adequately State a Claim for Negligent Misrepresentation

Defendant argues that the economic loss doctrine bars Plaintiffs' negligent misrepresentation claims because "Plaintiffs seek recovery only for alleged economic loss" (MTD at 20-21). Defendant's position regarding the economic loss doctrine is incorrect. Courts have routinely held that the economic loss doctrine does not apply to claims of negligent misrepresentation that are grounded in fraud, such as the allegations in Plaintiffs'

---

[4] On July 22, 2020, the plaintiff in *Sonner* filed a petition for panel rehearing and rehearing en banc. *Sonner v. Premier Nutrition Corp.*, No. 18-15890 (Dkt. No. 67).

[5] *See also Luong v. Subaru of Am., Inc.*, 2018 WL 2047646 at *7 (N.D. Cal. May 2, 2018) (same); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (same); *Adkins v. Comcast Corp.*, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) (same).

Complaint. The Complaint alleges that "Defendant deceived Plaintiffs and the Class into purchasing the Products by unlawfully concealing that they are artificially flavored." (Compl., ¶ 77). Plaintiffs' and the Class's purchases were fraudulently induced by Defendant's deceptive advertising. This conduct rises from principles of tort law and amounts to tortious conduct, permitting tort damages. *See Augustine v. Talking Rain Beverage Company, Inc.,* 386 F.Supp.3d 1317 (S.D. Cal. 2019) (finding economic loss rule did not bar plaintiffs' negligent misrepresentation claims where plaintiffs alleged beverage manufacturer failed to disclose use of synthetic malic acid as artificial flavor); *Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 Fed.Appx. 700, 701 (9th Cir. 2011) (holding a jury verdict in favor of a negligent misrepresentation claim was not precluded by the economic loss rule where "one party has lied to the other"); *Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*, 315 Fed.Appx. 603, 607 (9th Cir. 2008) (holding negligent misrepresentation is a "species of fraud" under California law, for which "economic loss is recoverable"); *see also Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116CV00371DADSMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016); *Zakaria v. Gerber Prod. Co.*, No. LA CV15-00200 JAK EX, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015), *reconsideration denied*, No. LACV1500200JAKEX, 2015 WL 4379743 (C.D. Cal. July 14, 2015). Plaintiffs have stated a claim for negligent misrepresentation.

Defendant next argues that it made no "positive assertion" as is required for a negligent misrepresentation claim. (MTD at 20-21). Not so. As discussed above, Defendant affirmatively represented that the Products had "apple" or "orange" flavors (among other fruits). These assertions were false, however, because the Products are actually *artificially* apple or orange flavored. In other words, Defendant affirmatively represented that the Products were flavored with fruit, which was deceptive and misleading, because the Products are flavored with an artificial flavoring ingredient. Defendant's Motion to Dismiss should therefore be denied.

Defendant further argues, "Plaintiffs make no particularized factual allegations about Tropicana's purported recklessness or why Tropicana has a special duty of disclosure to them. (MTD at 21). However, Plaintiffs Complaint alleges that "Defendant negligently

misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the presence in the Products of artificial flavoring ingredients." (Compl. ¶ 179). Further, "Defendant had a duty to ascertain and disclose to Plaintiff[s] and Class members the existence of artificial flavoring ingredients in the Products" and "Defendant was careless in ascertaining the truth of its representations." (Compl., ¶¶ 176, 180). "Defendant possessed the skills and expertise to know both this fact and to know that this information would influence consumers' purchasing decisions" and "Defendant was in a superior position to Plaintiff[s] and the Class members to ascertain this fact such that reliance by Plaintiff[s] and the Class was justified." (Compl. ¶¶ 177-178). Plaintiffs allege that they and the Class Members justifiably relied on Defendant's misrepresentations and omissions (Compl. ¶ 181) and suffered damages thereby. (Compl. ¶ 182). Thus, Plaintiffs have sufficiently pled a cause of action for negligent misrepresentation. *See Augustine v. Talking Rain Beverage Company, Inc*., 386 F.Supp.3d 1317, 1330-31 (S.D. Cal. 2019).

### 2. Plaintiffs Adequately State a Claim for Fraud by Omission

Defendant argues that Plaintiffs' fraud by omission claims fail because the Complaint fails to allege "facts demonstrating that Tropicana intentionally concealed or suppressed a material fact." (MTD at 22). However, Plaintiffs allege that "Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase the Product. Specifically, Defendant actively concealed the fact that the Products contain artificial flavoring ingredients." (Comp., ¶ 160). Defendant also made a partial representation by claiming that the Products have "apple" or "orange" flavors (among other fruit flavors), without disclosing that the Product is artificially flavored. (Comp., ¶¶ 19-39). The Complaint alleges, "Defendant intended to give reasonable consumers like the Plaintiff[s] the impression that the Products are pure, natural, and not artificially flavored, by packaging, labeling, and advertising the Products in this way." (Compl., ¶ 17). Thus, Plaintiffs state a claim for fraud by omission.

### F. Plaintiffs' Claims are not Partially Barred by the Statute of Limitations

As a last-ditch effort, Defendant argues that Plaintiffs' claims should be dismissed in part based on the statute of limitations. However, "[a] claim may be dismissed under Rule

12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.*, No. C 12-04760 WHA, 2013 WL 633202, at *6 (N.D. Cal. Feb. 20, 2013) ("When a claim is challenged as violating the statute of limitations, courts are limited to the facts alleged in the complaint."). Here, the Complaint plausibly alleges that the six-year class period is justified by Defendant's conduct and the delayed discovery rule, and is therefore not barred by the applicable statute of limitations.

## 1. The Delayed Discovery Rule Tolls the Statute of Limitations

"In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 391 (1999)). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *E–Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1319 (2007). Here, the Complaint alleges that "[a]nalytical testing of the Tropicana "Trop50 No Pulp" Product on 7/29/2019 confirmed that the compound added to the Product is the artificial dl-malic acid" (Compl., ¶ 49). As such, Plaintiffs did not discover that Defendant's labeling of the Product was false and misleading until July 2019, when they learned that the Product contained undisclosed artificial flavoring. These allegations are sufficient to invoke the delayed discovery rule at least at the pleadings stage. *See Ortega v. Nat. Balance Inc.*, No. CV 13-05942 ABC EX, 2013 WL 6596792, at *5 (C.D. Cal. Dec. 16, 2013) ("[I]t is hard to imagine how delayed discovery allegations for the claims of unknown class members could be particularly specific. As such, the Court finds that the Complaint sufficiently alleges delayed discovery on behalf of the putative class."); *Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2015 WL 4396215, at *4 (N.D. Cal. July 17, 2015); *Herremans v. BMW of N. Am., LLC*, No. CV1402363MMMPJWX, 2015 WL 12712082, at *5 (C.D. Cal. Feb.

19

19, 2015).[6] Similarly, Plaintiffs' allegations here that the statute of limitations should be tolled pursuant to the delayed discovery rule are sufficient.

### 2. Fraudulent Concealment Tolls the Statute of Limitations

"To establish fraudulent concealment, a plaintiff must plead '(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, No. SAML1002172CJCRNBX, 2011 WL 13160303, at *6 (C.D. Cal. Jan. 20, 2011) (holding that the plaintiffs' "allegations are sufficient to establish fraudulent concealment for purposes of a motion to dismiss" and the defendant's "arguments are more appropriately raised in a motion for class certification or in a motion for summary judgment."). "The purpose of this doctrine is 'to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory." *Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644 CAS VBKX, 2013 WL 7753579, at *8 (C.D. Cal. Mar. 4, 2013) (quoting *Regents of University of California v. Superior Court*, 20 Cal.4th 509, 533 (1999)).

The complaint alleges that "Defendant had a duty to ascertain and disclose to Plaintiff[s] and Class members the existence of artificial flavoring ingredients in the Products." (Compl., ¶ 176). Yet, "Defendant negligently misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the presence in the Products of artificial flavoring ingredients." (Compl., ¶ 179). As a result, "Plaintiffs and the Class were unaware of the falsity of Defendant's misrepresentations and omissions"

---

[6] *See also Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *2 (C.D. Cal. Mar. 17, 2011) ("The Complaint alleges that 'Plaintiff did not discover that Smucker's labeling of the Smucker PHVO Products was false, deceptive, or misleading until late May 2010, when she was provided with information by an acquaintance from several of the studies cited above, demonstrating that foods high in trans fat—such as the Smucker PHVO Products—are harmful to human health because of their role in causing coronary heart disease, type–2 diabetes, and cancer.' It also alleges that Plaintiff 'is a reasonably diligent consumer who exercised reasonable diligence in her purchasing, use and consumption,' and who is 'not an expert on nutrition and does not typically read or have access to scholarly journals.' These are sufficient allegations for tolling at this stage.") (internal citations omitted).

(Compl., ¶ 181) and the statute of limitations should be tolled pursuant to the doctrine of fraudulent concealment. *See Henderson*, 2011 WL 1050637, at *2 (declining "to reach Defendant's argument that tolling cannot be alleged on behalf of the putative class members" and holding that "[t]his argument is premature [when ruling on a motion to dismiss].") (alterations in original); *Ruhnke v. Skinmedica, Inc.*, No. SACV140420DOCRNBX, 2015 WL 12698447, at *2 (C.D. Cal. Jan. 7, 2015) ("The Court agrees with the approach taken in *Henderson* and finds that Defendant's attack is more appropriately addressed at the class certification stage than at the pleading stage.").

### 3. The Continuing Violation Doctrine Tolls the Statute of Limitations

"The continuing violation doctrine is meant to serve equitable purposes when 'injuries are the product of a series of small harms, any one of which may not be actionable on its own,' or when the plaintiff has alleged 'a pattern of reasonably frequent and similar acts... justifying treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.'" *Hunter v. Nature's Way Prod., LLC*, No. 16CV532-WQH-BLM, 2016 WL 4262188, at *11 (S.D. Cal. Aug. 12, 2016) (quoting *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013)). The complaint alleges that Class members purchased the Products subject to the alleged misrepresentations both before and during the statutory limitations period, and "Because Defendant's misrepresentations were made on the labels of the Products, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.." (Compl., ¶ 102). Thus, the statute of limitations should also be tolled pursuant to the continuing violation doctrine.

### G. A Detailed Choice of Law Analysis is Improper at this Stage of the Litigation

Lastly, Defendant argues that "claims under the ICFA based on purchases of the Products outside of Illinois must be dismissed. (MTD at 23). Defendant is essentially asking this Court to dismiss Plaintiffs' nationwide class allegations at the pleadings stage. However, courts have rejected similar arguments. *See Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) (denying the defendant's motion to strike nationwide class claims because "there has been no choice-of-law analysis

21

in this case: Defendant—who bears the burden of demonstrating that foreign law, rather than California law, should apply to class claims in a California choice-of-law analysis—provides no support for its position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Werdebaugh's class claims." (citation and quotation marks omitted)).

The *Werdebaugh* Court noted that a detailed choice of law analysis, as required by *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ("*Mazza*"), "would be premature" at the pleadings stage. *Werdebaugh*, 2013 WL 5487236, at *16. Other courts are in accord with this holding. *See, e.g., Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012) ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike. At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate.") (citation omitted); *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) ("The Court finds that a more detailed choice-of-law analysis is required to rule on this issue, and so the Court sees no reason to depart from its usual approach of addressing choice-of-law issues at a later stage."). Because Defendant's argument regarding Plaintiffs' claims for non-Illinois residents is premature, Defendant's Motion should be denied.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety. If the Court dismisses any portion of the Complaint, then Plaintiffs respectfully request leave to amend. Fed. R. Civ. P. 15(a).

DATED: July 30, 2020               Respectfully Submitted,

By:    */s/ Ronald A. Marron*
Attorney for Plaintiffs
California Attorney No. 175650
Filing for pro hac vice
Law Offices of Ronald A. Marron
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com

*/s/ David Elliot*
Attorney for Plaintiffs
Illinois Attorney No. 6277822
Elliot Law Office, P.C.
3200 Fourth Avenue, Suite 207
San Diego, CA 92103
Telephone: (858) 228-7997
davidelliot@elliotfirm.com
***Counsel for Plaintiffs and the Proposed Class***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on July 30, 2020, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

<u>/s/ Ronald A. Marron</u><br>Ronald A. Marron