**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE WILLARD and AMIE BLACKMAN, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:20-cv-01501 |
| v. | ) ) | Honorable John F. Kness |
| THE TROPICANA MANUFACTURING COMPANY, INC., | ) ) ) | Honorable Magistrate Sheila M. Finnegan |
| Defendant. | ) ) | |

**<u>DEFENDANT TROPICANA MANUFACTURING COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page

I.      **INTRODUCTION** ................................................................. 1

II.      **ARGUMENT** ................................................................. 1

     A.    **Plaintiffs Cannot Avoid Preemption Of Their Claims.** ............................. 1

         1.    *Plaintiffs' Challenge To Listing "Malic Acid" In The Ingredient List Conflicts With Controlling Regulations.* ................................................................. 2

         2.    *Plaintiffs' "Artificially Flavored" Claims Are Also Preempted.* ......................... 4

             i.    *Plaintiffs' Own Source Contradicts Their Conclusory Contention That Malic Acid Is An Artificial Flavor In The Products.* ................. 4

             ii.    *Plaintiffs' Characterizing Flavor Claims Defy Logic.* ...................... 6

     B.    **Plaintiffs' Claims Of Deception Are Facially Implausible.** ........................... 7

     C.    **Plaintiffs Fail To Meet Rule 9(b)'s Requirements.** .................................. 11

     D.    **Plaintiffs Fail To Salvage Their Causes Of Action For Additional Reasons.** ........ 13

         1.    *Plaintiffs Fail To State A Claim For Negligent Misrepresentation.* ................... 13

         2.    *Plaintiffs Fail To State A Claim For Fraud By Omission.* ............................. 15

         3.    *Plaintiffs' "Unfair" And "Unlawful" Claims Under California's UCL Fail.* ................................................................. 16

         4.    *Plaintiffs' Claims For Restitution and Equitable Relief Under The UCL Also Fail.* ................................................................. 17

     E.    **Plaintiffs Failed To Plead Any Valid Exception To The Statutes Of Limitations.** ................................................................. 18

     F.    **Plaintiffs Fail to Defend Extraterritorial Application of ICFA.** .................... 19

III.      **CONCLUSION** ................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014) ..........................................................................4

*Allred v. Frito-Lay North America, Inc.*,
   No. 17-cv-1345, 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ...........................................2, 19

*Anderson Elec. v. Ledbetter Erection Corp.*,
   503 N.E.2d 246 (Ill. 1986) ...........................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................4

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) ...........................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
   No. 17-cv-03519, 2018 WL 6446391 (N.D. Ill. Dec. 10, 2018) .................................1

*Benson v. Fannie May Confections Brands, Inc.*,
   No. 17-cv-3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ................................12

*Brady v. Bayer Corp.*,
   237 Cal. Rptr. 3d 683 (Ct. App. 2018) ...........................................................8

*Branca v. Bai Brands, Ltd. Liab. Co.*,
   No. 3:18-cv-00757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ...........................................3

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
   No. 116-cv-00371, 2016 WL 3519294 (E.D. Cal. June 27, 2016) ..........................................14

*Brown v. Starbucks Corp.*,
   No. 18-cv-2286, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ..................................10

*Card Tech Int'l, LLP v. Provenzano*,
   No. 11-cv-2434, 2012 WL 2135357 (C.D. Cal. June 7, 2012) ..........................................16, 17

*Cheslow v. Ghirardelli Chocolate Co.*,
   No. 19-cv-07467, --- F. Supp. 3d ---, 2020 WL 4039365 (N.D. Cal. Apr. 8,
   2020) ...........................................................................9, 11

# TABLE OF AUTHORITIES

Page(s)

*Clark v. Perfect Bar, LLC*,
    No. 18-cv-6006, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)..............................................10

*Cowen v. Lenny & Larry's, Inc.*,
    No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) .................................................12

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .......................................................................................10, 11

*Eberts v. Goderstad*,
    569 F.3d 757 (7th Cir. 2009) ................................................................................................15

*Ehlers v. Ben & Jerry's Homemade Inc.*,
    No. 2:19-cv-00194, 2020 WL 2218858 (D. Vt. May 7, 2020) .........................................10, 11

*Flentye v. Kathrein*,
    485 F. Supp. 2d 903 (N.D. Ill. 2007) ....................................................................................18

*Fuchs v. Menard, Inc.*,
    No. 17-cv-01752, 2017 WL 4339821 (N.D. Ill. Sept. 29, 2017)..............................................8

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)..............................................................................................................3

*Hilsley v. Gen. Mills, Inc.*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019)...................................................................................3

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................................................9

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017) ...........................................................................9, 10, 11

*Jeffries v. Dutton & Dutton, P.C.*,
    No. 05-C-4249, 2006 WL 1343629 (N.D. Ill., May 11, 2006)...............................................19

*Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*,
    315 Fed. Appx. 603 (9th Cir. 2008).....................................................................................14

*Kubilius v. Barilla Am., Inc.*,
    No. 18-cv-6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) .................................................20

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) .................................................................................................6

*Lopez v. Nissan N. Am., Inc.*,
    135 Cal. Rptr. 3d 116 (Ct. App. 2011) .................................................................................14

## TABLE OF AUTHORITIES

Page(s)

*Morris v. Mott's LLP*,
No. 18-cv-01799, 2019 WL 948750 (C.D. Cal. Feb. 26, 2019) ................................................. 3

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017) ................................................................................. 18

*Oliveira v. Amoco Oil Co.*,
726 N.E.2d 51 (Ill. 2000) ...................................................................................................... 20

*Payton v. County of Kane*,
308 F. 3d 673 (7th Cir. 2002) ................................................................................................ 12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ................................................................................................. 13

*Porter v. NBTY, Inc.*,
No. 15-cv-11459, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ............................................ 12

*Prescott v. Nestlé USA, Inc.*,
No. 5:19-cv-07471, 2020 WL 3035798 (N.D. Cal. June 4, 2020) .......................................... 11

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ..................................................................................... 15

*Rynes v. Stryker Corp.*,
No. 10-cv-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................................. 18

*Salazar v. Honest Tea, Inc.*,
No. 13-cv-02318, 2015 WL 7017050 (E.D. Cal. Nov. 12, 2015) ........................................... 17

*Sims v. Campbell Soup Co.*,
No. 18-cv-00668, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ............................................ 3

*Sonner v. Premier Nutrition Corp.*,
No. 18-15890, --- F.3d ---, 2020 WL 3263043 (9th Cir. June 17, 2020) ................................ 18

*Steele v. Wegman's Food Mkts., Inc.*,
No. 19-cv-09227, --- F. Supp. 3d ---, 2020 WL 3975461 (S.D.N.Y. July 14,
2020) ........................................................................................................................................ 8

*Swearingen v. Santa Cruz Natural, Inc.*,
No. 13-cv-04291, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) .......................................... 13

*Thomason v. Nachtrieb*,
888 F.2d 1202 (7th Cir. 1989) ............................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

*Turek v. Gen. Mills, Inc.*,
   754 F. Supp. 2d 956 (N.D. Ill. 2010) ..................................................................................1

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................................5

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................................14, 15

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) .............................................................................................15

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...............................................................................................8

*Workman v. Plum, Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..............................................................................9

*Zakaria v. Gerber Prod. Co.*,
   No. 15-cv-00200, 2015 WL 3827654 (C.D. Cal. June 18, 2015)......................................14

**Statutes**

21 U.S.C. § 343 ..................................................................................................................1, 5

**Regulations**

21 C.F.R. § 101.4 .............................................................................................................2, 3, 4

21 C.F.R. § 101.22 ..........................................................................................................5, 6, 7

21 C.F.R. § 184.1069 .......................................................................................................2, 3, 4

56 Fed. Reg. 28,592, 28,598 (June 21, 1991) ..............................................................................5

# I.    INTRODUCTION

Plaintiffs' Opposition fails to advance any reasonable arguments to rebut the bases requiring dismissal explained in Tropicana's opening brief.  Plaintiffs fail to address, let alone respond to, most of Tropicana's substantive arguments.  Plaintiffs must do at least *some* factual investigation before imposing the heavy burdens of litigation on Tropicana.  Tropicana challenged Plaintiffs to point to a single particularized factual allegation that malic acid is a flavor in these particular products.  Plaintiffs did not point to anything.  Plaintiffs' perfunctory effort to avoid dismissal is apparent from the fact that they cite *no* cases from the Seventh Circuit Court of Appeals or Illinois state courts, and just *one* Northern District of Illinois case.  Under applicable Illinois law and in the context of these specific Tropicana products and labeling, Plaintiffs' claims fail as a matter of law.  Plaintiffs' claims are preempted by federal law, and separately and independently, the labeling of the ten different Tropicana juice products (the "Products") could not possibly, let alone plausibly, mislead an objectively reasonable consumer.  Plaintiffs' Complaint is deficient to its core and should be dismissed with prejudice.

# II.    ARGUMENT

## A.    Plaintiffs Cannot Avoid Preemption Of Their Claims.

Plaintiffs attempt to avoid preemption of their claims by contending that their claims are based on state laws that are identical to federal requirements.  Opp. 3.  But Plaintiffs miss the point entirely and drastically misread applicable federal regulations.  They seek to use state law to require Tropicana to label the Products with information that is *not* required by federal regulations.  As a result, Plaintiffs' claims are barred under the FDCA's express preemption provision.  *See* 21 U.S.C. § 343-1(a)(3); *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 961-62 (N.D. Ill. 2010), *aff'd*, 662 F.3d 423, 427 (7th Cir. 2011); *Benson v. Fannie May Confections Brands, Inc.*, No. 17-cv-

03519, 2018 WL 6446391, at *2 (N.D. Ill. Dec. 10, 2018) (Under Section 343-1, "the FDCA expressly preempts state law claims that impose labeling requirements 'not identical' to its own requirements"); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005) (finding that the preclusive effect of the FDCA's express preemption provision extends "beyond positive enactments, such as statutes and regulations, to embrace common-law duties"). Nothing in Plaintiffs' Opposition allows them to sidestep this fatal flaw in their claims.

1.  *Plaintiffs' Challenge To Listing "Malic Acid" In The Ingredient List Conflicts With Controlling Regulations.*

Plaintiffs' Opposition doubles down on an incorrect reading of 21 C.F.R. § 101.4. This regulation requires food labels to bear the "common or usual name" of ingredients, listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Under FDA regulations, "[m]alic acid" is the "common name" for *all* forms of malic acid, including both L malic acid and DL malic acid. 21 C.F.R. § 184.1069(a). Plaintiffs do not disagree with this point. Opp. 8.[1] Tropicana's Products list "malic acid" in the ingredient list, and thus explicitly comply with the regulations. *See* Compl. ¶ 31; Mem. 12.

Plaintiffs argue that § 101.4(b) forbids the Products from listing the common name "malic acid," and instead requires the Products to list the "specific name" of d-l malic acid. Opp. 8. Plaintiffs have entirely misconstrued § 101.4(b), which states that "the name of an ingredient shall be a specific name and not a *collective (generic)* name." FDA regulations identify "malic acid" as

---

[1]  The regulation specifically notes that "malic acid" is the "common name" of *both* the "L" and "DL" forms of malic acid: "Malic acid (C4H6O5, CAS Reg. No. of *L-form* 97-67-6, CAS Reg. No. of *DL-form* 617-48-1) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid." 21 CFR §184.1069(a) (emphases added). Plaintiffs cite the court's decision in *Allred v. Frito-Lay North America, Inc.*, No. 17-cv-1345, 2018 WL 1185227, at *3 (S.D. Cal. Mar. 7, 2018), to suggest otherwise (Opp. 8-9), but there the court misread the regulation and failed to recognize that both the L and DL forms of malic acid were included in the sentence specifying the ingredient's "common name." Several other courts have read the regulation correctly. *See infra.*

the "common name"—*not* the "collective (generic) name"—of all forms of malic acid. 21 C.F.R. § 184.1069(a). An ingredient's "collective (generic) name" is *not* the same as its "common name"—a distinction that is obvious from the fact that the use of "collective (generic) name[s]" is forbidden by FDA regulations (with limited exceptions) while "common name[s]" are required. *Compare* 21 C.F.R. § 101.4(a)(1), *with* 21 C.F.R. § 101.4(b).[2]

Plaintiffs also conveniently omit to mention or address the *many* cases that have resoundingly rejected their argument. *See Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1049 (S.D. Cal. 2019) (finding that FDA regulations "plainly state[] that 'malic acid' is the common name for the forms listed" and therefore "do not require that malic acid be listed in the ingredients by a more specific name"); *Morris v. Mott's LLP*, No. 18-cv-01799, 2019 WL 948750, at *5 (C.D. Cal. Feb. 26, 2019) (same); *Branca v. Bai Brands, Ltd. Liab. Co.*, No. 3:18-cv-00757, 2019 WL 1082562, at *6 (S.D. Cal. Mar. 7, 2019) (same); *Sims v. Campbell Soup Co.*, No. 18-cv-00668, 2018 WL 7568640, at *24 (C.D. Cal. Sept. 24, 2018) (same).

Just as all these cases have found, because the regulations identify "malic acid" as the ingredient's "common name," 21 C.F.R. § 184.1069(a), and require the Products' labels to bear the ingredient's "common or usual name," 21 C.F.R. § 101.4(a)(1), the Products *must*—and do— list "malic acid" on their labels. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (describing rule of interpretation that identical words are intended to have the same meaning). Accordingly, the Products' ingredient lists comply with 21 C.F.R. § 101.4, and Plaintiffs' claims challenging the listing of "malic acid" in the ingredients list must be dismissed as preempted.

---

[2] The regulation gives examples of "collective (generic)" ingredient names, such as "leavening," "yeast nutrients," "dough conditioner," or "firming agents"—categories of ingredients that must specify the particular ingredient components in parentheses after the "collective (generic) name." 21 C.F.R. § 101.4(b)(16)-(19). This rule means that Tropicana could not simply list "acidulants" without specifying "malic acid," but does not alter the requirement that Tropicana use only the "common or usual name" for "malic acid." 21 C.F.R. §§ 101.4(a), 184.1069(a).

### 2. Plaintiffs' "Artificially Flavored" Claims Are Also Preempted.

Plaintiffs' remaining claims seek to require the Products to carry "Artificially Flavored" statements. These claims are based on Plaintiffs' conclusory assertion that "malic acid is an artificial flavor" that is "included in the Products to create, simulate and reinforce the characterizing fruit flavors." Opp. 4; Compl. ¶ 136. But they have alleged *no facts whatsoever* to support this contention. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint [does not] suffice "if it tenders naked assertions devoid of further factual enhancement.") (quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Where, as here, FDA regulations and Plaintiffs' own allegations and sources defeat their claims, litigation should not proceed. *See Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (dismissing claims with prejudice where sources cited by plaintiffs contradicted their allegations).

### i. Plaintiffs' Own Source Contradicts Their Conclusory Contention That Malic Acid Is An Artificial Flavor In The Products.

As Tropicana explained in its motion, Plaintiffs' claims seeking "Artificially Flavored" label statements are preempted because Plaintiffs have failed to plausibly allege that the malic acid in the Products actually is an artificial flavor. Mem. 4-6.

*First*, Plaintiffs fail to address the distinction between flavors and flavor enhancers or pH control agents explained in Tropicana's motion as well as Plaintiffs' own source. *See* Mem. 6-8. Malic acid is an ingredient with multiple possible functions. 21 C.F.R. § 184.1069(c). Indeed, it serves as a flavor enhancer or a pH control agent in most instances (including fruit beverages), rather than a flavor agent.[3] The distinction is not semantic; federal law subjects flavors to different

---

[3] *See* Scavetti Decl. Ex. A (Plaintiffs' source document) ("Malic Acid is used as a *flavor enhancer* in food preparation for confectionaries, beverages, fruit preparations and preserves, desserts, and bakery products."; "Malic Acid is a preferred acidulant for still beverages (fruit drinks, nectars, iced-teas, sports drinks, calcium fortified juices), because it *enhances fruit flavors*, [and] *improves pH stability*."; "In iced tea, sports drink or fruit soup dry mixes, Malic Acid is preferred due to its rapid dissolution rate and *flavor*

requirements than flavor enhancers. *Compare*, 21 U.S.C. § 343(i) (creating an exception to the "common or usual" name requirement for flavor ingredients); 21 C.F.R. § 101.22(h)(1) (permitting flavors to be designated generally as "natural flavor" or "artificial flavor"), *with* 56 Fed. Reg. 28,592, 28,598 (June 21, 1991) (flavor enhancers "are not flavorings" and "must be declared in the ingredient list by their common or usual names"). The mere fact that the Products contain malic acid is not sufficient to allege or establish that the malic acid is functioning as an artificial flavor in these specific Products. Plaintiffs must allege ***facts***—not their own self-serving conclusions, *see* Opp. 5—sufficient to plausibly allege that the function of malic acid in these specific Products is "to impart flavor." 21 C.F.R. § 101.22(a)(1) (defining flavoring agent); *see also Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (holding that two ingredients were not "flavors" because "they do not give the product an original taste—rather, they sweeten or amplify whatever characterizing flavor it has from another source"). Plaintiffs have not done so here—they have made ***no*** factual allegations ***at all*** about why malic acid in these Products is a flavor.

*Second*, Plaintiffs double down on their insistence that a "reliable secondary source" supports their argument that malic acid "confer[s] a 'tart, fruity' flavor to food products." Opp. 6; Compl. ¶ 50. This is inaccurate and misleading. The website referenced plainly states that in "[n]on-carbonated beverages" such as "fruit drinks" and "calcium fortified juices," malic acid "*enhances* fruit flavors, *improves pH stability*, and masks the aftertaste of some salts." Mem. 7-8, Ex. A at 5 (emphases added). Remarkably, Plaintiffs assert that *this* section—the section

---

*enhancement* qualities."; "Malic Acid boosts sourness intensity and *enhances fruit flavors*."; "Malic Acid is preferred over Citric acid in this application because it *enhances flavor, especially fruit flavors*"; "Malic Acid is preferred due to its *flavor enhancement* properties."; "Malic Acid *enhances fruit flavors*"; "Malic Acid is an economical fruit *flavor enhancer* in sherbets and water ices."; "In gelled desserts, Malic Acid *enhances fruit flavors* and *helps stabilize pH* to control gel texture") (emphases added).

specifically addressing the function of malic acid in "fruit drinks," like the ones at issue here—is not the "most relevant[]" part of the website. Opp. 6. But, in fact, the only place in which the source states that malic acid "adds a tart and fruity flavor" is in *calcium supplements*, not fruit juices. ECF No. 23-3, Ex. A at 6. This illustrates precisely the problem with Plaintiffs' claims— they are based entirely on a "possible" and "speculative," rather than plausible, flavoring function served by malic acid in *other* products and entirely detached from any plausible allegations about the function of malic acid in the specific non-carbonated fruit juice Products they challenge here. Plaintiffs' "reliable source" does not at all support their assertion that malic acid adds a tart and fruity flavor to fruit drinks, let alone the different apple, orange, grape, mango, pomegranate, blueberry, peach, or other flavors of the Products. The Court "need not accept as true [Plaintiffs'] allegations contradicting documents that are referenced in the complaint," *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008), and need go no further to resolve this case.

<em>ii.</em>    <em>Plaintiffs' Characterizing Flavor Claims Defy Logic.</em>

Plaintiffs' contention that Tropicana's Products violate federal regulations by labeling the Products with the name of the characterizing fruit juices also conflicts with federal regulations. *See* Opp. 7. They claim Tropicana has "misrepresented the contents of the Products" "by affirmatively representing that the Products have 'apple' or 'orange' flavors among other fruits[.]" *Id.* But Plaintiffs' Complaint does not dispute that each of the Products do, in fact, taste like and contain the fruits depicted on their labels and that these fruits are the "characterizing flavors for th[e] Products." Compl. ¶¶ 55-57. Federal regulations specifically entitle Tropicana to depict through words and images the characterizing flavors of its juice Products. 21 C.F.R. § 101.22(i).

Moreover, a front-of-package "Artificially Flavored" statement would be required only if (1) the malic acid in the Products were an artificial flavor (which, as explained *supra*, Plaintiffs

6

failed to plausibly allege), *and* (2) the malic acid simulates the characterizing flavor. 21 C.F.R. § 101.22(i)(2). But Plaintiffs still have alleged *no particularized facts*—**none**—to support their conclusory assertion that malic acid is somehow able to simulate the different characterizing flavors of the ten Products they challenge. *See* Opp. 6. Indeed, a glaring omission from Plaintiffs' Opposition is any explanation of how a "magical" ingredient could possibly simultaneously impart drastically different *characterizing* flavors. Plaintiffs have no answer whatsoever to (and decline entirely to acknowledge) the fact that their counsel has previously asserted that malic acid "simulates" *over eighty different flavors* (*see* Mem. 9; RJN). It is time for them to be called on this strategy.

Rather than allege facts sufficient to plausibly allege a violation of federal labeling regulations, Plaintiffs have relied on their own *ipse dixit* that malic acid serves as an artificial flavor simulating the characterizing flavor of the Products. But Plaintiffs' own sources point conclusively in the opposite direction: malic acid is a flavor enhancer and pH stabilizer, which does not impart a seemingly infinite range of characterizing flavor of its own. *See* Mem. 6-8. Because Plaintiffs failed to plausibly alleged that malic acid in the Products is an artificial flavor, or that it simulates the different fruit flavors of the Products, their effort to require Tropicana to include a front-of-package "Artificially Flavored" statement is preempted by federal law.

### B. Plaintiffs' Claims Of Deception Are Facially Implausible.

All of Plaintiffs' claims also fail on the separate and independent ground that they are implausible as a matter of law. Even if Plaintiffs pleaded a regulatory violation (they did not), it is not one that would confuse an objectively reasonable consumer. Indeed, Plaintiffs' Opposition confirms that their theory of deception is based on purported misrepresentations that appear *nowhere* on the Products' labels.

*First*, Plaintiffs argue that the use of flavor names on the front of the Products misleads consumers. *See* Opp. 9 ("The names of fruits on the Products' front labels (e.g. apple, orange) are affirmative statements that misrepresent the actual contents of the Products, which contain *artificial* fruit flavor."). But this is simply not plausible. Reasonable consumers understand that the fruit name listed on the front of the package describes the taste of the Products, and is not itself a comprehensive ingredient list. *Steele v. Wegman's Food Mkts., Inc.*, No. 19-cv-09227, --- F. Supp. 3d ---, 2020 WL 3975461, at *2 (S.D.N.Y. July 14, 2020) ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.) the one he wants. Thus the large-type 'Vanilla' is of immediate use."). "Those interested in the actual ingredients can read the list[.]" *Id.* There, as Plaintiffs concede, the consumer will find "malic acid" clearly listed. Under these circumstances, as the *Steele* court asked, "Where is the deception? What is misleading, or misrepresented?" *Id.*

*Second*, Plaintiffs argue that consumers should not be required to "scrutinize" the Products' back label to determine the ingredients, citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) and *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683 (Ct. App. 2018). Opp. 10. But they misunderstand the case law. *Williams* and *Brady* hold only that a product may not rely on back panel statements to correct affirmative misrepresentations that appear on the front label. Here, in sharp contrast to *Williams* (and many of Plaintiffs' counsels' prior cases), the packaging at issue does *not* contain any alleged affirmative misrepresentation that is "corrected" on the back panel. *See Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (dismissing ICFA claim because defendant's "labels [we]re literally true" and complied with all federal statutes). "[W]hile a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further

investigation, . . . consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight[.]" *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017). Plaintiffs have no response to (and do not discuss) any of these cases.

Indeed, courts routinely dismiss claims where the ingredient list resolves any alleged ambiguity about the contents of the products at issue. *See, e.g.*, *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (holding that no reasonable consumer would be deceived when "all of the items pictured are actually present in the product," there were no other "affirmative representation[s]," and "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients"); *Cheslow v. Ghirardelli Chocolate Co.*, No. 19-cv-07467, --- F. Supp. 3d ---, 2020 WL 4039365, at *7 (N.D. Cal. Apr. 8, 2020) (granting motion to dismiss claims under California's UCL, FAL, and CLRA because "[p]laintiffs and the general public are not free to ignore the ingredient list" in the absence of an affirmative misrepresentation on the product label); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-59 (N.D. Ill. 2015) (dismissing ICFA claim because a reasonable consumer would not conclude that the product contains "only naturally occurring, unrefined sugars" when the ingredients list contains partially refined sweeteners). Here, the ingredient lists resolve any ambiguity about whether malic acid is contained in the Products, and there is no plausible claim of deception.

*Third*, Plaintiffs contend that the labeling of the Products misleads consumers into believing the Products are "pure, natural, and not artificially flavored." Opp. 9. But they nowhere allege that the Products' labels state that the Products are "pure," "natural," or "not artificially flavored." Nor could they—no such representations have been made by Tropicana, and no reasonable consumer would make these assumptions about the Products based only on the flavor

name or the absence of an "Artificially Flavored" statement. *See Brown v. Starbucks Corp.*, No. 18-cv-2286 JM, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) ("[C]ommon sense dictates that no reasonable consumer would be misled . . . to believe that the Gummies contain only natural ingredients" from a fruit "flavors" statement). A claim of misleading labeling may not proceed where it is based on an unreasonable interpretation of the label statements, rather than on an actual misrepresentation. *See Clark v. Perfect Bar, LLC*, No. 18-cv-6006, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) (finding that "no consumer, on notice of the actual ingredients described on the packaging[,]" would be deceived concerning the product's sugar content "merely because the packaging elsewhere refers to it as a health bar"); *Ehlers v. Ben & Jerry's Homemade Inc.*, No. 2:19-cv-00194, 2020 WL 2218858, at *6-7 (D. Vt. May 7, 2020) (dismissing claims based on consumer's "interpretation of a phrase he characterizes as conveying the *impression* that all of Ben & Jerry's products are 'sourced exclusively' from 'Caring Dairies'"). "[A] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *In re 100% Grated Parmesan Cheese*, 275 F. Supp. 3d at 922 (*quoting Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012)).

Plaintiffs' Opposition and Complaint do not contain ***any facts*** alleging how, when, or why these Plaintiffs—much less an objectively reasonable consumer—would be deceived by the label into believing that the Products make a "No Artificial Flavors" statement when no such statement appears anywhere on the package, front or back, top or bottom. The only plausible inference here is that the Products are fruit juices, they taste like the flavors on their labels, and their ingredients are specifically communicated and shown to the consumer.

Plaintiffs insist that the question of whether a reasonable consumer would be deceived is not appropriate for determination on a motion to dismiss. Opp. 9. But courts routinely dismiss these types of claims where it is clear that, as a matter of law, the challenged labeling would not deceive a reasonable consumer. *See In re 100% Grated Parmesan Cheese*, 275 F. Supp. 3d at 921 ("[It] is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.") (internal citation omitted); *Prescott v. Nestlé USA, Inc.*, No. 5:19-cv-07471, 2020 WL 3035798, at *3 (N.D. Cal. June 4, 2020) (dismissing plaintiffs' UCL, FAL, and CLRA claims where a reasonable consumer would not be deceived into believing that the product contained white chocolate because of the word "white" on the packaging); *Cheslow*, 2020 WL 4039365, at *7 (same); *Ehlers*, 2020 WL 2218858, at *6-7 (dismissing plaintiffs' claim of alleged misrepresentation where it was "unreasonable for a consumer to interpret a single phrase in a single heading without reference to the contents of the section that immediately follow the heading"). The law is clear that where no reasonable consumer could be misled by challenged representations, as is the case here, dismissal—*with prejudice*—is proper. *See* Opp. 9. (citing *Davis*, 691 F. 3d at 1162, 1171 (finding representation not misleading as a matter of law and affirming dismissal with prejudice)).

## C. Plaintiffs Fail To Meet Rule 9(b)'s Requirements.

Even after Tropicana pointed out in its opening brief that Plaintiffs entirely fail to allege which, if any, of the specific Products they actually purchased (Mem. 15-16), Plaintiffs' Opposition still fails to state which Products they purchased (if any), and Tropicana and this Court are still left wondering if Plaintiffs have standing for any Products. Rather, Plaintiffs entirely ignore Rule 9(b)'s and Article III's requirements, and instead pivot to a conclusory assertion that the Products are "substantially similar" because they are "fruit-juice-based-beverage products" and

"contain malic acid." Opp. 12. Notably, Plaintiffs fail to cite a single case from the Northern District of Illinois or the Seventh Circuit on this issue.

The Seventh Circuit has made clear that plaintiffs cannot "piggy-back on the injuries of the unnamed class members" in order to acquire standing "through the back door of a class action." *Payton v. County of Kane*, 308 F. 3d 673, 682 (7th Cir. 2002). Accordingly, several Illinois courts have held that plaintiffs in a putative class action cannot overcome the requirements of Article III standing simply by arguing that products are substantially similar, and must still satisfy the injury in fact requirement. *See, e.g.*, *Porter v. NBTY, Inc.*, No. 15-cv-11459, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016) (dismissing plaintiffs' claims as to two products plaintiffs did not purchase for lack of standing); *Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-1530, 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017) (same). Furthermore, even courts that permit an analysis of whether the products are "substantially similar," require that plaintiffs plead with specificity. For example, one court found that plaintiffs failed to show that non-purchased products were substantially similar to those purchased when plaintiffs merely asserted that they were "all 'chocolate and confection products,' and that the alleged misrepresentation is the same for all of them." *Benson v. Fannie May Confections Brands, Inc.*, No. 17-cv-3519, 2018 WL 1087639, at *6 (N.D. Ill. Feb. 28, 2018), *rev'd in part on other grounds*, 944 F.3d 639 (7th Cir. 2019). Here, Plaintiffs **do not even try** to address the fact that Tropicana's Products have different flavors, different ingredients, different images, and different label statements and claims.

Moreover, even if the "substantially similar" test did apply, Plaintiffs would still be unable to satisfy it because they have not pleaded which Products Plaintiffs themselves actually purchased. Compl. ¶¶ 2, 4. Plaintiffs are required to "state with particularity . . . the who, what, when, where, and how" of the misconduct charged, *Pirelli Armstrong Tire Corp. Retiree Med.*

*Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011), yet it remains unknown *what* (if any) Products were actually purchased in this case. This does not permit Tropicana or this Court to determine whether Plaintiffs have standing to bring their claims—let alone to determine whether the *other* Products identified in the Complaint are substantially similar to the Products that actually were purchased. Plaintiffs are not free to simply withhold the basic facts of their claims indefinitely. Accordingly, the Complaint must be dismissed under Rule 9(b).

### D. Plaintiffs Fail To Salvage Their Causes Of Action For Additional Reasons.

#### 1. Plaintiffs Fail To State A Claim For Negligent Misrepresentation.

Plaintiffs' Opposition argues that the economic loss rule does not apply to their negligent misrepresentation claims under Illinois and California law. Opp. 17. While Plaintiffs' Opposition ignores Illinois law altogether, they are incorrect under both Illinois and California law. Plaintiffs seek recovery *only for alleged economic loss*, not injury to persons or property (Compl. ¶¶ 90, 153, 174), and therefore cannot recover in tort. *See Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract."); *Swearingen v. Santa Cruz Natural, Inc.*, No. 13-cv-04291, 2016 WL 4382544, at *10 (N.D. Cal. Aug. 17, 2016) (dismissing plaintiffs' negligent misrepresentation claim challenging labeling on beverage products where they "failed to state an independent basis for their damages apart from their economic loss").

Although certain exceptions may apply to allow a plaintiff to recover for economic loss in negligence, those exceptions do not apply here. Plaintiffs attempt to evade the economic loss rule by citing California cases that exclusively feature express, affirmative, and intentional misrepresentations and are therefore easily distinguished from the facts in this case. For example, in contrast to Tropicana's Products, the sparkling beverage products in *Augustine v. Talking Rain*

13

included the words, "naturally flavored," on the front label.  *See* 386 F. Supp. 3d 1317, 1331 (S.D. Cal. 2019).  Likewise, the affirmative misrepresentation in *Hannibal Pictures, Inc. v. Sonja Productions, LLC* was a promise of "between $25 and $50 million in cash funding" to induce the plaintiff to enter into a contract when the defendant did not have this money.  No. 06-cv-1814, 2009 WL 10673572, at *4 (C.D. Cal. Aug. 31, 2009).  The remaining cases cited are similarly inapplicable.[4]

Under California law, moreover, "[a] negligent misrepresentation claim requires a positive assertion, not merely an omission."  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (*citing Lopez v. Nissan N. Am., Inc.*, 135 Cal. Rptr. 3d 116, 136 (Ct. App. 2011)).  In an attempt to find the "positive assertion" required to state a claim for negligent misrepresentation, Plaintiffs' Opposition asserts that Tropicana "affirmatively represented that the Products had 'apple' or 'orange flavors' (among other fruits)" and that "[t]hese assertions were false."  Opp. 17.  This is puzzling.  Plaintiffs' Complaint does *not* allege that the Products do not taste like or contain the fruit depicted on the label, or do not contain the flavors of those fruits. Yet, Plaintiffs' Opposition now asserts that "affirmatively represent[ing] that the Products were flavored with fruit [] was deceptive and misleading."  *Id.*  Not so.  At its core, Plaintiffs' negligent misrepresentation claim is just a repackaged version of Tropicana's purported "omission" that the Products "contain artificial flavor."  Compl. ¶¶ 43, 83.  Such "implied" assertions or representations are categorically insufficient and Plaintiffs' California negligent misrepresentation

---

[4]  *See Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*, 315 Fed. Appx. 603, 607 (9th Cir. 2008) (finding that a "special relationship" between an air freight carrier and manufacturer must be satisfied in order to recover for economic loss); *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116-cv-00371, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016) (finding negligent misrepresentation sounding in fraud where defendants' marketing materials expressly promised to replace a turf athletic field and failed to); *Zakaria v. Gerber Prod. Co.*, No. 15-cv-00200, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (finding that economic loss rule did not apply where label fraudulently represented that infant formula would "Reduce Risk Of Developing Allergies").

14

claim must be dismissed. *See In re Vizio, Inc.*, 238 F. Supp. 3d at 1230 (finding that "[a]n 'implied' assertion or representation is not enough" to state a claim for negligent misrepresentation) (internal citations omitted).

The Seventh Circuit has also recognized that "negligent misrepresentation by nondisclosure is a claim of questionable heritage and has been soundly rejected in some jurisdictions." *Eberts v. Goderstad*, 569 F.3d 757, 765 (7th Cir. 2009); *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 820-21 (N.D. Ill. 2016) (dismissing Plaintiffs' omission-based negligent misrepresentation claims).

To the extent a negligent misrepresentation claim could even be brought under Illinois law based on an omission (it cannot), and to the extent Plaintiffs did not abandon their Illinois negligent misrepresentation claim by failing to address the Illinois precedent Tropicana cited (they have), Illinois law requires that Defendant acted carelessly in ascertaining the truth of the statement and owed a duty to disclose to the plaintiff. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012). Plaintiffs' Opposition offers nothing to counter the fact that they failed to provide particularized factual allegations about Tropicana's purported carelessness or why Tropicana has a special duty to disclose. Mem. 21. Plaintiffs do not explain *how* Tropicana acted carelessly or *what* special duty of disclosure Tropicana purportedly owed to them. *See Wigod*, 673 F.3d at 573. Instead, Plaintiffs recite the conclusory allegations from their Complaint. Opp. 17-18. For this additional reason, Plaintiffs' negligent misrepresentation claims must be dismissed.

### 2. Plaintiffs Fail To State A Claim For Fraud By Omission.

Plaintiffs also fail to salvage their fraud by omission claim because they do not (and cannot) point to any facts alleged demonstrating that Tropicana intentionally concealed or suppressed a material fact. Mem. 22; Opp. 18. Rather, Plaintiffs merely repeat the assertion that Tropicana

"made a partial representation by claiming the Products have 'apple' or 'orange' flavors . . . without disclosing that the Product[s are] artificially flavored." Opp. 18. But, as discussed *supra*, Plaintiffs nowhere allege that the products do not taste like or contain the fruits depicted, nor do they claim that Tropicana failed to accurately disclose the contents of the Products in the ingredient lists. The presence of "malic acid" is explicitly disclosed on the packaging (Compl. ¶ 24), by its "common or usual name," in direct compliance with FDA regulations, as are the fruit juices that the Products contain. There is simply no plausibly alleged fraudulent omission claim, let alone one pled with the particularity required to maintain a fraud claim.

### 3. Plaintiffs' "Unfair" And "Unlawful" Claims Under California's UCL Fail.

The Opposition does nothing to salvage Plaintiffs' UCL "unfair" and "unlawful" claims. As a preliminary matter, the "tethering test" that Plaintiffs rely on for their UCL "unfair" prong claims (Opp. 14-15) does not apply here because this is *not* an action alleging anticompetitive behavior by one of Tropicana's competitors. *See Card Tech Int'l, LLP v. Provenzano*, No. 11-cv-2434, 2012 WL 2135357, at *29 (C.D. Cal. June 7, 2012).[5] Moreover, even if that test did apply, Plaintiffs' claims would fail because the Products' labeling does not violate any statutes, regulations, or other established public policy. *See supra*, Sections A, B.

Plaintiffs' argument that their claims satisfy the "unfair" prong's "balancing test" likewise fails because: (1) there is no plausible consumer injury, let alone a "substantial consumer injury"; (2) the utility of the Products' flavor labeling outweighs the unreasonable additions and changes Plaintiffs' propose, which contradict FDA regulations; and (3) the purported "injury" could easily

---

[5] While Plaintiffs assert that Tropicana's conduct injures its competitors (Compl. ¶ 143), they do not allege that they or any members of the class and sub-classes they seek to represent are competitors of Tropicana, *id.* ¶ 93 (defining the putative class as consumers "who made retail purchases of the Products . . . for personal use and not for resale . . ."). Nor do they assert that any of the alleged harm to competitors in turn caused them harm as consumers. Mem. 19 n. 9.

have been avoided, by looking at the back of the packages (that Plaintiffs must have seen in order to be challenging back-of-package statements), which explicitly disclosed the presence of malic acid. *See Provenzano*, 2012 WL 2135357, at *29.

Plaintiffs' assertion that the labeling is "unfair" because the Products' labeling causes consumers to perceive the Products "as being a healthier 'natural' option" (Opp. 14) is also implausible and skips several logical steps. As a threshold matter, a cursory review of the Products' packaging reflects that no "healthy" or "all natural" claims are made. *See*, *e.g.*, Compl. ¶ 23, 30. Nor does the Complaint contain any non-conclusory allegations suggesting that Plaintiffs paid more for the Products based on any such (non-existent) labeling, or suggesting that similar products with different labels were less expensive. Again, Plaintiffs fail to "connect the dots" between the absence of an artificial flavors disclosure, an affirmative impression that the Product is "healthier" or "all natural," and some sort of price premium based on the challenged labeling. *See Salazar v. Honest Tea, Inc.*, No. 13-cv-02318, 2015 WL 7017050, at *6 (E.D. Cal. Nov. 12, 2015). Without a plausible connection between the Products' labeling and the purported harm, Plaintiffs' assertions that Tropicana's conduct is "unfair" cannot withstand scrutiny.

As noted in Tropicana's opening brief, and discussed *supra*, Plaintiffs' "unlawful" prong claim also fails because Plaintiffs fail to allege a predicate violation of any law. *See* Mem. 19; Sections A, B, *supra*. Plaintiffs' conclusory assertions that Tropicana violated California's Sherman Law (which incorporates FDA regulations), False Advertising Law, and CLRA (Opp. 13-14), do not change that result.

### 4. *Plaintiffs' Claims For Restitution and Equitable Relief Under The UCL Also Fail.*

Tropicana's opening brief demonstrated that Plaintiffs' equitable claims for restitution under the UCL must be dismissed because Plaintiffs failed to plead that they lack an adequate

remedy at law. *See* Mem. 19. Plaintiffs' attempt to escape the precedent set by *Sonner v. Premier Nutrition Corp.*, No. 18-15890, --- F.3d ---, 2020 WL 3263043, at *8 (9th Cir. June 17, 2020) by arguing that they "seek restitution and equitable relief in the alternative to damages" (Opp. 16), is unavailing. First, Plaintiffs' Complaint nowhere states that they are seeking restitution and equitable relief "in the alternative." Second, this argument fails to address that it "matters not that a plaintiff may have no remedy if her other claims fail" and "where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (*quoting Rynes v. Stryker Corp.*, No. 10-cv-5619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011)). The key authority Plaintiffs cite to for support, *Doe v. Epic Games, Inc.* (Opp. 16), was decided *before* the Ninth Circuit's resolution of the "split of authority in the California district courts on the question of whether plaintiffs should be barred from pleading claims for equitable relief under the UCL and CLRA if they have alleged a claim that would provide an adequate remedy at law." *See* 435 F. Supp. 3d 1024, 1051 (N.D. Cal. 2020). Accordingly, Plaintiffs' UCL claims for equitable restitution must be dismissed. *Sonner*, 2020 WL 3263043, at *8.

### E. Plaintiffs Failed To Plead Any Valid Exception To The Statutes Of Limitations.

All of Plaintiffs' claims are preempted and facially implausible as a matter of law and therefore the Court need not reach their timeliness. But even if any of their claims could survive, Plaintiffs' Opposition fails to establish their entitlement to tolling of the applicable statutes of limitations under any of the doctrines they cite.

In reviewing a motion to dismiss, the Court is "limited to the factual allegations contained within the four corners of the complaint," along with any exhibits the plaintiff attached thereto. *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 917 (N.D. Ill. 2007). Moreover, "[i]t is a basic principle

that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Jeffries v. Dutton & Dutton, P.C.*, No. 05-C-4249, 2006 WL 1343629, at *7 (N.D. Ill., May 11, 2006) ("A party cannot raise a new claim, effectively amending the complaint, in an opposition to a motion to dismiss."). Plaintiffs' Complaint made no mention of the delayed discovery, fraudulent concealment, or continuing violation doctrines as reasons for which the statutes of limitation had not run. *See generally* Compl. These new theories in Plaintiffs' Opposition should therefore be dismissed. Additionally, Plaintiffs' Opposition spends three pages outlining these tolling doctrines exclusively under *California* law *despite* several of their claims—including their ICFA, fraud by omission, and negligent misrepresentation claims—arising under *Illinois* law. For these reasons, each of these tolling doctrines is inapplicable and Plaintiffs are not entitled to tolling of any of their causes of action. *See Allred*, 2018 WL 1185227, at *7-8 (holding that plaintiffs failed to plead facts to support delayed discovery and fraudulent concealment tolling doctrines), *modified*, 2019 WL 1040018, at *7 (S.D. Cal. Mar. 5, 2019) (finding that the continuing violation doctrine also did not apply).

**F.    Plaintiffs Fail to Defend Extraterritorial Application of ICFA.**

Contrary to Plaintiffs' contention, no choice of law analysis is necessary to dismiss Plaintiffs' impermissibly extraterritorial ICFA claims based on purchases made outside of Illinois. *Compare* Opp. 21, *with* Mem. 23-24. Perhaps Plaintiffs' entire avoidance of and failure to address Illinois law led to their confusion. Indeed, while the California cases Plaintiffs cite are simply irrelevant, Illinois courts have made clear that the ICFA has *no extraterritorial application*, and that dismissal of such claims at the pleading stage is appropriate. *See Kubilius v. Barilla Am., Inc.*, No. 18-cv-6656, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019) ("[T]he ICFA does not apply to

the claims of class members who purchased their products outside of Illinois."); *Oliveira v. Amoco Oil Co.*, 726 N.E.2d 51, 61 (Ill. 2000) (finding that the ICFA "does not apply to consumers outside Illinois"), *rev'd on other grounds*, 776 N.E.2d 11 (Ill. 2002). Accordingly, Plaintiffs' attempt to apply the ICFA nationwide must be rejected and their ICFA claims based on out-of-state purchases must be dismissed. *See Kubilius*, 2019 WL 2861886, at *2 (finding dismissal appropriate at the pleading stage where complaint seeks impermissible extraterritorial application of the statute).

## III.     CONCLUSION

Plaintiffs' Opposition merely repeats Plaintiffs' bald, conclusory, and patently unsupported assertions that the Products contain artificial flavors. Plaintiffs have no response to the fact that their chief source states that malic acid is a pH control agent and a flavor enhancer, rather than a flavor, in fruit juice beverage products. Moreover, Plaintiff's theory of deception—that consumers believe the Products make a "No Artificial Flavors" statement when no such statement is on the label—is implausible under established precedent.

The business model perpetuated by cases like these—isolating one ingredient that could have different potential functions, asserting by *ipse dixit* that the ingredient functions only as a flavor (contrary to cited source material), and deploying this theory against dozens of companies that use malic acid in hundreds if not thousands of consumer products—is not one the Judiciary should condone. Plaintiffs must actually do *some factual* work to allege a plausible claim. While there can be debates about whether the legal system should ever enable claims like these, at least for this Complaint with these Products, the ends of justice are readily served by dismissing this ill-conceived, unsupported putative class action with prejudice.

Dated:  August 24, 2020                    Respectfully submitted,

                                           BY:      /s/  *Andrew S. Tulumello*
                                                   Andrew S. Tulumello

                                           **GIBSON, DUNN & CRUTCHER LLP**

                                           Andrew S. Tulumello (*pro-hac vice*)
                                           Jason R. Meltzer (*pro-hac vice*)
                                           Arianna Scavetti (*pro-hac vice*)
                                           1050 Connecticut Avenue, N.W.
                                           Washington, D.C. 20036
                                           Tel:  (202) 955-8500
                                           Fax:  (202) 467-0539
                                           Atulumello@gibsondunn.com
                                           Jmeltzer@gibsondunn.com
                                           Ascavetti@gibsondunn.com

                                           **FOX, SWIBEL, LEVIN & CARROLL, LLP**

                                           Erik J. Ives
                                           200 West Madison Street, Suite 3000
                                           Chicago, Illinois 60606
                                           Tel:  (312) 224-1239
                                           Fax:  (312) 224-1201
                                           eives@foxswibel.com

                                           *Attorneys for Defendant Tropicana Manufacturing*
                                           *Company, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on August 24, 2020, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/     Erik J. Ives*
Erik J. Ives
