IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE WILLARD,
an individual, and
AMIE BLACKMAN, an individual,
on behalf of themselves individually,
and on behalf of all others similarly
situated, and the general public,

    Plaintiffs,

      v.

TROPICANA MANUFACTURING
COMPANY, INC.,

    Defendant.

No. 20-cv-01501
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

This case is about fruit juice. Plaintiffs Jacqueline Willard (Willard) and Amie Blackman (Blackman) (collectively, Plaintiffs), bring claims on behalf of themselves and all other similarly situated against defendant Tropicana Manufacturing Company, Inc. (Defendant or Tropicana), alleging that Defendant misbrands and falsely advertises ten Tropicana juice products, in Illinois, California, and throughout the United States, in violation of federal and state unfair competition, false advertising, and consumer protection laws. R. 1, Compl.[1] Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 23, Mot.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Dismiss. For the reasons below, the Court grants in part and denies in part Defendant's motion.

## Background

Defendant manufactures, packages, labels, advertises, markets, and sells numerous fruit juice products in California, Illinois, and throughout the United States. Compl. ¶¶ 7, 9.[2] Plaintiffs challenge the labeling of ten Tropicana juice products: "Trop 50 Farmstand Apple," "Tropicana 100% Juice Apple Juice," "Trop 50 No Pulp," "Trop 50 Orange Mango," "Trop 50 Orange Peach," "Trop 50 Pomegranate Blueberry," "Trop 50 with Calcium & Vitamin D," "Trop 50 with Vitamin C & Zinc," "Tropicana Grape Drink," and "Tropicana Fruit Medley" (collectively, the Products). *Id.* ¶¶ 34–36.

All of the Products contain an ingredient called dl-malic acid, which Plaintiffs claim is an artificial flavoring agent, which confers a "tart, fruity" flavor to the Products. *Id.* ¶¶ 37, 50–51. Plaintiffs allege that the Products' labels violate federal and states law by: (1) failing to include an "artificially flavored" label on the front and back of the Products' packaging, despite containing malic acid; (2) deceiving consumers into believing the Products are "all natural" based on the inclusion of the characterizing fruit flavor; and (3) misleadingly identifying "dl-malic acid" only as generic "malic acid" in the ingredient list. *Id.* ¶¶ 14, 17, 19, 20, 25, 41, 42, 44, 52, 59, 60, 61, 68, 72, 73, 75. Plaintiffs allege that they justifiably relied upon and were deceived by the Products' deceptive labeling when they purchased one or more of the

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Products. Compl. ¶¶ 79–83. Plaintiffs allege that the following photograph is a true and accurate copy of the front label of the "Trop 50 Farmstand Apple" Product:



*Id.* ¶ 23. Similarly, Plaintiffs allege that the following photograph is a true and accurate copy of the front label of the "Tropicana 100% Juice Apple Juice" Product:



*Id.* ¶ 30. Plaintiffs do not include photographs of the other eight Products in the Complaint.

Based on these allegations, Plaintiffs filed a class action complaint against Defendant, bringing six claims under Illinois and California law, specifically: (1) violation the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.* (ICFA); (2) violation of the "unlawful" and "unfair" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL); (3) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (CLRA); (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL); (5) fraud by omission under 815 ILCS 505/2 and Cal. Civ. Code §§ 1709-1710; and (6) negligent misrepresentation under Illinois common law and Cal. Civ. Code §§ 1709–1710. Compl. ¶¶ 114–94. Plaintiffs seek to represent a nationwide class of consumers, as well as Illinois and California sub-classes. *Id.* ¶¶ 93–95. Defendant now moves to dismiss the Complaint pursuant to Rule 12(b)(6), arguing that

Plaintiffs' claims are preempted, implausible, and inadequately pled. Mot. Dismiss. Defendant also argues that Plaintiffs lack standing to bring their claims under Article III. *Id.*

### Standard of Review

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, claims alleging fraud must also satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And Rule 9(b)'s heightened pleading standard applies to securities fraud claims. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). So, generally speaking, Rule 9(b) requires a complaint to "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal citation omitted). Put differently, a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks and citation omitted).

## Analysis

### I.  Article III Standing for Non-Purchased Products

Though Defendant does not explicitly reference Rule 12(b)(1), it argues that Plaintiffs lack standing to pursue claims for any of the Products that they did not purchase. Mot. Dismiss at 15–17. Plaintiffs counter that they do have standing to assert claims for all of the Products, even if Plaintiffs did not purchase them, because the Products—and Plaintiffs' claims regarding them—are all substantially similar. Resp. at 11.

Article III standing is a matter of subject matter jurisdiction, consisting of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The complaint "need only plausibly suggest each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal citations omitted). Although neither party starts with the standing argument, the Court must ensure it has proper subject matter jurisdiction over Plaintiffs' claims before it can address Defendant's 12(b)(6) arguments. *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) ("It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action.") (citations omitted).

Here, Plaintiffs allege that "Willard purchased one or more of the Products several times since April 2018" and "purchased one of the Products most recently on January 5, 2020 at a Jewel-Osco supermarket . . . in Elmhurst, Illinois." Compl. ¶¶ 79–80. Similarly, they allege that "Blackman purchased one or more of the Products several times since 2016 at various locations in San Diego County, California during the Class Period defined herein." *Id.* ¶ 81. But Defendant points out that Plaintiffs do not allege that they purchased all ten Products—in fact, they do not claim *which* of the ten Products they purchased. Mot. Dismiss at 15–16.

When evaluating Article III standing, the Court is bound by Seventh Circuit precedent, to the extent it exists. *See Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Transp. Div. v. BNSF Ry. Co.*, 2021 WL 2709143, at *3 (N.D. Ill. July 1, 2021); *see Ins. Tr. v. River Trails Sch.*, 2003 WL 22016880, at *1 (N.D. Ill. Aug. 27, 2003) (out-of-Circuit authority is persuasive "in the absence of binding precedent from within"). As Defendant correctly notes, Plaintiffs rely solely on authority from California district courts to support their contention that they have standing to bring claims based on the labels on all of the Products. Reply at 11–12; Resp. at 11–12. But the parties did not cite—and the Court is unaware of—existing Seventh Circuit law directly on point at the time the parties filed their briefs, so out-of-Circuit district cases can be persuasive authority.

However, the Court agrees with Defendant's interpretation of *Payton v. Cnty. of Kane*, 308 F.3d 673 (7th Cir. 2002), reading it to stand for the proposition that

8

Plaintiffs cannot rely on the "substantially similar test" to acquire standing. Mot.

Dismiss at 17; Reply at 12. In *Payton*, the Seventh Circuit cautioned:

> This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible, in light of the fact that a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

308 F.3d at 682 (internal quotation marks and citation omitted). The majority of the

courts in the Northern District of Illinois courts that have addressed this issue have

determined that class-action plaintiffs are prohibited from overcoming the

requirements of Article III standing simply by arguing that non-purchased products

are substantially similar to purchased products. *See Bakopoulos v. Mars Petcare US,

Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) ("Plaintiffs have no injury-in-

fact caused by products that they did not buy, and therefore lack standing with

respect to those products."); *Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *3 (N.D. Ill.

Sept. 28, 2021); *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *3 (N.D. Ill.

Oct. 12, 2017); *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016);

*Pearson v. Target Corp.*, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012); *Padilla v.

Costco Wholesale Corp.*, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012). But, there

is an in-District split on the issue, and several courts have allowed consumer-fraud

claims based on substantially similar products to survive until at least the class

certification stage. *See Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at *4

(N.D. Ill. Mar. 29, 2018); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill.

Aug. 18, 2017); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017); *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014). However, the parties in *Wagner* agreed that the substantial similarity test applied, so the court did not analyze the question. 2017 WL 3070772, at *5. The court in *Mednick* did not cite to *Payton* and assumed that the substantial similarity test was valid. 2014 WL 6474915, at *3. The courts in *Carrol* and *Ulrich* relied on *Wagner* and *Mednick* in allowing consumer fraud claims based on un-purchased products to proceed based on the substantial similarity test. *Carrol*, 2018 WL 1695421, at *4; *Ulrich*, 2017 WL 3581183, at *6. Still other courts in this District have found the issue to be a Rule 23 class certification issue rather than an Article III standing issue. *See Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408–09 (N.D. Ill. 2021); *Friend v. FGF Brands (USA) Inc.*, 2019 WL 2482728, at *3 (N.D. Ill. June 12, 2019); *Bolden v. Barilla Am., Inc.*, 19-cv-02237, ECF No. 82 at 12–14 (N.D. Ill. Dec. 15, 2021).

The Court finds the reasoning of the first line of cases to be most persuasive, and agrees with the analysis in *Bakopoulos*, which reasoned, "[w]hether these plaintiffs may be adequate class representatives for absent class members injured by similar products is a different question than the issue here. At this stage of the case, there is no class and plaintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims." 2021 WL 2915215, at *3 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The court dismissed the plaintiffs' claims relating to products they did not purchase for lack of standing. *Id.* This

conclusion is supported by a recent Seventh Circuit case affirming a district court's holding that a plaintiff lacked standing in a class action consumer products case where he alleged injury relating to products that he did not buy that were similar to those he had bought. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021). True, the Seventh Circuit did not engage in any analysis of the issue, but even if its language is non-binding dicta, for the reasons explained above, the Court is persuaded by the reasoning of the in-District cases finding that class-action plaintiffs cannot overcome Article III's standing requirement simply by arguing that products are substantially similar.

Defendant does not argue that Plaintiffs lack standing to assert claims relating to any Products they did purchase, and the Court agrees that Plaintiffs have satisfied the standing requirements as to purchased products by alleging that they "would not have purchased the Products in the absence of Defendant's misrepresentations and omissions or would only have been willing to pay less for the Products than they did." Compl. ¶ 87; *see Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (citing *In re Aqua Dots Products Liability Litig.*, 654 F.3d 748 (7th Cir. 2011)); *see also Gross v. Vilore Foods Co., Inc.*, 2021 WL 1428487, at *3 (S.D. Cal. Apr. 15, 2021).

Therefore, the Court finds that Plaintiffs lack standing to assert claims over any Products that they *did not* actually purchase. They do, however, have standing to assert claims based on any Products they *did* purchase.

The Court having addressed the standing issue, now turns to Defendant's Rule 12(b)(6) arguments and will first address Defendant's argument that Plaintiffs fail to

satisfy Rule 9(b)'s requirements by failing to specify which of the Products Plaintiffs purchased below. *See infra* Section IV.

## II. Preemption under the Federal Food, Drug, and Cosmetic Act

Defendant first argues that all of Plaintiffs' claims are preempted by federal statutes. The Supremacy Clause of the U.S. Constitution provides that the Constitution and laws of the United States shall be the "supreme law of the land." U.S. Const. art. VI, cl.2. The Supremacy clause "invalidates state laws that interfere with, or are contrary to federal law." *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 646 (7th Cir. 2019) (quoting *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712-713 (1985)). There are three types of preemption: express, field, and conflict. *Id.*

At issue here is express preemption, which exists when Congress clearly declares its intention to preempt state law. *Nelson*, 928 F.3d at 646. Defendant argues that Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (FDCA), and specifically the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 343 (NLEA), which amended the FDCA "to ensure uniform labeling of food products." Mot. Dismiss at 4–12 (quoting *Lateef v. Pharmavite LLC*, 2012 WL5269619, at *2 (N.D. Ill. Oct. 24, 2012)). Plaintiffs, on the other hand, contend that Plaintiffs' state law claims are identical to the federal regulations and

therefore, not preempted. Resp. at 3–9 (citing *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013)).

The NLEA includes an express preemption provision that forbids states from imposing food labeling requirements "not identical" to the federal requirements. *See* 21 U.S.C. § 343-1(a). The preclusive effect of the express preemption provision extends "beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005). Defendant contends that Plaintiffs' claims, asserting violations of state consumer protection statutes and related causes of action, fall within the purview of the NLEA's express preemption provision, as Plaintiffs attempt to impose labeling requirements "not identical" to those established by federal regulations. Mot. Dismiss at 5–6. Defendant raises three preemption arguments: (1) Plaintiffs' claim that malic acid functions as a flavor is contrary to federal regulations; (2) Plaintiffs' claim that Defendant misleadingly labels the Products' "characterizing flavors" is contrary to federal regulations; (3) federal regulations allow Defendant to include the common name "malic acid" on the Products' ingredient lists. *Id.* at 4–12. The Court addresses each argument in turn.

### A. Malic Acid as an "Artificial Flavor"

First, Defendant argues that both FDA regulations and Plaintiffs' Complaint demonstrate that malic acid is not an "artificial flavor" (much less a *characterizing* flavor) and therefore requiring Defendant to disclose it as such is contrary to federal regulations. Mot. Dismiss at 6–10. Plaintiffs retort that Defendant's argument that

13

malic acid is a flavor enhancer rather than a flavor is a factual question not properly decided on a motion to dismiss. Resp. at 5–6. The Court agrees with Plaintiffs.

Food and Drug Administration (FDA) federal regulations require that "[i]f any characterizing flavor of a Product is not created exclusively by the identified ingredient, the product's front label must state that the product is flavored with either, or both of, natural or artificial flavorings. If any artificial flavor is present which 'simulates, resembles or reinforces' the characterizing flavor, the food must be prominently labeled as 'Artificially Flavored.'" Compl. ¶¶ 58–59 (citing 21 C.F.R. §§ 101.22(i)(3)-(4)). FDA regulations recognize that malic acid can have a variety of functions, including as a flavoring agent and adjuvant, a flavor enhancer, or a pH control agent. 21 C.F.R. § 184.1069(c). A "flavor" is "any substance, the function of which is to impart flavor." *Id.* § 101.22(a)(1). Similarly, a "flavoring agent and adjuvant[s]" is a substance "added to impart or help impart taste or aroma in food." On the other hand, a "flavor enhancer" is a substance "added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11).

Plaintiffs allege that "[t]he fruits named and illustrated on the Products' front labels are [] characterizing flavors for those Products." Compl. ¶ 57. The Complaint further alleges that "[t]he dl-malic acid is a flavoring material [] included in the Products to create, simulate and reinforce the characterizing fruit flavors." *Id.* ¶ 136; *see also id.* ¶¶ 37, 44, 47, 60. Although Defendant concedes that the malic acid used in the Products is artificial, it insists that it is not a "flavor" because it does not give

14

the Products an "original taste" but rather *enhances* the characterizing flavors from another sources. Mot. Dismiss at 6–7. Defendant argues that it is impossible for malic acid to confer the characterizing fruit flavors to all ten of the Products, which vary in their fruit flavors from apple, to pomegranate blueberry, to orange mango, to grape, to name a few. *Id.* at 6, 8–9[3]; *see* Compl. ¶¶ 36, 55–57. In Defendant's view, malic acid functions like an artificial sweetener, used to enhance flavor, not impart an original flavor. *Id.* at 9–10 (citing *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (sweeteners are not "flavors" because "they do not give the product an original taste—rather, they sweeten or amplify whatever characterizing flavor it has from another source")).

Plaintiffs, however, point out that numerous courts have found that the question of whether malic acid functions as a flavor or a flavor enhancer in a particular food product is a factual dispute inappropriate for resolution on a motion to dismiss. Resp. at 6 (citing *Allred v. Frito-Lay*, 2018 WL 1185227, at *4–5 (S.D. Cal. Mar. 7, 2018) (concluding that whether malic acid is a "flavor" under federal regulations is a "factual determination that would be inappropriately resolved on a motion to dismiss"); *Allred v. Kellogg Co.*, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23,

---

[3]Defendant asks the Court take to judicial notice of eighteen other lawsuits filed by Plaintiffs' counsel in which the complaints allege that malic acid simulates over eighty flavors. Mot. Dismiss at 9 (citing R. 23-1, Mot. Dismiss, Appen. A, Request Jud. Not.). Plaintiffs do not oppose Defendant's request for judicial notice, *see* Resp., and the Court agrees with Defendant that it may properly take judicial notice of the previously filed complaints. Fed. R. Evid. 201(b); *see also Parunago v. Comm. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *McCray v. Hermen*, 2000 WL 684197, at *2 n.1 (N.D. Ill. May 23, 2000) ("Included in [matters appropriate for judicial notice] are proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.") (internal quotation marks and citation omitted).

2018) ("At this stage, the Court cannot look beyond the pleadings and must take reasonable allegations as true. Both of these hurdles are appropriate for summary judgment, but at this stage, the Court finds Allred has sufficiently pled the ingredients are artificial and used as flavoring agents."); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) (denying the defendant's motion for summary judgment where the plaintiff's expert opined that malic acid is used for flavoring purposes as opposed to a pH control agent)); *see also Hayes v. Gen. Mills, Inc.*, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021) (collecting cases and holding that "[a] more developed record may demonstrate that the malic acid in the Products does not function as a flavor, but to make such a factual determination at [the motion to dismiss] juncture would be premature").

Defendant attempts to distinguish these cases by arguing that the webpage cited by Plaintiffs in support of their allegation that malic acid confers a "tart, fruity flavor to food products" undermines Plaintiffs' argument that malic acid acts as a flavor in the Products. Mot. Dismiss at 7–8 (citing Compl. ¶ 50 n.4 (citing "Malic Acid," by The Chemical Company, https://thechemco.com/chemical/malic-acid[4])). Defendant is correct that Plaintiffs' Complaint cites to the section of the article that states that "*[i]n liquid calcium supplements*, Malic Acid adds a tart and fruity flavor while controlling the pH." Mot. Dismiss at 7 (citing Compl. ¶ 50 n.4 (citing "Malic

---

[4]Defendant also requests that the Court consider the website, and again Plaintiffs do not oppose the request. Request Jud. Not. at 12; Resp. Again, the Court agrees with Defendant that it can properly consider the website, as it is "referenced in the complaint and central to plaintiff's claims." Request Jud. Not. at 12 (quoting *Shachter v. City of Chi.*, 2019 WL 4750083, at *2 n.2 (N.D. Ill. Sept. 30, 2019)); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

Acid")) (emphasis added). The section on "non-carbonated beverages" like "fruit drinks" states that "malic acid is a preferred acidulant . . . because it enhances fruit flavors, improves pH stability, and masks the aftertaste of some salts." "Malic Acid." The Court agrees with Defendant that Plaintiffs' selective citation does not directly support their allegations. *See* Reply at 5–6, 10 (citing *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014)).

In *Alamilla*, the court examined an article referenced in the plaintiffs' complaint and determined that the article's conclusion, that pressurization has "little or no effects on nutritional and sensory quality aspects of foods", directly undermined the plaintiffs' claim that the defendants' pressure treatment deprived the at-issue products of nutritional value. 30 F. Supp. 3d at 944 (internal citations omitted). Here, on the other hand, as noted above, the article cited by Plaintiffs states that "Malic Acid is a preferred acidulant for still beverages (fruit drinks . . .), because it enhances fruit flavors, improves pH stability, and masks the aftertaste of some salts." "Malic Acid." True, the article does not state that malic acid adds a "tart and fruity flavor" to fruit juices, as it does to calcium supplements. *Id.* But neither does it state that malic acid *only* enhances fruit flavors in fruit drinks, nor that it *does not* add a "tart and fruity flavor" to fruit juices. *Id.* So, the website may not directly support Plaintiffs' allegations that malic acid "create[s], simulate[s] and reinforce[s] the characterizing fruit flavors" in the Products, but it does not undermine them either. In fact, the Court finds that the website, read as a whole, underscores the conclusion that many courts have come to, that determining whether malic acid acts as a "flavor"

or "flavor enhancer" is a factual question not appropriate for resolution on a motion to dismiss.

Reading the allegations in the Complaint in the light most favorable to Plaintiffs, as it must, the Court finds that Plaintiffs have adequately alleged that the malic acid used in the Products acts as a flavor, not just a flavoring agent.[5]

### B. Labeling of Characterizing Fruit Flavors without Artificial Disclaimer

Defendant next argues that, even if the Court finds that Plaintiffs have adequately pled that malic acid is an artificial flavor, Plaintiffs' claims are still preempted by federal regulations. Mot. Dismiss at 8.

The federal regulations require a front-of-pack "Artificially Flavored" statement only if malic acid "simulates, resembles, or reinforces" the *characterizing flavor* of the Products. *Id.* (citing 21 C.F.R. § 101.22(i)). Plaintiffs allege that various fruit flavors are the characterizing flavors of the various Products. Compl. ¶¶ 55 ("Apple is a characterizing flavor"), 56 ("Orange is a characterizing flavor"), 57 ("The fruits named and illustrated on the other Products' front labels are similarly characterizing flavors for those Products"). Defendant contends that Plaintiffs' "bare, conclusory assertion" that malic acid "simulates" each characterizing fruit flavor is

---

[5]Nor is the Court persuaded by Defendant's argument, raised in a footnote, that malic acid should not be considered an artificial flavor because it does not "appear[ ] on the lists of artificial flavors promulgated by the FDA." Mot. Dismiss at 10 n.4 (citing *Viggiano*, 944 F. Supp. 2d at 889 (citing 21 C.F.R. § 172.515(b); 21 C.F.R. § 182.60)). As Plaintiffs point out, 21 C.F.R. § 101.22 states that these lists are not exhaustive (Resp. at 7 (citing 21 C.F.R. §101.22)) and other courts have held that, "simply because malic acid is not on these lists does not mean that the FDA has determined malic acid is not an artificial flavor" (*id.* (quoting *Frito-Lay*, 2018 WL 1185227, at *4)).

insufficient to state a viable omission claim, and moreover is nonsensical because, as noted above, there is no way malic acid could simulate the characterizing fruit flavors in the Products in Plaintiffs' Complaint, not to say the eighty fruit flavors at issue in the other judicially noticed complaints filed by Plaintiffs' counsel. Mot. Dismiss at 8–9.

Plaintiffs retort that the Complaint sufficiently alleges that malic acid "simulates, resembles, or reinforces" each of the tart, fruity flavors of the various Products and "malic acid is known in the industry for its ability to simulate and reinforce various fruit flavors, including specifically the apple and orange flavors that Defendant's Products advertise." Resp. at 6 (citing Compl. ¶ 50). Although it is a close call, the Court finds that Plaintiffs have done just enough by pleading that malic acid "simulates, resembles, or reinforces" the characterizing fruit flavors of the Products. Simply because malic acid impacts or reinforces the "tart and fruity" characterizing fruit flavor does not mean it does not resemble that characterizing flavor in any respect. *See Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *4 & n.5 (C.D. Cal. July 20, 2020) (collecting cases holding the question was more appropriate for summary judgment and rejecting the defendants' position that, if "malic acid only impacts the tartness of the characterizing flavor it does not resemble[ ] [the characterizing fruit] flavor in any respect") (internal quotation marks and citation omitted). Again, whether malic acid "simulates, resembles, or reinforces" the characterizing fruit flavor of the Products is a question more appropriate for summary judgment. Therefore, at this stage, the Court finds that Plaintiffs' claims that the Products are

misleading to consumers because they fail to include a front-facing "artificially-flavored" disclaimer, are not preempted by federal regulations.[6]

## C. Labeling Malic Acid with its Common Name

Defendant's final preemption argument concerns the manner in which the Products list malic acid in the ingredient list. Mot. Dismiss at 11–12. Plaintiffs allege that the Products are improperly labeled because they feature "Malic Acid" in the ingredients list, rather than "dl-malic acid," a reference to the particular form of malic acid that Plaintiffs contend Defendant uses in the Products. Compl. ¶ 42. The Court agrees with Defendant that federal regulations preempt such a claim.

The FDCA and FDA regulations require that a food label bear the "the common or usual name of each . . . ingredient . . . ." 21 U.S.C. § 343(i)(2); *see also* 21 C.F.R. § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food . . . shall be listed by [their] common or usual name . . . ."). Federal law also provides that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name[.]" Resp. at 8 (citing 21 C.F.R. § 101.4(b)). Plaintiffs argue that malic acid is the common, collective name of the ingredient at issue here, not the specific name, as

---

[6]To be clear, the Court is not finding, and Plaintiffs do not appear to allege, that the fruit images or fruit names, on their own, are misleading. The Court agrees with Defendant that such images and names are allowed under the FDA's regulations. Mot. Dismiss at 10–11 (citing 21 C.F.R. § 101.22(i)). Rather, given the allegations that malic acid "simulates, resembles, or reinforces" the characterizing fruit flavor of the Products, it is the *absence* of an artificially flavored disclaimer that is potentially misleading. *See* Resp. at 7; 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor . . . by the word(s) "artificial" or "artificially flavored" . . . e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored".).

required by § 101.4(b). *Id.* Defendant insists that the use of "malic acid" on the labels is consistent with the federal regulations, and thus the claims based on this theory should be dismissed as preempted. Mot. Dismiss at 11–12.

Neither party cites to—nor is the Court aware of—any cases within the Seventh Circuit or the Northern District of Illinois for that matter, that has addressed this issue. Instead, the parties rely on district court decisions from California. *See* Mot. Dismiss at 12; Resp. at 8–9. It appears that the majority of the federal courts in California that have decided the issue have sided with Defendant's position. *Compare Gross v. Vilore Foods Co., Inc.*, 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020); *Hilsley v. Gen. Mills, Inc.*, 376 F.Supp.3d 1043, 1045 (S.D. Cal. 2019); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *1 (S.D. Cal. Mar. 7, 2019); *Morris v. Mott's LLP*, 2019 WL 948750, at *1 (C.D. Cal. Feb. 26, 2019); *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at *1 (C.D. Cal. Sept. 24, 2018) (all holding that FDA regulations do not require that malic acid be listed in the ingredients by a more specific name); *with Frito-Lay*, 2018 WL 1185227, at *3. Those cases concluded that the defendant manufacturer was not required to list "d-l malic acid" in its ingredient list, but rather, it was sufficient for the defendant manufacturer to list "malic acid," which is the common name for d-l malic acid. The Court finds the reasoning of the majority of these courts persuasive.

For example, in *Morris*, the court found that § 101.4(b), which requires the use of a "specific name," did not override § 101.4(a), which requires the use of a "common or usual name." 2019 WL 948750, at *5. The court found that instead, § 101.4(b)

simply clarifies that multiple ingredients must be listed separately rather than as one generic ingredient. *Id.* For example, the court noted that "apples, oranges, and grapes can't be listed collectively as fruit." *Id.* (internal quotation marks and citation omitted). This Court agrees with Defendant, and the majority of federal California courts that have addressed this issue, and finds that Plaintiffs' claims based on the theory of listing "malic acid" instead of "dl-malic acid" on the ingredient list are preempted. Accordingly, those claims are dismissed.

Because the Court has found that Plaintiffs have standing to bring claims about the Products they purchased, and their claims regarding the failure to include a "artificially flavored" disclaimer on the front label are not preempted, the Court now turns to Defendant's arguments on the merits of Plaintiffs' allegations.

### III. Consumer Protection Statutes: Deception of a Reasonable Consumer

Defendant first contends that Plaintiffs fail to state a claim under the Illinois and California consumer protection statutes that form the basis for four of Plaintiffs' claims: the ICFA (Count I), UCL (Count II), FAL (Count IV), and CLRA (Count VI) (collectively, the Consumer Protection Statutes). Mot. Dismiss at 13. Specifically, Defendant argues that Plaintiffs' claims fail because they do not identify any actionable misrepresentation on the Products' labels that would deceive a reasonable consumer. *Id.* at 14. Plaintiffs disagree and assert that whether a reasonable consumer would be misled is not an appropriate question for a motion to dismiss, and even if it was, Defendant's use of the fruit flavor names and pictures of fruit on the

front labels mislead consumers, which is not saved by including "malic acid" in the ingredient list on the back label.[7] Resp. at 9–11.

In order to state a claim under each consumer protection statute, a plaintiff must plausibly allege that the challenged statements or other representations are likely to deceive a reasonable consumer. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 & n.1 (7th Cir. 2020) (various state consumer protection statutes, including the CLRA, UCL, and ICFA "all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers") (internal quotation marks and citations omitted); *Stiles v. Trader Joe's Co.*, 2017 WL 3084267, at *3, *5 (C.D. Cal. Apr. 4, 2017) (the "reasonable consumer" standard governs UCL, FAL, and CLRA claims).

"A statement is deceptive if it creates a likelihood of deception or has the capacity to deceive, in that it may mislead a reasonable consumer, as understood in light of all the information available to plaintiffs." *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (internal quotation marks and citations omitted). Likely to deceive requires more than the "mere possibility" that the at-issue label "'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' . . . Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh,*

---

[7]To the extent that Plaintiffs' consumer fraud claims rely on alleged deception based on the inclusion of the common name "malic acid" on the ingredient list as opposed to the specific "dl-malic acid," Resp. at 10, those claims are preempted, as discussed above, *see supra* Section II.C.

*Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. App. Ct. 2003)). "Where the packaging of a product is alleged to have misled consumers, the primary evidence in evaluating the reasonable consumer test is the packaging of the product." *Stiles*, 2017 WL 3084267, at *3 (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). As Defendant correctly points out, in the absence of an affirmative misrepresentation on the front label, "[p]laintiffs and the general public are not free to ignore the ingredient list." Mot. Dismiss at 14 (quoting *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020)). However, if there is ambiguity, or "room to argue about the precise meaning of the front-label claims," a back-label ingredient list does not immunize a defendant from claims brough under the consumer protection statutes. *Bell, Inc.*, 982 F.3d at 477 (citing, among other cases, *Williams*, 552 F.3d at 939).

As an initial matter, the Court disagrees with Plaintiffs that the question of whether a reasonable consumer would be misled is never a matter appropriate for a motion to dismiss. *See Bell*, 982 F.3d at 477 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.") (internal citation omitted); *Stiles*, 2017 WL 3084267, at *3 (the Ninth Circuit has recognized that "some complaints alleging CLRA, FAL, and UCL advertising claims have been properly dismissed" on a motion to dismiss) (citing *Williams*, 552 F.3d at 939). However, dismissal of such claims for failure to plausibly allege that reasonable consumer

would likely be deceived by the packing is appropriate only in rare situations. *Id.* at *4 (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).

Defendant argues that Plaintiffs' claims under the Consumer Protection Statutes fail because the Complaint does not identify any actionable misrepresentation on the challenged packaging that would deceive a reasonable consumer. Mot. Dismiss at 14. As an initial matter, Defendant contends that Plaintiffs do not allege that the Products' packaging makes any claims that the juice was "all natural" or had "no artificial flavors." *Id.* Next, Defendant argues that the Products' fruit names, such as "Farmstand Apple" and the "pictures of ripe, fresh apples" and the name "Farmstand" on the "Trop 50 Farmstand Apple" Product, would not deceive a reasonable consumer into believing that the Product is an all-natural juice product, given that the ingredient list discloses the presence of "malic acid" and nowhere on the packing does the Product state that it is "all natural" or had "no artificial flavors." *Id.* (citing Compl. ¶¶ 19–20). Plaintiffs counter that the "names of fruits on the Products' front labels (e.g. apple, orange) are affirmative statements that misrepresent the actual contents of the Products, which contain *artificial* fruit flavor." Resp. at 9 (emphasis in original). Moreover, they argue that, because the front label requires an affirmative statement about the use of artificial flavoring, it matters not that malic acid is listed on the ingredient panel. *Id.* at 10 (citing, among other cases, *DePhillippis v. Living Essentials, LLC*, 2018 WL 7051065, at *4–5 (S.D. Cal. Nov. 29, 2018); *Hunt v. Sunny Delight Beverages Co.*, 2018 WL 4057812, at *3 (C.D. Cal. 2018)).

25

The issue before the Court is whether the fruit names of the Products, such as "Trop 50 Farmstand Apple" and "Tropicana 100% Juice Apple Juice," combined with photographs of the corresponding fruits on the front labels would lead a reasonable consumer to believe that the Products contains only natural ingredients. Plaintiffs maintain that they do and cite several cases where courts have declined to dismiss claims premised on the Consumer Protection Statutes based on similar labels. In *DePhillippis*, 2018 WL 7051065, at *4–5, the court denied a motion dismiss, finding that the plaintiff "plausibly alleged her reliance based on the product label's advertisement of a fruit-flavored product without an artificially flavored disclaimer." *Id.* at *5. The product not only contained malic acid but also did *not* contain any fruits or fruit juices. *Id.* Here, Plaintiffs do not claim that the Products do not contain fruit juice. *See* Compl. Still, like the products in *DePhillippis*, the Products contain malic acid without an "artificially flavored" disclaimer on the front label. But the *DePhillippis* court analyzed only whether the plaintiffs sufficiently alleged reliance on the allegedly deceptive labels; it did not analyze whether a reasonable consumer would have been misled by the labels. 2018 WL 7051065, at *4–5. The case, therefore, is of limited benefit to the instant analysis.[8] Plaintiffs also rely on *Hunt*, 2018 WL 4057812 at *1, *3–4, where the court held that the plaintiffs had adequately alleged violations of the CLRA, FAL, and UCL by alleging they were misled by labels that

---

[8]In its Reply, Defendant calls out Plaintiffs for failing to address on-point cases cited in the Motion to Dismiss. *See* Reply at 9. However, Defendant, in its Reply, also failed to address several cases relied on by Plaintiffs in their Response in opposition to Defendant's "reasonable consumer" argument, including *DePhillippis*, *Hunt*, *Kellogg*, and *Frito-Lay*. As discussed in the body of this Opinion, the Court conducted its own analysis of these cases without input from Defendant.

included fruit names and fruit pictures but no front-label artificially flavored disclaimer, and that the product did not include any fruits or fruit juice ingredients but contained malic acid. Unlike the *DePhillippis* court, the court in *Hunt* specifically found that, "[i]n the absence of such a disclaimer [a front-facing disclaimer regarding the artificial flavoring], the Court cannot conclude as a matter of law that a reasonable consumer would not be misled by the Products' labels." *Id.* at *3. But again, the Court finds *Hunt* to be of minimal utility to the inquiry here because, apart from the aforementioned quote, the court did not engage in any analysis as to why a reasonable consumer would be misled by the lack of an artificially flavored disclaimer; rather, its analysis focused on the fruit names and pictures, and found that a reasonable consumer would believe that the presence of those meant that the products did in fact contain fruit or fruit juices as an ingredient, when the plaintiffs alleged that none of the products "contained any or all of the actual juices from the displaced fruits." *Id.*

Both parties cite to cases dealing with non-juice products that come to opposite conclusions. *Compare Kellogg*, 2018 WL 1158885, at *3 (finding a reasonable consumer may believe that chips were naturally, not artificially flavored, where chip label depicted "a chalkboard sign with the words 'Salt & Vinegar' along with a pile of salt and two bottles, which impliedly contain vinegar" despite no affirmative statement that the chips were all natural and the ingredient list disclosed use of malic acid); *with Cheslow*, 445 F. Supp. 3d at 13, 16, 20 (finding a reasonable consumer would not be deceived into thinking that reference to "white" on baking chip packing

27

represents the type of chocolate in the product, i.e., white chocolate., where product did not contain any chocolate, which was reflected on the ingredient list). These cases, again, are mostly unhelpful here, as they simply demonstrate that courts vary in their interpretations of what statements or depictions are ambiguous. The Court is mindful that dismissal as a matter of law should occur only in "rare situations." *Williams*, 552 F.3d at 939.

Here, the "Trop 50 Farmstand Apple Juice" Product's front label contains not only the fruit name and pictures, but also a prominent statement that the Product contains "50% less sugar & calories than apple juice." Compl. ¶ 23. A reasonable consumer may not ignore statements on the front label. *See Stiles*, 2017 WL 3084267, at *3–4. And this statement undermines Plaintiffs' claims that the name of the Product and the pictures of apples could mislead consumers into believing that the Product contains only natural ingredients—it implies that the "Trop 50 Farmstand Apple Juice" Product is not in fact "apple juice." Taking the front label as a whole, the Court finds that it is not ambiguous, so the ingredient list, including "malic acid" confirms a reasonable consumer's expectation that the Product contains artificial ingredients. *See id.* Therefore, the packaging of the "Trop 50 Farmstand Apple Juice" Product makes "it impossible for the [P]laintiff[s] to prove that a reasonable consumer [is] likely to be deceived." *See Williams*, 552 F.3d at 939. Accordingly, Count I, Count II, Count IV, and Count VI, based on the "Trop 50 Farmstand Apple Juice" Product's alleged violations of the Consumer Protection Statutes, are dismissed with prejudice. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (affirming dismissal with

prejudice where no reasonable consumer would be misled by challenged label statements).

On the other hand, the "Tropicana 100% Juice Apple Juice" Product includes the name, "Apple Juice," the statement, "100% Juice" and includes pictures of apples. Compl. ¶ 30. It does not include any statements like the one discussed above from the "Trop 50 Farmstand Apple Juice" Product's front label. *Id.* It is fairly easy to see how a reasonable consumer could interpret the statement "100% Juice" to mean that the Product contains all-natural products, that is, only apple juice. *See Bell*, 982 F.3d at 483 ("How reasonable consumers actually understand defendants' '100% Grated Parmesan Cheese' labels is a question of fact that cannot be resolved on the pleadings."). Because the Court finds that the front label, containing the statement "100% Juice" could confuse a reasonable consumer, the Court agrees with Plaintiffs that Defendant is not saved by the inclusion of malic acid on the back label ingredient list. Resp. at 10 (citing *Williams*, 552 F.3d at 939). Thus, Plaintiffs' allegations raise the plausible inference that a consumer could find the "Tropicana 100% Juice Apple Juice" Product's label misleading.

That leaves the remaining eight Products: "Trop 50 No Pulp, Trop 50 Orange Mango, Trop 50 Orange Peach, Trop 50 Pomegranate Blueberry, Trop 50 with Calcium & Vitamin D, Trop 50 with Vitamin C & Zinc, Tropicana Grape Drink, Tropicana 'Fruit Medley'" (together, Remaining Products). Compl. ¶ 36. Apart from the names of these Products, the Complaint contains very little information about their labels. Plaintiffs allege that each Product contains malic acid and fails to

disclose that fact on the front labels, but they only conclusory allege that "Defendant knowingly omits all the federal and state law required label disclosures informing consumers that the Products contain artificial flavors" and that "[t]he Products, in fact, are all labeled as if they contain only natural ingredients, deceiving consumers into believing they are purchasing a premium, all-natural product instead of one that contains artificial flavoring" *Id.* ¶¶ 13–14, 37–39. The pleading standard is not high, and Plaintiffs need only "nudge [ ] their claims across the line from conceivable to plausible." *Bell*, 982 F.3d at 476 (applying Rule 8(a) standard to reasonable consumer test for claims under the consumer fraud statutes) (internal quotation marks and citation omitted); *Williams*, 552 F.3d at 938 (same). But conclusions of law are insufficient to satisfy even Rule 8(a). *Iqbal*, 556 U.S. at 678–79. Based on the allegations about the Remaining Products, the Court cannot say whether a reasonable consumer would be deceived by the labels. The Court, therefore, dismisses without prejudice Count I, Count II, Count IV, and Count VI based on the Remaining Products' alleged violations of the Consumer Protection Statutes.

## IV.    Failure to Satisfy Rule 9(b)

Defendant argues that Plaintiffs' "Complaint fails to meet Rule 9(b)'s requirements with respect to the challenged products." Mot. Dismiss at 15. Defendant does not specify which claims it moves to dismiss for failure to meet this standard, except for citations to several cases dismissing claims brought under the Consumer Protection Statutes. *Id.* at 16 (citations omitted). The Court thus construes this argument as one to dismiss the Consumer Protection Statute claims, but finds that,

to the extent Defendant sought to dismiss Plaintiffs' negligent misrepresentation or fraudulent omission claims for failure to state a claim under Rule 9(b), it has waived that argument (apart from the specific arguments addressed below). *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss.").

As noted above, the Seventh and Ninth Circuit have applied Federal Rule of Civil Procedure 8(a)'s lower pleading standard when evaluating whether pleadings satisfy the Consumer Protection Statutes' reasonable consumer test. *See supra* Section III. But, Defendant points out, and Plaintiffs do not dispute, that courts generally apply Rule 9(b)'s heightened pleading standard when evaluating claims brought under the Consumer Protection Statutes on the merits (apart from application of the reasonable consumer test). Mot. Dismiss at 16 (citing *Kline v. Iovate Health Scis. U.S.A., Inc.*, 2017 WL 1135580, at *4 (S.D. Cal. Mar. 27, 2017) (applying Rule 9(b) standard to UCL claim to the extend it is based on a misrepresentation); *Forsher v. J.M. Smucker Co.*, 2020 WL 1531160, at *3 (N.D. Ohio Mar. 31, 2020) ("Rule 9(b)'s heightened pleading standards apply to CLRA and UCL claims [ ] because those claims are 'grounded in fraud' or 'sound in fraud.' For the same reasons, courts have also applied Rule 9(b) to claims under California's FAL.") (quoting *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011)); *see also Ibarra v. Kind, LLC*, 83 F.Supp.3d 751, 755 (N.D. Ill. 2015) (ICFA

claims are subject to Rule 9(b)'s heightened pleading requirements) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)).

Defendant argues that Plaintiffs' claims under the Consumer Protection Statutes fail because they do not allege "the who, what when, where, and how" of the misconduct charged as required under Rule 9(b). Mot. Dismiss at 15 (citing *Pirelli Armstrong*, 631 F.3d at 441). The Court agrees.

In response, Plaintiffs merely state they have done enough by parroting the allegations of the Complaint, that "Plaintiff Willard purchased one or more of the Products several times since April 2018" and "purchased one of the Products most recently on January 5, 2020 at a Jewel-Osco supermarket located at 944 S. York Road, in Elmhurst, Illinois," and that "Plaintiff Blackman purchased one or more of the Products several times since 2016 at various locations in San Diego County, California during the Class Period defined herein." Resp. at 11 (citing Compl. ¶¶ 79–80, 82). But they do not engage in any analysis about how these allegations are particularized enough to satisfy the requirements of Rule 9(b). As Defendant points out, Plaintiffs fail to allege which Products they actually purchased, and apart from one specific date and location of one of Willard's purchases, only generally allege when and where the purchases were made. Mot. Dismiss at 15 (citing Compl. ¶¶ 2, 35, 79, 81). Additionally, as discussed above, the Complaint contains no details about the alleged misrepresentations contained on the Remaining Products' labels. *See supra* Section III. The Court agrees with the court in *Kline* that "[d]ismissal is appropriate where plaintiffs "generally allege they purchased [Defendant's] products within the

32

last four years" but did "not allege which products they purchased or when they purchased them." 2017 WL 1135580, at *4; *see also Forsher*, 2020 WL 1531160, at *3 (dismissing UCL, FAL and CLRA claims where the plaintiff "fail[ed] to identify what Products he purchased, from where, and at what time beyond a two-year window"); *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012) ("Unless Plaintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with the requisite specificity the content of the alleged misrepresentation").

Therefore, Count I, Count II, Count IV, and Count VI based on the "Tropicana 100% Juice Apple Juice" Product's alleged violations of the consumer fraud statutes are dismissed (as are the same Counts based on the Remaining Products' alleged violations, in the alternative to the dismissal for failure to satisfy the reasonable consumer test*, see supra* Section III). However, because Plaintiffs may be able to allege additional facts to satisfy Rule 9(b), the dismissal is without prejudice.

## V. Negligent Misrepresentation

Defendant argues that Plaintiffs' negligent misrepresentation claims (Count V) fail for two reasons: (1) they are barred by the economic loss rule; and (2) negligent misrepresentation claims must be based on positive assertions rather than omissions. Mot. Dismiss at 20–21. The Court addresses each argument in turn.

First, Defendant argues that Plaintiffs' claims are barred by the economic loss rule,[9] which prohibits a purchaser from recovering in contract rather than tort for

---

[9]The economic loss doctrine is also commonly referred to in Illinois as the "*Moorman* Doctrine." *In Retail Fund Algonquin Commons, L.L.C. v. Abercrombie & Fitch Stores, Inc.*,

purely economic loss "unless [the plaintiff] can demonstrate harm above and beyond a broken contractual promise." Mot. Dismiss at 20 (citing *Robinson v. Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.")). "The economic loss rule generally allows plaintiffs to seek remedies for negligence only where they experience physical injury to person or property, and not for pure economic losses." *Swearingen v. Santa Cruz Nat., Inc.*, 2016 WL 4382544, at *10 (N.D. Cal. Aug. 17, 2016) (internal quotation marks and citations omitted).

## A. California Law

The Court first examines Plaintiffs' negligent misrepresentation claims under California law. The Court agrees with Plaintiffs that the economic loss doctrine does not apply because their claims are grounded in fraud. Resp. at 16–17. "Notwithstanding[] the economic loss rule, courts in California have allowed misrepresentation claims to proceed." *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1331 (S.D. Cal. 2019) (internal citations omitted); *see also Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) (holding "that California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable"). For example, the court in *Augustine* allowed the plaintiffs' negligent misrepresentation claims to proceed,

---

2010 WL 1874054, at *2 (N.D. Ill. May 10, 2010) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (1982)).

finding that plaintiffs had adequately alleged that the defendant had knowledge that its sparkling water products contained artificial flavors (malic acid) while representing that they were all natural (the front label contained a "naturally flavored designation"). 386 F. Supp. 3d at 1321–23, 1331. Defendant argues that *Augustine* is distinguishable because the products at issue featured an affirmative misrepresentation by including the words "naturally flavored" on the front label. Reply at 13–14 (citing 386 F. Supp. 3d at 1331).

This ties into Defendant's second argument for dismissal of Plaintiffs' negligent misrepresentation claims: "Under California law, moreover, '[a] negligent misrepresentation claim requires a positive assertion, not merely an omission.'" Reply at 14 (quoting *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017)). Plaintiffs do not dispute that they must plead an affirmative misrepresentation, but rather contend that they have done so by alleging that "Defendant affirmatively represented that the Products were flavored with fruit, which was deceptive and misleading, because the Products are flavored with an artificial flavoring ingredient." Resp. at 17. However, as discussed above, the misrepresentation as to the "Trop 50 Farmstand Apple" Product is based on a combination of words and images on the front label, combined with Defendant's failure to disclose the inclusion of artificial flavoring. *See supra* Section III. The Court agrees with Defendant that such an "implied" misrepresentation is insufficient to support a negligent misrepresentation claim. Mot. Dismiss at 21 (citing *Vizio*, 238 F. Supp. 3d at 1230); *see also Gross v. Vilore Foods Co., Inc.*, 2021 WL 1428487, at *8

35

(S.D. Cal. Apr. 15, 2021). So too for Plaintiffs' claims premised on the Remaining Products, for which Plaintiffs have failed to sufficiently allege (under Rule 8(a) or 9(b)) implied or affirmative misrepresentations. For the same reasons discussed above, *supra* Section III, Plaintiffs' California negligent misrepresentation based on the "Trop 50 Farmstand Apple" Product is dismissed with prejudice, while the claims based on the Remaining Products are dismissed without prejudice. Also, for the same reasons discussed above, the Court finds that Plaintiffs have sufficiently alleged a "positive" assertion based on the "Tropicana 100% Juice Apple Juice" Product, namely, that the Product is "100% Juice." *See supra* Section III; *see also Gross*, 2021 WL 1428487, at *8 (statement on label that products were "100% natural" was an affirmative statement sufficient to support negligent misrepresentation claim where products contained malic acid).

Neither party advances which pleading standard the Court should apply to Plaintiffs' negligent misrepresentation claims under California law. It appears that courts in California are split about whether Rule 8(a) or 9(b) applies to such claims. *See Scripps Health v. nThrive Revenue Sys., LLC*, 2019 WL 4193405, at *3 (S.D. Cal. Sept. 3, 2019) (collecting cases). Defendant, as the movant, bears the burden to establish entitlement to relief, namely, dismissal. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). And as noted above, the Court has found Defendant has waived any argument that the negligent misrepresentation claims generally fail under Rule 9(b). *See supra* Section IV. To plead a negligent misrepresentation claim under California law, a plaintiff must allege: "(1) a misrepresentation of a past or existing

36

material fact; (2) made without reasonable grounds for believing it to be true; (3) made with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Augustine*, 386 F. Supp. 3d at 1330–31. Under Rule 8(a), the Court finds that Plaintiffs have plausibly alleged a California negligent misrepresentation claim based on the "Tropicana 100% Juice Apple Juice" Product. Of course, Plaintiffs only have *standing* to bring such a claim if they in fact purchased this Product.

## B. Illinois Law

The Court next turns to the parties' arguments under Illinois law. Defendant correctly points out that Plaintiffs ignore Illinois law altogether. Reply at 13. Although the Court could grant the motion for this reason alone, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."), it need not do so. Even if the Court construed Plaintiffs' argument that a fraud exception to the economic loss doctrine applies to negligent misrepresentation claims in California and Illinois, such an argument fails under Illinois law. In Illinois, the "intentional misconduct" exception to the economic loss doctrine cannot apply to negligent misrepresentation claims, because by definition fraud is intentional and negligence is not. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 722 (N.D. Ill. 2020) (explaining that the fraud exception to the *Moorman* doctrine cannot apply to a negligence claim because "by definition fraud is intentional and negligence is not") (citing, among other cases, *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *6 (N.D. Ill. Oct. 31, 2012)). Because Plaintiffs' negligent

misrepresentation claim under Illinois common law is barred by the economic loss doctrine, the Court need not address Defendant's second argument for dismissal of Plaintiffs' Illinois negligent misrepresentation claims. Although the Court is dubious that Plaintiffs can successfully plead a negligent misrepresentation claim under Illinois law, the dismissal is without prejudice. *See O'Connor*, 477 F. Supp. 3d at 710 (dismissing negligent misrepresentation claim without prejudice despite being skeptical that it was salvageable).

## VI.    Fraud by Omission

Defendant argues that Plaintiffs' fraud by omission claims under California and Illinois law (Count III) fail because Plaintiffs fail to allege with particularity that Defendant intentionally concealed or omitted a material fact with the intent to deceive Plaintiffs. Mot. Dismiss at 22. Plaintiffs retort, without citing to any case law, that the Complaint states a claim for fraud by omission because it alleges that "Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase the Product. Specifically, Defendant actively concealed the fact that the Products contain artificial flavoring ingredients." Resp. at 18 (citing Compl. ¶ 160). Additionally, Plaintiffs posit that they allege that "Defendant intended to give reasonable consumers like the Plaintiff[s] the impression that the Products are pure, natural, and not artificially flavored, by

packaging, labeling, and advertising the Products in this way." *Id.* (citing Compl. ¶ 17).

This time, the Court starts with the claim under Illinois law, as it is easily disposed of. In their Complaint, Plaintiffs allege a fraud by omission claim under 815 ILCS 505/2. Compl. ¶¶ 158–59. Section 505/2 declares unlawful "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Id.* The problem for Plaintiffs is that Section 505/2 is an integral section of the ICFA. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (to allege a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce") (internal citations omitted). As Plaintiffs fail to articulate how their Illinois claims under Count III differ from their ICFA claims in Count I, the Court dismisses them for the same reasons discussed above. *See supra* Sections III, IV.

As for Plaintiffs' California fraudulent omission claim, the only argument in support of dismissal advanced by Defendant is that Plaintiffs have failed to sufficiently allege Defendant's *intent*. Mot. Dismiss at 22. The Court finds that, based on the pleadings and briefs before it, Plaintiffs have sufficient pled a fraudulent omission claim based on all the Products. "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed

a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Stofer v. Shapell Indus., Inc.*, 233 Cal. App. 4th 176, 186 (Cal. App. Ct. 2015) (quotations omitted).

As Plaintiffs point out, here, Plaintiffs allege that Defendant knows consumers prefer naturally flavored products over those using artificial flavors and are willing to pay a premium for these products. Compl. ¶¶ 15–16. Plaintiffs allege that Defendant knew the Products contained artificial flavors and knew it was required to disclose this information on the front packaging. Compl. ¶¶ 60–62, 85. At this stage of the proceedings, as discussed above, the Court cannot determine as a matter of law whether FDA regulations require Defendant to prominently display an artificial flavors disclosure on the Products' front packaging. *See supra* Section II. Plaintiffs allege that Defendants intentionally omitted this artificial flavor disclosure on the Products' front packaging to give consumers the false impression that the product only contained natural flavors. Compl. ¶¶ 15–16, 63, 68, 75–77, 160–61. Plaintiffs and consumers relied on this omission and purchased the Products without knowing they contained artificial flavors. *Id.* ¶¶ 78, 82–83, 87–88, 161. If Plaintiffs had known the Products contained artificial flavors, they would not have purchased them or would have paid less for them. *Id.* 87–88, 161, 163. Plaintiffs and consumers

40

thus paid a premium for the Products, believing they contained only natural ingredients, and lost the amount of this premium as a result of Defendant's intentional failure to prominently display an artificial flavor disclosure on the Products' packaging. *Id.* ¶¶ 87–88. Based on these allegations—and Defendant's failure to argue that this claim fails for any reason than a failure to adequately plead Defendant's intent—the Court denies Defendant's Motion to Dismiss Plaintiffs' California fraud by omission claims based on all Products that Plaintiffs purchased.

## VII. Statute of Limitations

Defendant argues Plaintiffs' claims are in part barred by the statute of limitations. Mot. Dismiss at 22–23. The Court addresses this argument as applicable to the remaining claims only: Count III (fraud by omission under California law as to all the Products purchased by Plaintiffs) and Count V (negligent misrepresentation as to the "Tropicana 100% Juice Apple Juice" Product if purchased by Plaintiffs). Fraud by omission and negligent misrepresentation claims are both subject to a three-year statute of limitations under California law. *See* Cal. Civ. Proc. Code § 338(a). Because the Complaint was filed on February 28, 2020, Defendant maintains that Plaintiffs' California fraudulent omission and negligent misrepresentation claims based on purchases before February 28, 2017 are untimely. Mot. Dismiss at 23. The Complaint asserts that Plaintiff first purchased one or more of the Products in 2016 in San Diego, California and seek to represent a putative class of individuals who purchased the Products as far back as 2014. Compl. ¶¶ 81, 93–95. Plaintiffs respond that the delayed discovery rule, fraudulent concealment, and the continuing

41

violation doctrine apply and thus toll the statute of limitations. Resp. 19–21. The Court discusses each of Plaintiffs' justifications below.

### A. Delayed Discovery Rule

To properly invoke the delayed discovery rule to the statute of limitations, a plaintiff "must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Frito-Lay*, 2018 WL 1185227, at *7 (internal quotation marks and citation omitted). Plaintiffs argue they did not discover that the labeling "was false and misleading until July 2019, when they learned the Product contained undisclosed artificial flavoring" based on "[a]nalytical testing of the Tropicana 'Trop50 No Pulp' Product on 7/29/2019 [, which] confirmed that the compound added to the Product is the artificial dl-malic acid." Resp. at 19 (citing Compl. ¶ 49). Plaintiffs point to *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011), where the court found that the plaintiff had adequately pled her claim that she was a "reasonably diligent consumer who exercised reasonable diligence in her purchasing, use, and consumption" and did not learn the product label was false until she was provided information by a friend. Resp. at 20 n.6 (citing *Henderson,* 2011 WL 1050637 at *2). Here, like *Henderson*, Plaintiffs plead where and when they learned of the label issues; however, unlike *Henderson*, Plaintiffs fail to allege any facts related to any exercise of reasonable diligence. The Court agrees with Defendant that Plaintiffs cannot "effectively amend[] the complaint" in their Response. Reply at 19 (quoting *Jeffries v. Dutton & Dutton, P.C.*, 2006 WL 1343629, at *7 (N.D. Ill., May 11, 2006)).

Thus, Plaintiffs have not sufficiently pled that the delayed discovery rule applies. The Court next turns to fraudulent concealment as a means to toll the statute of limitations.

## B. Fraudulent Concealment

"When a plaintiff relies on a theory of fraudulent concealment . . . to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory." *Frito-Lay*, 2018 WL 1185227, at *7 (quoting *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (Cal. App. Ct. 2003). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* (internal quotation marks and citation omitted). Similar to the continuing violation doctrine, to successfully invoke the doctrine of fraudulent concealment, the plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at *43 (C.D. Cal. Sept. 25, 2006); *see also Rambus Inc. v. Samsung Elecs. Co.*, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007) ("[B]ecause fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies."). As with the delayed discovery doctrine, the Court finds that Plaintiffs have failed to meet their "heavy burden" to plead fraudulent concealment at the pleading stage, as they do not provide

any facts about their reasonable diligence in uncovering the fraud. *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980). Thus, the Court agrees with Defendant that Plaintiffs have not adequately pled fraudulent concealment to toll the statute of limitations.

## C. Continuing Violation

Finally, Plaintiffs argue that the Court should apply the continuing violation doctrine to halt the statute of limitations. "The continuing violation doctrine is meant to serve equitable purposes when 'injuries are the product of a series of small harms, any one of which may not be actionable on its own,' or when the plaintiff has alleged 'a pattern of reasonably frequent and similar acts . . . justifying treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.'" *Hunter v. Nature's Way Prods., LLC*, 2016 WL 4262188, at *11 (S.D. Cal. Aug. 12, 2016) (quoting *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013)).

Plaintiffs contend that Defendant engaged in a continuing violation because Class members purchased the Products before and during the limitations period and "Defendant's misrepresentations were made on the labels of the Products, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations." Resp. at 21 (citing Compl. ¶ 102). The Court agrees with Defendant that nothing in the Complaint warrants application of the continuing violation doctrine. *See* Reply at 19. The Complaint "identifies a series of discrete, independently actionable alleged wrongs" (namely, each purchase

44

of one of the Products). *Aryeh*, 292 P.3d at 880; Compl. ¶ 81. "Nor is this a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms." *Aryeh*, 292 P.3d at 880. Accordingly, the Court finds that the continuing violation doctrine does not apply and any claims pre-dating February 28, 2017 are barred by the applicable statute of limitations.

## VIII.  Additional Arguments

The Court need not address Defendant's alternative argument that Plaintiffs fail to state an "unfair" or "unlawful" claim under the UCL (Mot. Dismiss at 18–20) because Count II is dismissed for other reasons (*see supra* Sections III–IV). Similarly, the Court does not need to address Defendant's argument that Plaintiffs' ICFA claims based on nationwide purchases must be dismissed. Mot. Dismiss at 23–24.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion to Dismiss [23], as follows:

- Grants the motion with respect to Counts I, II, IV, and VI and dismisses with prejudice as to claims premised on purchases of "Trop 50 Farmstand Apple" and without prejudice as to claims premised on purchases of "Tropicana 100% Juice Apple Juice" and the Remaining Products.

- Grants the motion with respect to Count III's Illinois claims and dismisses with prejudice as to claims premised on purchases of "Trop 50 Farmstand Apple," and without prejudice as to claims premised on

purchases of "Tropicana 100% Juice Apple Juice" and the Remaining Products.

- Denies the motion with respect to Count III's California claims premised on purchases of all the Products.

- Grants the motion with respect to Count V's Illinois claims and dismisses without prejudice as to claims premised on purchases of all the Products.

- Grants the motion with respect to Count V's California claims and dismisses with prejudice as to claims premised on purchases of "Trop 50 Farmstand Apple," and without prejudice as to claims premised on purchases of the Remaining Products.

- Denies the motion with respect to Count V's California claims premised on purchases of "Tropicana 100% Juice Apple Juice."

As discussed in Section I, only claims premised on products actually purchased by Plaintiffs can proceed or be re-pled. The Court grants leave to Plaintiffs to file an amended complaint on or before January 20, 2022. Defendant must answer or otherwise respond in the time provided by Rule 15(a)(3). The Court refers discovery supervision, including setting all deadlines, and settlement matters to Magistrate Judge Finnegan. The Court anticipates discovery will continue while any motions to dismiss are pending. If the parties request a stay of discovery, they are to bring that

motion before the District Court Judge. Without a stay, it is expected that discovery work will continue.

Dated: December 30, 2021

_____
United States District Judge
Franklin U. Valderrama